



**Regulatory Office**
Dept: Regulatory
505 Eagleview Blvd., Suite 100
Exton, PA 19341-1120
(800) 688-1840

**INSURANCE COMPANY PROVIDING COVERAGE:** Indian Harbor Insurance Company

## PUBLIC OFFICIALS LIABILITY AND EMPLOYMENT PRACTICES LIABILITY INSURANCE DECLARATIONS

**POLICY NUMBER:**  POL0951492-01          **RENEWAL OF:**  POL0951492

<u>**NOTICES**</u>

**SUBJECT TO ITS TERMS, THIS POLICY PROVIDES COVERAGE FOR CLAIMS FIRST MADE DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD. DEFENSE EXPENSES ARE PAID IN ADDITION TO THE LIMITS OF LIABILITY; EXCEPT THAT FOR SPECIFIC CLAIMS UNDER INSURING AGREEMENT A.1.b., THE APPLICABLE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES.**

**PLEASE READ AND REVIEW THE ENTIRE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE BROKER.**

Item 1.   NAMED INSURED:
Central West Virginia Regional Airport Authority and Central West Virginia Regional Airport Authority dba Capital Jet Center
ADDRESS:
100 Airport Road, Suite 175
Charleston, WV 25311

Item 2.   POLICY PERIOD:   (a) Inception Date:   11/03/2019          (b) Expiration Date:   11/03/2020
(12:01 A.M. Standard Time at the Address Stated in Item 1.)

Item 3.   LIMITS OF LIABILITY:

(a)   Public Officials Liability
$ 2,000,000          **Company's** maximum Limit of Liability for all **Loss** from each **Claim** under **INSURING AGREEMENT** A.1.a.;

(b)   Non-Monetary Coverage – Defense Only
1.   $ 250,000          **Company's** maximum Limit of Liability for all **Defense Expenses** from each **Claim** under **INSURING AGREEMENT** A.1.b.;

2.  $ 250,000      **Company's** maximum Limit of Liability for all **Defense Expenses** from all **Claims** under **INSURING AGREEMENT** A.1.b.;

(c)  Employment Practices Liability And Third Party Liability

$ 2,000,000     **Company's** maximum Limit of Liability for all **Loss** from each **Claim** under **INSURING AGREEMENT** A.2.

(d)  Policy Aggregate Limit Of Liability

$ 4,000,000     **Company's** aggregate Limit of Liability for all **Loss** from all **Claims** under **INSURING AGREEMENT** A.1.a. and **INSURING AGREEMENT** A.2. and for all **Defense Expenses** from all **Claims** under **INSURING AGREEMENT** A.1.b.

(e)  Public Officials Crisis Management Limit Of Insurance

$ 100,000      **Company's** maximum Limit of Insurance for all **Crisis Management Expenses** from all **Public Crisis Events** under Section A.3.

Item 4:   RETENTIONS

a.  $ 10,000      each and every **Claim** under **INSURING AGREEMENT** A.1.a.

b.  $ 10,000      each and every **Claim** under **INSURING AGREEMENT** A.1.b.

c.  $ 15,000      each and every **Claim** under **INSURING AGREEMENT** A.2.

d.  $ 5,000      each and every **Public Crisis Event** under Section A.3.

Item 5:   NOTICES REQUIRED TO BE GIVEN TO THE **COMPANY** MUST BE ADDRESSED TO:

XL Catlin                          Phone: 972.383.7186
Attention: Denese Davis            Fax: 972.383.7177
14643 Dallas Parkway, Ste 770      Email: proclaimnewnotices@xlgroup.com
Dallas, TX 75254

Item 6:   POLICY PREMIUM:              $16,864.00

West Virginia Premium: **$16,864**
Fees: **$245 Market policy fee**      <span style="color:red">This company is not licensed to do business in West Virginia and is not subject to the West Virginia Insurance Guaranty Act.</span>
Surplus Lines Tax: **$$778.46**

Total Policy Premium:              $16,864.00

Item 7:   RETROACTIVE DATE:   None - Full Prior Acts

Item 8:   ENDORSEMENTS ATTACHED AT POLICY ISSUANCE:  REFER TO PGU 2002 0417

Item 9:   PRODUCER NAME:   Professional Governmental Underwriters, Inc.
           ADDRESS:   9020 Stony Point Parkway, Suite 455
           CITY, STATE, ZIP:   Richmond, VA 23235

**THESE DECLARATIONS, THE POLICY FORM, ANY ENDORSEMENTS AND THE APPLICATION CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE COMPANY AND THE INSURED RELATING TO THIS INSURANCE.**

| 11/01/2019 | _Martin H. Kaneppe, Jr._ |
| --- | --- |
| Date | Authorized Representative |

# IN WITNESS

## INDIAN HARBOR INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_____
Joseph Tocco
President

_____
Toni Ann Perkins
Secretary

IL MP 9104 0314 IHIC
©2014 X.L. America, Inc.  All rights reserved.  May not be copied without permission.

# SCHEDULE OF POLICY FORMS AND ENDORSEMENTS

Form(s) and Endorsement(s) made a part of this policy at time of issue.

| Form Number | Edition Date | Description |
| --- | --- | --- |
| PGU POL 2000 | 2017-04-01 | Public Officials and Employment Practices Liability Declarations |
| IL MP 9104 0314 IHIC | 2014-03-01 | In Witness |
| PGU 2002 | 2017-04-01 | Schedule of Policy Forms and Endorsements |
| PGU POL 2001 | 2017-04-01 | Public Officials and Employment Practices Liability Insurance Policy |
| PGU POL 1033 | 2017-04-01 | Additional Insureds - Boards, Commissions or Units |
| PGU 1052 (POL) | 2017-04-01 | Minimum Earned Premium Upon Cancellation |
| PGU POL 1072 | 2017-04-01 | Defense Coverage for Tax-Exempt Bond Claims |
| PGU 1138 (POL) | 2017-04-01 | Defense Only Reimbursement Coverage for Breach of Contract |
| XL-WVSOP | 2010-11-01 | Service of Process |
| PN CW 01 | 2015-09-01 | Notice to Policyholders - Fraud Notice |
| PN CW 02 | 2015-10-01 | Notice to Policyholders - Privacy Policy |
| PN CW 05 | 2014-09-01 | Notice to Policyholders - U.S. Treasury Department's Office of Foreig |

PGU 2002 0417

# PUBLIC OFFICIALS LIABILITY AND EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE FORM

## TABLE OF CONTENTS

Page No.

A.   INSURING AGREEMENTS...............................................................................3
   1.   Public Officials Liability ...........................................................................3
      a.  Public Officials Wrongful Acts Coverage ............................................3
      b.  Non-Monetary Relief - Defense Only Coverage ..................................3
   2.   Employment Practices Liability and Third Party Liability Coverage...................3
   3.   Public Officials Crisis Management Coverage ..............................................3
   4.   Supplemental Payments.........................................................................3
B.   DEFENSE AND SETTLEMENT .......................................................................4
C.   LIMITS OF LIABILITY / RETENTIONS ..............................................................4
   1.   Public Officials Liability ...........................................................................4
   2.   Employment Practices Liability and Third Party Liability ................................4
   3.   Policy Aggregate ...................................................................................5
   4.   Public Officials Crisis Management Coverage ..............................................5
   5.   Multiple Insuring Agreements ..................................................................5
   6.   Retention .............................................................................................5
D.   EXCLUSIONS ............................................................................................5
E.   DEFINITIONS.............................................................................................8
F.   CONDITIONS .............................................................................................15
   1.   Other Insurance:...................................................................................15
   2.   Cooperation: ........................................................................................15
   3.   Subrogation: ........................................................................................15
   4.   Extended Reporting Period: .....................................................................15
   5.   Notice; Timing; and Interrelationship of Claims: ..........................................16
   6.   Notice of Crisis Management Expenses; Inspection of Property:......................17
   7.   Cancellation; No Obligation to Renew:.......................................................17
   8.   Representations: ...................................................................................17
   9.   Separation of Insureds; Protection of Innocent Insureds:...............................17

10.     No Action against Us: ....................................................................................................18

11.     Insolvency of Insured: ...................................................................................................18

12.     Non-Accumulation of Limits: ........................................................................................18

13.     Territory: .........................................................................................................................18

14.     Authorization and Notices: ...........................................................................................18

15.     Changes: .........................................................................................................................18

16.     Assignment: ...................................................................................................................18

17.     Entire Agreement: ..........................................................................................................19

18.     Choice of Law: ...............................................................................................................19

19.     Premium: .........................................................................................................................19

20.     Conformity to Statute: ...................................................................................................19

21.     Headings: ........................................................................................................................19

## PUBLIC OFFICIALS LIABILITY AND
## EMPLOYMENT PRACTICES LIABILITY
## INSURANCE COVERAGE FORM

Various provisions in this Policy restrict coverage.  Read the entire Policy carefully to determine rights, duties and what is and what is not covered.  Throughout the Policy the words "**You**" and "**Your**" refer to the **Named Insured**. The words "**We**", "**Us**", "**Our**" and the "**Company**" refer to the Company providing this insurance.

This Policy is incomplete unless the Declarations and all applicable forms and endorsements are attached.  Words and phrases that appear in bold have special meaning and are defined in Section **E. DEFINITIONS**.  Singular words shall include the plural, and plural words shall include the singular.

**A.**     **INSURING AGREEMENTS**

Subject to the Limits of Liability set forth in the Declarations, and all other terms and conditions of this Policy, **We** agree as follows:

1.     Public Officials Liability

a.     **Public Officials Wrongful Acts Coverage**

**We** will pay on behalf of an **Insured Loss** that the **Insured** becomes legally obligated to pay as a result of a **Claim** first made against an **Insured** during the **Policy Period** or applicable Extended Reporting Period for a **Public Officials Wrongful Act** occurring on or after the **Retroactive Date** and before the end of the **Policy Period**.

b.     **Non-Monetary Relief - Defense Only Coverage**

**We** will reimburse **Defense Expenses** incurred by an **Insured** in connection with a **Claim** exclusively seeking **Non-Monetary Relief** at all stages of the **Claim**, where such **Claim** is first made against an **Insured** during the **Policy Period** or applicable Extended Reporting Period for a **Public Officials Wrongful Act** occurring on or after the **Retroactive Date** and before the end of the **Policy Period**.

2.     Employment Practices Liability and Third Party Liability Coverage

**We** will pay on behalf of an **Insured Loss** that the **Insured** becomes legally obligated to pay as a result of a **Claim** first made against an **Insured** during the **Policy Period** or any applicable Extended Reporting Period for an **Employment Practices Wrongful Act** or **Third Party Wrongful Act** occurring on or after the **Retroactive Date** and before the end of the **Policy Period**.

3.     Public Officials Crisis Management Coverage

**We** will pay on behalf of an **Insured** those **Crisis Management Expenses** incurred by the **Insured** in response to a **Public Crisis Event** first taking place during the **Policy Period** and reported to **Us** in accordance with Section F.6 of this Policy.

4.     Supplemental Payments

**We** will pay on behalf of an **Insured**, in addition to the Limits of Liability set forth in the Declarations, all reasonable expenses incurred by the **Insured** at **Our** request to assist **Us** in the investigation or defense of any **Claim**, including actual loss of earnings of any **Insured**, because of time off from work; provided that the most **We** will pay will be $500 per day, per **Insured**.  Such "expenses" shall not include salaries paid to **Your Employees**.

For purposes of this Section, a **Claim** will be deemed to have been made when an **Insured** receives notice of the **Claim**.

**B.    DEFENSE AND SETTLEMENT**

1.    **We** will have the right and duty to defend any **Claim** made against an **Insured** for a **Wrongful Act** covered under Insuring Agreements A.1.a. or A.2., even if the allegations of such **Claim** are groundless, false or fraudulent.  **We** will have no obligation to pay any **Loss** or **Defense Expenses**, or to defend any **Claim** after the applicable Limit of Liability set forth in Item 3. of the Declarations has been exhausted.

2.    For any **Claim We** defend under Section B.1., **We** will have the right to make investigations, conduct negotiations and enter into the settlement of any such **Claim** as **We** deem appropriate, with the consent of the **Insured**.  If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with **Our** recommendation, then, subject to the applicable Limit of Liability, **Our** liability for such **Claim** will not exceed:

    a.    The amount for which such **Claim** could have been settled by **Us** plus **Defense Expenses** up to the date the **Insured** refused to settle such **Claim**; plus

    b.    Sixty percent (60%) of any **Loss** or **Defense Expenses** in excess of the amount in Section B.2.a. above, incurred in connection with such **Claim**.

3.    It shall be the duty of the **Insured**, and not **Us**, to defend any **Claim** covered under Insuring Agreement A.1.b.  The **Insured** shall have the right to select defense counsel for the investigation and defense of any such **Claim**, subject to **Our** consent and approval, which shall not be unreasonably withheld.

4.    **We** shall have no duty to continue to reimburse **Defense Expenses** after the applicable Limit of Liability for **Claims** arising under Insuring Agreement A.1.b. has been exhausted by the reimbursement of **Defense Expenses**.

**C.    LIMITS OF LIABILITY / RETENTIONS**

Regardless of the number of **Claims**, **Insureds** or claimants, **Our** liability under this Policy is limited as follows:

1.    Public Officials Liability

    a.    The amount set forth in Item 3.(a) of the Declarations is the most **We** will pay for all **Loss** in excess of the Retention set forth in Item 4. of the Declarations resulting from each **Claim** covered under Insuring Agreement A.1.a.  The payment of **Defense Expenses** shall be in addition to, and will not reduce, the applicable Limits of Liability.

    b.    The amount set forth in Item 3.(b)(1) of the Declarations is the most **We** will reimburse for all **Defense Expenses** in excess of the Retention set forth in Item 4.(b) of the Declarations resulting from each **Claim** covered under Insuring Agreement A.1.b.

    c.    The amount set forth in Item 3.(b)(2) of the Declarations is the most **We** will reimburse for all **Defense Expenses** in excess of the Retention set for in Item 4.(b) of the Declarations resulting from all Claims covered under Insuring Agreement A.1.b.

2.    Employment Practices Liability and Third Party Liability

    The amount set forth in Item 3.(c) of the Declarations is the most **We** will pay for all **Loss** resulting from each **Claim** covered under Insuring Agreement A.2.  The payment of **Defense Expenses** shall be in addition to, and will not reduce, the applicable Limits of Liability.

3.      Policy Aggregate

The amount set forth in Item 3.(d) of the Declarations is the most **We** will pay for all **Loss** resulting from all **Claims** covered under Insuring Agreements A.1.a. and A.2., and for all **Defense Expenses** resulting from all **Claims** covered under Insuring Agreement A.1.b.

4.      Public Officials Crisis Management Coverage

In addition to the Policy Aggregate Limit of Liability, the amount set forth in Item 3.(e) of the Declarations is the most **We** will pay for all **Crisis Management Expenses** resulting from all **Public Crisis Events** covered under Insuring Agreement A.3.

5.      Multiple Insuring Agreements

If a **Claim** covered under Insuring Agreement A.1.b. subsequently becomes a **Claim** for both monetary and **Non-Monetary Relief** covered under Insuring Agreements A.1.a. or A.2., such **Claim** shall become subject to the increased Retention and Limit of Liability applicable to Insuring Agreement A.1.a. or A.2., whichever is higher.  **Defense Expenses** incurred in connection with such **Claim** shall be applied against the applicable Retention and shall reduce the applicable Limit of Liability.

6.      Retention

**Our** obligation to pay or reimburse **Loss** or **Defense Expenses** under this Policy will only be in excess of the applicable Retention set forth in Item 4. of the Declarations.  **We** will have no obligation to pay all or any portion of any Retention amount on behalf of any **Insured**, although **We** may, at **Our** sole discretion, advance such amount, in which event the **Insureds** agree to repay any amounts so advanced upon written request.

## D.      EXCLUSIONS

This Policy shall not apply to any **Claim** arising from or relating to:

1.      The performance of any willful misconduct or dishonest, fraudulent, criminal or malicious act, error or omission by an **Insured**; the willful violation by an **Insured** of any law, statute, ordinance, rule or regulation; or an **Insured** gaining any profit, remuneration or advantage to which such **Insured** is not legally entitled.

Notwithstanding the above, **We** will defend the **Insured** or pay or reimburse **Defense Expenses** in connection with a **Claim** otherwise covered by this Policy until and unless the **Insured** admits, is adjudged or is otherwise proven to have committed any act, error or omission subject to this exclusion, in which case the **Insured** shall reimburse **Us** for any **Defense Expenses** advanced to or paid on behalf of such **Insured**.

2.      **Loss** or **Defense Expenses** covered under Insuring Agreements A.1.a. or A.2., if Insuring Agreement A.1.b. also applies.

3.      A **Claim**, other than one alleging an **Employment Practices Wrongful Act**, that is brought by, on behalf of, or in the name or right of **You** or any of **Your** duly elected, appointed or employed directors, officers, or officials, or any member of a commission, board or other unit operated by **You** and under **Your** jurisdiction, and within the apportionment of **Your** operating budget in the **Application**; provided that this exclusion shall not apply to a cross-claim or third-party complaint arising from a **Claim** made against such director, officer, official, or member that is otherwise covered under this Policy. Notwithstanding the above, this exclusion shall also not apply to a **Claim** brought by a former director, officer, official, or member who has not served in that capacity for at least three (3) years prior to the date such **Claim** is first made and where such **Claim** is brought

and maintained without the support, solicitation, assistance, participation or intervention of the **Named Insured** or an **Insured** not otherwise subject to this exception.

4.   An actual or alleged violation of the Fair Labor Standards Act, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, any workers' compensation, unemployment insurance, social security, or disability benefits law, other similar provisions of any federal, state or local statutory or common law or any rules or regulations promulgated under any of the foregoing; provided that this exclusion shall not apply to the extent that a **Claim** for an **Employment Practices Wrongful Act** alleges retaliatory action by an **Insured** in response to an **Employee's** exercise of rights under such statute or law.

5.   Damage to, destruction of or loss of use of tangible property, **Bodily Injury**, corporal punishment, sickness, disease or death.

6.   Emotional distress, mental anguish or humiliation not arising from an **Employment Practices Wrongful Act** or **Third Party Wrongful Act**.

7.   **Sexual Abuse and Molestation**, including the allowance of or failure to prevent, stop, detect or reveal **Sexual Abuse and Molestation**.

8.   The actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, seepage, migration, release, growth, infestation, spread, escape, treatment, removal or disposal of, any **Pollutant**, or any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutant**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request.

9.   A **Benefit Plan Act**, provided that this exclusion shall not apply to any **Claim** for actual or alleged retaliation with regards to benefits paid or payable.  **We** will defend a **Claim** otherwise subject to this exclusion subject to a $25,000 Limit of Liability for all **Defense Expenses** in excess of the applicable Retention set forth in Item 4. of the Declarations.  **Defense Expenses** payable under this section are part of and not in addition to the applicable Limits of Liability set forth in Item 3. of the Declarations, and payment of such **Defense Expenses** by **Us** will reduce such Limits of Liability.

10.  An **Insured's** liability under a contract or agreement, other than a manual of employment policies or procedures issued by **You**, unless such liability would have attached in the absence of such express contract or agreement.  This exclusion shall not apply to the payment of **Defense Expenses** incurred in connection with a **Claim** for an **Employment Practices Wrongful Act** in the form of an actual or alleged breach of a contract to commence or continue employment with **You**.

11.  A failure to obtain, implement, effect, comply with, provide notice under or maintain insurance, reinsurance, self-insurance, suretyship or bond.

12.  Facts, circumstances, situations, transactions, events or **Wrongful Acts**:

   a.   Underlying or alleged in any mediation, arbitration, grievance proceeding, litigation or administrative or regulatory proceeding brought prior to and/or pending as of the Inception Date set forth in Item 2. of the Declarations:

      (1)   to which an **Insured** is or was a party; or

      (2)   with respect to which an **Insured**, as of the Inception Date set forth in Item 2. of the Declarations, knew or should reasonably have known that an **Insured** would be made a party thereto;

b. Which was the subject of any notice given prior to the Inception Date set forth in Item 2. of the Declarations under any other policy of insurance or plan or program of self-insurance; or

c. Which was the subject of any **Claim** made prior to the Inception Date set forth in Item 2. of the Declarations.

If, however, this Policy is a renewal of one or more policies issued by **Us** or an affiliate to **You**, and such coverage was in effect without interruption from the Inception Date of the first such policy to the Inception Date of this Policy, the reference in this exclusion to the Inception Date will be deemed to refer instead to the Inception Date of the first policy under which **We** or an affiliate began to provide **You** with the continuous and uninterrupted coverage of which this Policy is a renewal.

13. A lockout, strike, picket line, hiring of replacement workers, riot or civil commotion, or other similar actions in connection with labor disputes or labor negotiations.

14. The activities of an **Insured** as a law enforcement officer, police officer, police department or other law enforcement unit or agency; the operation of any jail cell, holding cell, detention or lock-up facility of any kind; or the activities of an **Insured** charged with the power to arrest, detain or interrogate another person, or to seize or confiscate the property of any individual or entity; provided; however; that this exclusion shall not apply to **Claims** arising out of the administrative functions or activities of an **Insured** in the enforcement of **Your** municipal code, laws or regulations, including but not limited to, the issuance of citations, fines, warnings, notices of violation, the issuance or denial of licenses or permits, or the inspection of property or buildings, by persons authorized to conduct such functions or activities on **Your** behalf. This exclusion shall also not apply to any **Claim** by or against a law enforcement officer or police officer in their capacity as an **Employee** under this Policy, for an **Employment Practices Wrongful Act**.

15. The operation of the laws and principles of eminent domain, condemnation, inverse condemnation, temporary or permanent taking, adverse possession or dedication by adverse use; however, **We** will defend such **Claim** subject to a $50,000 Limit of Liability for all **Defense Expenses** in excess of the applicable Retention set forth in Item 4. of the Declarations. **Defense Expenses** payable under this section are part of and not in addition to the applicable Limits of Liability set forth in Item 3. of the Declarations, and payment of such **Defense Expenses** by **Us** will reduce such Limits of Liability.

16. The Securities Act of 1933, the Securities Exchange Act of 1934, any state "blue sky" law, or any other federal, state or local securities law, or any rule or regulation promulgated under any of the foregoing; or any provision of the common law imposing liability in connection with the offer, sale or purchase of securities.

17. The sale or offering of securities by **You**, whether or not such securities are exempt from registration by the SEC; **Your** actual or proposed filing for an Initial Public Offering; or a debt offering or debt financing, including but not limited to bonds, notes, debentures and guarantees of debt.

18. Tax credits or tax incentives or the application thereof; the formulation of tax rates; the assessment, appraisal or valuation of property; the assessment of taxes or other fees; the collection of taxes, fees or other amounts; and the disbursement of tax refunds.

19. War, whether or not declared, or any act or condition incidental to war, including civil war, insurrection, rebellion or revolution; or **Terrorism**.

20. Construction, architectural, engineering, procurement, security or other professional services, including any contract or agreement pertaining to such services.

21.     Legal services including those services performed by any individual as a lawyer, arbitrator, mediator, title agent, notary public, administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity.

22.     **Crisis Management Expenses** arising from any **Public Crisis Event** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

    a.     War, whether or not declared, or any act or condition incidental to war, including civil war, **Terrorism**, insurrection, rebellion or revolution;

    b.     Actual or attempted suicide;

    c.     Actual or attempted kidnapping or extortion;

    d.     Acts, whether intentional or not, by members of the **Victim's** immediate family members or members of the **Victim's** household; or

    e.     The activities of any person as a law enforcement officer, police officer, correctional officer, member of a police department or other law enforcement unit or agency; or the activities of any person charged with the powers to arrest, detain or interrogate another person, seize or confiscate the property of any individual or entity.

## E.     DEFINITIONS

Whenever used in this Policy, the term:

1.     **Application** means all Applications submitted to **Us**, including any and all attachments and other materials submitted to **Us** in connection with the underwriting of this Policy or for any other policy of which this Policy is a renewal.

2.     **Benefit Plan Act** means a **Claim** alleging liability under a pension, profit sharing, welfare benefit or other employee benefit program established in whole or part for the benefit of an **Insured**, or based upon, arising out of or in any way involving the Employee Retirement Security Act of 1974 (except Section 510 thereof) or any amendments thereto or regulations promulgated thereunder or similar provisions of any federal, state or local law or common law.

3.     **Bodily Injury** means physical injury, sickness or disability of a person, including mental incapacity or death resulting from any of these at any time.

4.     **Business Invitee** means a natural person, solely in their capacity as one who is invited to enter into and remain on any **Premises** for a purpose directly or indirectly connected with **Your** business or commercial dealings therein.  A Business Invitee does not include a trespasser or any person who enters any **Premises** without **Your** knowledge or permission, or any **Employee**, student or minor.

5.     **Claim** means:

    a.     A written demand for monetary damages or **Non-Monetary Relief**;

    b.     A written request to toll or waive any statute of limitations, or to waive any contractual time bar, relating to a potential suit against an **Insured** for a **Wrongful Act**;

    c.     A civil proceeding in a court of law or equity, including any appeal therefrom, which is commenced by the filing of a complaint, motion for judgment, or similar proceeding;

    d.     A criminal proceeding that is commenced by the return of an indictment or similar document;

e.      An administrative or regulatory proceeding or investigation, including a proceeding brought by or before the Equal Employment Opportunity Commission or similar state or local agency, commenced by the filing of a notice of charges, formal order of investigation or similar document; or

f.      An arbitration proceeding or other alternative dispute resolution proceeding, to which the **Insured** must submit or does submit with **Our** consent.

Claim shall not include any labor grievance, arbitration or other proceeding brought pursuant to a collective bargaining agreement.

6.      **Crisis Management Expenses** means **Public Relations Expenses**, **Travel/Printing Expenses**, **Family Travel Expenses** and **Post-Crisis Expenses**; provided, however, that Crisis Management Expenses shall not include:

a.      **Your** overhead expenses or any salaries, wages, fees or benefits of **Employees**;

b.      The cost of medical, psychiatric or counseling services, even if provided by a **Crisis Management Firm**; or

c.      Any fees or expenses related to civil, administrative or criminal investigations, proceedings or litigation.

7.      **Crisis Management Firm** means a public relations firm, Crisis Management Firm or law firm hired or appointed by **You** to perform Crisis Management Services in connection with a **Public Crisis Event**.  It shall be the duty of the **Insured** to select and retain the Crisis Management Firm.

8.      **Defense Expenses** means reasonable legal fees and expenses **We** incur for the investigation, defense and appeal of a **Claim** by attorney(s) retained by **Us**, as well as all other fees, costs or expenses resulting from the investigation, adjustment, defense and appeal of such **Claim** by **Us**, or by **You** with **Our** prior, written consent.  Defense Expenses does not include any expenses incurred by **You** prior to the date a **Claim** is first reported to **Us**, nor does it include the time and expense incurred by **You** in resolving a **Claim**, including but not limited to the costs of **Your** in-house counsel.

9.      **Emergency Response Plan** means:

a.      A formal written and adopted public safety and crisis response manual that details **Your** policies and procedures in the event of an **Public Crisis Event**; or

b.      In the absence of such formal written manual, any applicable federal, state or local law, ordinance or statute that authorizes **You** to take emergency action or specifically describes the **Your** obligations in the event of a public emergency.

10.      **Employee** means the following natural persons, but only for **Wrongful Acts** committed while acting within the scope of employment for **You**:

a.      Full-time, part-time, seasonal and temporary Employees; and

b.      All persons who perform services for **You** on a volunteer basis and under **Your** direction and control.

Employee shall not include persons providing services to **You** under a mutual aid agreement or any similar agreement.

11.    **Employment Practices Wrongful Act** means any of the following, when alleged by any of **Your** past or present **Employees** or any applicant for employment with **You**, in connection with that person's actual or proposed employment relationship with **You**:

    a.    Wrongful dismissal, discharge or termination of employment, whether actual or constructive;

    b.    Harassment (including sexual harassment whether "quid pro quo," hostile work environment or otherwise);

    c.    Discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability or any basis prohibited by federal, state or local laws;

    d.    Breach of any manual of employment policies or procedures issued to the **Insureds** by **You**;

    e.    Retaliatory action in response to that **Employee's**:

        (1)    disclosure or threat of disclosure of any act by an **Insured** alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder;

        (2)    actual or attempted exercise of any right that **Employee** has under law;

        (3)    filing of any **Claim** under the Federal False Claims Act or any other federal, state, local or foreign "whistleblower" law;

    f.    Misrepresentation, libel, slander, humiliation, defamation, invasion of privacy, infliction of emotional distress or mental anguish;

    g.    Wrongful failure to employ or promote, wrongful deprivation of career opportunity, including tenure, wrongful demotion or evaluation or wrongful discipline; or

    h.    Breach of a contract to commence or continue employment with **You**.

An Employment Practices Wrongful Act shall not include a **Public Officials Wrongful Act**.

12.    **Family Travel Expenses** means reasonable and necessary expenses incurred by any natural or adoptive parent, legal guardian, spouse, or child of a **Victim** within thirty (30) days after a **Public Crisis Event** to travel to the location of the **Public Crisis Event**, so long as the **Public Crisis Event** took place on an official trip sponsored by **You**.  For the purpose of this definition, coach air transportation or ground transportation and standard class hotel accommodations shall be deemed reasonable expenses.

13.    **Insured** means:

    a.    **You**;

    b.    **Your** past, present or future duly elected, appointed or employed officials, directors, officers, or members of commissions, boards or other units operated by **You** and under **Your** jurisdiction, within the apportionment of **Your** operating budget in the **Application**; provided that an Insured shall not include the following boards, commissions or units, or any officials, directors, officers, members or **Employees** thereof: schools, airports, transit authorities, hospitals, nursing homes, housing authorities, port authorities or any type of utility companies, unless otherwise provided in an Endorsement attached hereto;

c.     **Employees**;

d.     Persons providing services to **You** under a mutual aid or similar agreement that is disclosed on the **Application**, but solely while acting in that capacity; however, such persons are not Insureds with respect to **Claims** for **Employment Practices Wrongful Acts** or **Third Party Wrongful Acts**;

e.     In the event of the death, incapacity or bankruptcy of a natural person Insured**,** such Insured's estate, heirs, legal representatives or assigns, but only in connection with a **Claim** for an alleged **Wrongful Act** by such natural person Insured; and

f.     The lawful spouse or domestic partner of any individual Insured identified in the paragraphs above, but only with respect to liability arising out of **Wrongful Acts** committed by such individual, and provided that such spouse or domestic partner is represented by the same counsel as such individual with respect to any **Claim**.

14.   **Loss** means damages, pre-judgment interest, post-judgment interest, front pay and back pay, judgments, settlements, punitive or exemplary damages where insurable under applicable law or other amounts that an **Insured** is legally obligated to pay as a result of a **Claim**.

Loss will not include:

a.     **Defense Expenses**;

b.     **Non-Monetary Relief**;

c.     Any amount representing the value of diminished or lost retirement, health care or other benefits;

d.     Fines, taxes, penalties;

e.     The cost of disaster response activities conducted by the **Insured** as required by the Federal Emergency Management Agency (FEMA);

f.     Amounts due under any contract to commence, continue or separate from employment with **You**, including but not limited to the value of any compensation or employment benefits lost, or the cost of specific performance in connection with any such contract; or

g.     The multiplied portion of a multiple damages award; provided that Loss will include any multiplied damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act ("Specified Multiplied Damages") that an **Insured** is obligated to pay as a result of a **Claim**, but only if such Specified Multiplied Damages are insurable under applicable law.

For the purpose of determining the insurability of punitive damages, exemplary damages or Specified Multiplied Damages under this Policy, the laws of the jurisdiction most favorable to the insurability of such damages shall control, provided that such jurisdiction:

(1)     is the location of the court which awarded or imposed such punitive or exemplary damages or Specified Multiplied Damages;

(2)     is where **You** are incorporated or otherwise organized or has a place of business; or

(3)     is where **We** are incorporated or have **Our** principal place of business.

15.   **Named Insured** means the public entity set forth in Item 1. of the Declarations.

16.     **Non-Monetary Relief** means relief or redress in any form other than compensatory or monetary damages, including: the costs of complying with any injunctive, declaratory or equitable relief, remedy or order; the costs of compliance with the Americans with Disabilities Act or any similar provisions of federal, state or local statutory or common law; and any award of claimant's or plaintiff's attorneys fees or costs, whether or not provided for by statute, but only with respect to **Claims** seeking such Non-Monetary Relief.  Non-Monetary Relief shall not include the cost of disaster response activities conducted by the **Insured** as required by the Federal Emergency Management Agency (FEMA).

17.     **Personal Injury** means the following, when alleged against an **Insured** by an entity or a person who is not a past or present **Insured**, or applicant for employment with the **Insured**, libel, slander, or other defamation; invasion of privacy, false arrest, erroneous service of process, wrongful detention or imprisonment, malicious prosecution, wrongful entry or eviction, subject to Exclusion D.14., infringement of copyright or trademark, or other unauthorized use of title, or plagiarism or misappropriation of ideas.

18.     **Policy Period** means the period from the Inception Date of this Policy set forth, in Item 2. of the Declarations, to the Expiration Date of this Policy set forth in Item 2. of the Declarations, or to any earlier cancellation date of this Policy.

19.     **Pollutant** means any of the following:

   a.      Smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials (including medical or pharmaceutical supplies and materials which are intended to be or have been recycled, reconditioned or reclaimed) or other irritants, Pollutants or contaminants;

   b.      Mold(s), mildew(s), fungi and/or spore(s); or any materials, goods or products containing, harboring or nurturing any such mold(s), mildew(s), fungi and/or spore(s);

   c.      Lead, silica or asbestos, whether or not airborne as a particle, contained in or formed as part of a product, structure or other real or personal property, ingested or inhaled or transmitted in any fashion, or found in any form whatsoever; or

   d.      Nuclear reaction, radioactive contamination or any radiation of any kind, including but not limited to nuclear radiation and electromagnetic radiation.

20.     **Post-Crisis Expenses** means reasonable costs incurred by **You** within sixty (60) days after a **Public Crisis Event** to purchase equipment or make property improvements that are not covered by other insurance and that relate directly to the security of **Your Premises** and may assist in prevention or mitigation of future **Public Crisis Events**.

21.     **Premises** means the following, if located in the continental United States:

   a.      A building, facility or other real property including adjoining ways, which **You** own, rent or lease and is used by **You** to conduct **Your** business, including administration, maintenance and recreational facilities;

   b.      A building, facility, or other real property being visited by **Your** elected, appointed or employed officials, directors, officers, members of commissions, boards or other units operated by **You** and under **Your** jurisdiction, or **Employees**, on an official business trip on **Your** behalf;

c.     A vehicle that **You** own or lease pursuant to a written contract, but solely if being used in the transportation of **Your** elected or appointed or employed officials, directors, officers, members of commissions, boards or other units operated by **You** and under **Your** jurisdiction, or **Employees**.

Premises does not include any location for an event independently organized by **Employees** or others without **Your** knowledge or approval.

22.   **Public Crisis Event** means:

a.     A violent act of a criminal nature taking place on **Your Premises** that causes **Bodily Injury** to a **Victim**; or

b.     A credible threat communicated to **You** of a violent act of a criminal nature taking place on **Your Premises** which **You** reasonably believe may imminently cause **Bodily Injury** to a **Victim**;

in response to which **You**: (1) implement **Your Emergency Response Plan**; (2) contact federal, state or local police authorities for assistance; and (3) invoke an emergency succession plan due to **Bodily Injury** to a **Victim**, or the credible threat thereof.

Public Crisis Events involving a sequence or series of related violent acts or threats will be deemed to have taken place at the time the first violent act began or threat occurred.  Continuous or repeated exposure to substantially the same acts or threats, regardless of how many **Victims** by the same perpetrator, or two or more perpetrators acting in concert, shall be considered one Public Crisis Event.

23.   **Public Officials Wrongful Act** means:

a.     An actual or alleged act, error, omission, misstatement, misleading statement or breach of duty, including any **Personal Injury**, by any **Insured**, if committed in the performance of his or her duties for **You**;

b.     An actual or alleged violation of civil rights protected under 42 USC § 1981 et seq., or any similar federal, state or local law, by any **Insured**, if committed in the performance of his or her duties for **You**;

c.     Any matter claimed against an **Insured** solely by reason of his or her status as an **Insured** during the **Policy Period**, if committed in the performance of his or her duties for **You**; or

d.     Any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by a natural person **Insured** while serving, at the direction or request of **You**, in his or her capacity as a board member or committee member of a not-for-profit organization, other than **You**, which is exempt from taxation under Section 501(c) (3) of the Internal Revenue Code, as the same may be amended from time to time, at **Your** direction or request.

Coverage available pursuant to subsection d. shall be excess of and not contribute with any other insurance plan or program of self-insurance carried by such not-for-profit corporation, and any contribution or indemnification to which a natural person **Insured** is entitled from such not-for-profit organization.

A Public Officials Wrongful Act shall not include an **Employment Practices Wrongful Act** or a **Third Party Wrongful Act**.

24.    **Public Relations Expenses** means the reasonable and necessary fees and expenses incurred by **You** in response to a **Public Crisis Event**, within one hundred twenty (120) days after such **Public Crisis Event** took place, for services performed by a **Crisis Management Firm** to minimize potential harm to **Your** name or reputation as a result of such **Public Crisis Event**, including but not limited to maintaining and restoring public confidence in **You** and providing advice to **Insureds**.

25.    **Related Claims** means all **Claims** based upon, arising out of, resulting from, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances situations, transactions or events, whether related logically, casually or in any other way.  All Related Claims will be deemed to be a single **Claim** for purposes of Section **C. LIMITS OF LIABILITY / RETENTIONS** and **F. CONDITIONS**, Item 5. Notice; Timing; and Interrelationship of Claims.

26.    **Retroactive Date** means the applicable date set forth in Item 7. of the Declarations.

27.    **Sexual Abuse and Molestation** means any actual or alleged conduct, physical act, gesture or spoken or written word of a sexual nature directed by an **Insured**, or by any person for whom an **Insured** is legally responsible, toward any person under the care, custody or control of any **Insured**, including without limitation any actual, alleged or threatened sexual intimacy (even if allegedly consensual), sexual molestation, sexual assault or battery, exploitation or any other sexual act.

28.    **Terrorism** means "Certified Acts" as defined by the Terrorism Risk Insurance Act of 2002, or any subsequent amendments or reauthorizations of such Act (TRIA).

29.    **Third Party Wrongful Act** means any of the following, when alleged against an **Insured** by **Your Business Invitee** or by a third party individual (other than another **Insured**, student or minor) with whom an **Insured** interacts outside of the **Premises** for the purpose of conducting official business on **Your** behalf:

   a.    Harassment (including sexual harassment);

   b.    Discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability or any basis prohibited by federal, state or local laws; or

   c.    Invasion of privacy.

   A Third Party Wrongful Act shall not include a **Public Officials Wrongful Act**.

30.    **Travel/Printing Expenses** means reasonable and necessary expenses incurred by **You** in response to a **Public Crisis Event** within one hundred twenty (120) days after such **Public Crisis Event** took place for printing, advertising, mailing materials, or travel by any **Insured** or the **Crisis Management Firm** in connection with such **Public Crisis Event**.

31.    **Victim** means:

   a.    An elected, appointed or employed officials, directors, officers, members of commissions, boards or other units operated by **You** and under **Your** jurisdiction;

   b.    A **Business Invitee**; or

   c.    An **Employee**;

   who sustain(s) a **Bodily Injury**.

Victim shall not include independent contractors or subcontracted personnel working on the **Premises** or any person who has or is alleged to have made any attempt at, or knowingly participated in, or encouraged any **Public Crisis Event**.

32.    **Wrongful Act** means any **Public Officials Wrongful Act**, **Employment Practices Wrongful Act** or **Third Party Wrongful Act**.

## F.    CONDITIONS

1.    **Other Insurance:**

Insurance provided under this Policy will be excess of and will not contribute with other valid and collectible insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically stated to be in excess of this Policy by reference in such other policy to the Policy number of this Policy.  This Policy will not be subject to the terms of any other insurance.

In the event that coverage is available for a **Claim** under any other insurance policy that applies to **Claims** for **Bodily Injury**, **Personal Injury** or property damage, **We** will have no duty to defend such **Claim**, or to pay any **Defense Expenses** incurred by **You** or on **Your** behalf, or to contribute to or reimburse **Defense Expenses** incurred by such other insurance policy in connection with such **Claim**.

2.    **Cooperation:**

In the event of a **Claim**, the **Insured** will provide **Us** with all information, assistance and cooperation that **We** reasonably request, and will do nothing that may prejudice **Our** position or potential or actual rights of recovery.  The **Insured** shall not make any payment, admit any liability, settle any **Claim**, assume any obligation, or incur any expense without **Our** consent.  At **Our** request, the **Insured** will assist in any actions, suits, or proceedings, including but not limited to attending hearings, trials and depositions, securing and giving evidence, and obtaining the attendance of witnesses, and will also assist in making settlements.

3.    **Subrogation:**

**We** will be subrogated to the extent of any payment **We** make under this Policy to all of the rights of recovery of the **Insured**.  The **Insured** will execute all papers and do everything necessary to secure such rights, including the execution of any documents necessary to enable **Us** effectively to bring suit in their name.  The obligations of the **Insured** under this condition will survive the expiration or cancellation of the Policy.

4.    **Extended Reporting Period:**

a.    If this Policy is cancelled or non-renewed for any reason other than nonpayment of premium, the **Named Insured** will have the right to:

(1)    a seventy-five (75) day Automatic Extended Reporting Period, beginning on the effective date of such cancellation or non-renewal, for no additional premium charge; and

(2)    to purchase an Additional Extended Reporting Period, beginning on the effective date of the cancellation or non-renewal, for an additional premium; provided that the **Named Insured** elects to purchase the Additional Extended Reporting Period in writing and provides **Us** any additional premium due within thirty (30) days of the effective date of cancellation or non-renewal, subject to the available options as set forth in subparagraph c.

b.     The coverage otherwise afforded by this Policy will be extended to apply to **Loss** or **Defense Expenses** from **Claims** first made during the Extended Reporting Period, but only if such **Claims** are for **Wrongful Acts** committed on or after the **Retroactive Date** and before the end of the **Policy Period**. An Extended Reporting Period does not increase or reinstate any Limit of Liability and may only be effective if all premiums and retentions due under the Policy have been paid. The Automatic Extended Reporting Period shall not become effective if the **Insured** procures replacement coverage. Once purchased, the Extended Reporting Period may not be canceled and the premium shall be deemed fully earned.

c.     Additional Extended Reporting Period Options:

(1)     a one (1) year extended reporting period for an additional premium of seventy percent (70%) of the Premium set forth in Item 6. of the Declarations;

(2)     a two (2) year extended reporting period for an additional premium of one hundred percent (100%) of the Premium set forth in Item 6. of the Declarations; or

(3)     a three (3) year extended reporting period for an additional premium of one hundred and fifty percent (150%) of the Premium set forth in Item 6. of the Declarations.

5.     **Notice; Timing; and Interrelationship of Claims:**

a.     As a condition precedent to any right to payment under this Policy, the **Insured** must give **Us** written notice of such **Claim**, with full details, as soon as practicable after any of **Your** public officials or administrators becomes aware of such **Claim** and in no event later than seventy-five (75) days after the expiration of the **Policy Period**.

b.     If, during the **Policy Period**, the **Insured** first becomes aware of any **Wrongful Act** that may subsequently give rise to a **Claim** and, as soon as practicable thereafter but before the expiration or cancellation of this Policy:

(1)     gives **Us** written notice of such **Wrongful Act**, including a description of the **Wrongful Act** in question, the identities of the potential claimants, the consequences which have resulted or may result from such **Wrongful Act**, the damages that may result from such **Wrongful Act** and the circumstances by which the **Insured** first became aware of such **Wrongful Act**; and

(2)     requests coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

then **We** will treat any such subsequently resulting **Claim** as if it had been first made during the **Policy Period**.

c.     All notices under this condition must be sent in writing to the address or email address set forth in Item 5. of the Declarations.

d.     All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, or when the earliest of such **Related Claims** is treated as having been made in accordance with Condition 5.b., whichever is earlier.

6.    **Notice of Crisis Management Expenses; Inspection of Property:**

    a.    As a condition precedent to coverage under Insuring Agreement A.3. of this Policy, **You** must notify **Us** in writing as soon as practicable during the **Policy Period**, but in no event more than ten (10) days after the **Public Crisis Event** first took place.  The written notice must be as complete as possible, stating how, when, and where the **Public Crisis Event** took place and the **Bodily Injury** or damage arising therefrom, and providing a summary of the **Crisis Management Expenses** incurred or expected to be incurred.

    b.    To be eligible for coverage, **Crisis Management Expenses** must be submitted to **Us** no later than ninety (90) days after such **Crisis Management Expenses** are incurred.

    c.    **We** will be permitted, but not obligated, to inspect **Your** property and operations and to review the **Emergency Response Plan** at any time, upon reasonable notice.  Neither **Our** right to make such inspection or review nor the making of any such inspection or review shall constitute an undertaking on behalf of or for the benefit of the **Insured** or others to determine or warrant that such property and operations are safe or that the **Emergency Response Plan** is adequate, effective or legal.

7.    **Cancellation; No Obligation to Renew:**

    a.    **We** may not cancel this Policy except for **Your** failure to pay a premium when due.  **We** will deliver or mail by first class, registered or certified mail to **You** at **Your** last known address, written notice of cancellation at least twenty (20) days before the effective date of cancellation.  Such notice shall state the reason for cancellation.  A copy of such notice shall be sent to the agent of record.

    b.    **You** may cancel this Policy by mailing to **Us** written notice stating when, not later than the Expiration Date set forth in Item 2. of the Declarations, such cancellation will be effective.  In such event, return premium will be computed as 0.90 times the pro rata unearned premium shown in Item 6. of the Declarations and rounded to the nearest whole dollar.  Premium adjustment may be made either at the time that cancellation by **You** is effective or as soon as practicable thereafter.  If the Policy Aggregate Limit of Liability, as set forth Item 3.(d) of the Declarations, is exhausted by the payment of **Loss** or **Defense Expenses**, the entire premium will be deemed fully earned.

    c.    **We** will not be required to renew this Policy upon its expiration.  If **We** elect not to renew this Policy, **We** will deliver or mail by first class, registered or certified mail to **You** at **Your** last known address, written notice to that effect at least sixty (60) days before the Expiration Date set forth in Item 2. of the Declarations.  Such notice shall state the specific reason(s) for non-renewal.  A copy of such notice shall be sent to the agent of record.

8.    **Representations:**

The **Named Insured** represents that the statements contained in the **Application** are true, accurate and complete, and agrees that this Policy is issued in reliance upon the truth thereof, which are deemed to be incorporated into and to constitute a part of this Policy.

9.    **Separation of Insureds; Protection of Innocent Insureds:**

    a.    In the event of any material untruth, misrepresentation or omission in connection with any of the particulars or statements in the **Application**, this Policy will be void:

        (1)    with respect to any natural person **Insured** who knew of such untruth, misrepresentation or omission; and

(2)     with respect to **You**, if, and only if, **Your** elected or appointed official, or the highest ranking member of any of **Your** boards, commissions or units, or any other person in a functionally equivalent position, knew of such untruth, misrepresentation or omission.

b.      No act, error or omission of any **Insured** will be imputed to any other **Insured** to determine the application of any exclusion set forth in Section **D. EXCLUSIONS** of this Policy.  If it is determined that an exclusion applies to an **Insured** in connection with a **Claim**, no coverage shall be available under this Policy for such **Insured**, however, coverage shall continue in effect under this Policy for any other **Insured**, subject to all other terms, conditions, and exclusions herein.

10.     **No Action against Us:**

a.      No action may be taken against **Us** unless, as conditions precedent thereto, there has been full compliance with all of the terms of this Policy and the amount of the **Insured's** obligation to pay has been finally determined either by judgment against the **Insured** after adjudicatory proceedings, or by written agreement of the **Insured**, the claimant and **Us**.

b.      No person or entity will have any right under this Policy to join **Us** as a party to any **Claim** to determine the liability of any **Insured**; nor may **We** be impleaded by an **Insured** or his, her or its legal representative in any such **Claim**.

11.     **Insolvency of Insured:**

**We** will not be relieved of any of **Our** obligations under this Policy by the bankruptcy or insolvency of an **Insured**.

12.     **Non-Accumulation of Limits:**

If coverage is provided under this Policy and any other policy or policies underwritten or reinsured by **Us** to **You**, the maximum amount payable in the aggregate under this Policy and all such other policies shall not exceed the single highest Limit of Liability available under all such policies.  Only one retention or deductible will apply, which shall be the retention or deductible corresponding to the Limit of Liability applied to the **Claim**.

13.     **Territory:**

This Policy applies to **Wrongful Acts** committed by an **Insured**, or to any **Claim** brought against an **Insured**, anywhere in the world.

14.     **Authorization and Notices:**

The **Insureds** agree that **You** will act on their behalf with respect to receiving any notices and return premiums from **Us**.

15.     **Changes:**

This Policy contains all the agreements between any and all **Insureds** and **Us** concerning this insurance.  The **Named Insured** is authorized on behalf of all **Insureds** to make changes in the terms of this Policy with **Our** consent.  This Policy's terms can be amended or waived only by endorsement issued by **Us** and made part of this Policy.

16.     **Assignment:**

No assignment of interest under this Policy will bind **Us** without **Our** consent.

17.  **Entire Agreement:**

The **Insured** agrees that this Policy, including the **Application** and any endorsements, constitutes the entire agreement between every **Insured** and **Us** or any of **Our** agents relating to this insurance.

18.  **Choice of Law:**

All matters arising hereunder, including but not limited to questions related to the validity, interpretation, performance and enforcement of this Policy, shall be determined in accordance with the law and practice of the State of New York, notwithstanding New York's conflicts of law rules.

19.  **Premium:**

The **Named Insured** shall be responsible for payment of all premiums and will be the payee of any return premium.  The Policy premium may be changed at any time if the Policy terms and conditions are changed by, among other things, adding additional insureds, changing limits of liability or extending the **Policy Period**.  The **Named Insured** or its designee agrees to pay all increased premiums promptly in accordance with the Company's invoices.

20.  **Conformity to Statute:**

All terms of this Policy that conflict with any applicable laws or regulations are hereby amended to conform to such laws or regulations.

21.  **Headings:**

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**In witness whereof, the Insurer has caused this Policy to be executed on the Declarations Page.**

ENDORSEMENT NO._____

### ADDITIONAL INSUREDS
### BOARDS, COMMISSIONS OR UNITS

This Endorsement, effective at 12:01 a.m. on  11/03/2019 , forms part of

      Policy No.: POL0951492-01
      Issued to:  Central West Virginia Regional Airport Authority and Central West Virginia Regional Airport Auth
      Issued by:  Indian Harbor Insurance Company

In consideration of the premium charged, it is hereby agreed that:

Section **E. DEFINITIONS**, Item 13. **Insured** definition is amended to include the following boards, commissions or units of the **Named Insured**, and past, present or future duly elected, appointed or employed officials, directors, or members thereof, but ONLY if selected below:

☐      schools;

☐      airports;

☒      transit authorities;

☐      hospitals;

☐      nursing homes;

☐      housing authorities;

☐      port authorities;

☐      utility companies

Provided, however, that if any such board, commission or unit is not specifically selected above, then it, and any officials, directors, members or employees thereof, will be excluded from coverage under this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
(Authorized Representative)

ENDORSEMENT NO._____

**MINIMUM EARNED PREMIUM UPON CANCELLATION**

This Endorsement, effective at 12:01 a.m. on 11/03/2019 , forms part of

Policy No.: POL0951492-01
Issued to:   Central West Virginia Regional Airport Authority and Central West Virginia Regional Ai
Issued by:  Indian Harbor Insurance Company

In consideration of the premium charged, it is hereby agreed that:

Section **F. CONDITIONS**, Item 7. **Cancellation; No Obligation to Renew**, Paragraph b. is deleted in its entirety and replaced as follows:

b.      **You** may cancel this Policy by mailing **Us** written notice stating when, no later than the Expiration Date set forth in Item 2.(b) of the Declarations, such cancellation will be effective.  In such event, the earned premium amount to be retained by **Us** will be the greater of:

(1)      The amount computed in accordance with **Our** customary short rate table and procedure;

(2)      25  % of the total policy premium shown in Item 6. of the Declarations; or

(3)      $ 1,500.00 .

Premium adjustment may be made either at the time that cancellation by **You** is effective or as soon as practicable thereafter. If the Policy Aggregate Limit of Liability, as set forth Item 3.(c) of the Declarations, is exhausted by the payment of **Loss** or **Defense Expenses**, the entire premium will be deemed fully earned.

All other terms, conditions and limitations of this Policy shall remain unchanged.

___ _Martin H. Ranipie, jr._ ___
(Authorized Representative)

ENDORSEMENT NO._____

**DEFENSE COVERAGE FOR TAX-EXEMPT BOND CLAIMS**

This Endorsement, effective at 12:01 a.m. on 11/03/2019 , forms part of

    Policy No.:  POL0951492-01
    Issued to:   Central West Virginia Regional Airport Authority and Central West Virginia Regional Airport
    Issued by:  Indian Harbor Insurance Company

In consideration of the premium charged, it is hereby agreed that:

The following is added to Section **D. EXCLUSIONS**, Item 17:

Provided however, that this Exclusion shall not apply to the payment of **Defense Expenses** for **Claims** arising from the failure of any tax exempt bond issued by **You** to qualify for tax exempt status under state or federal laws.  The most **We** shall pay for all **Defense Expenses** incurred in connection with all such **Claims** shall be $250,000, which amount shall be part of, and not in addition to, the Policy Aggregate Limit of Liability set forth in Item 3. of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
           (Authorized Representative)

**ENDORSEMENT NO._____**

**DEFENSE ONLY REIMBURSEMENT COVERAGE FOR BREACH OF CONTRACT**

This Endorsement, effective at 12:01 a.m. on 11/03/2019 , forms part of

    Policy No.:  POL0951492-01
    Issued to:   Central West Virginia Regional Airport Authority and Central West Virginia Regional Airport ,
    Issued by:  Indian Harbor Insurance Company

In consideration of the premium charged, it is hereby agreed that:

Section **D. EXCLUSIONS** is amended to include:

    **We** shall reimburse for **Defense Expenses** in connection with an **Insured's** liability under
    a contract or agreement $25,000    in the aggregate, which amount shall be part of and not in
    addition to the Limit of Liability set forth in Item 3.(d). of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
(Authorized Representative)

**ENDORSEMENT #**

This endorsement, effective 12:01 a.m.  11/03/2019 , forms a part of Policy No.  POL0951492-01

issued to  Central West Virginia Regional Airport Authority DBA: Central West Virginia Regional

by  Indian Harbor Insurance Company

**SERVICE OF PROCESS**

The Secretary of State of West Virginia is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> Sarah Mims
> Assistant Secretary
> 505 Eagleview Boulevard, Suite 100
> Exton, Pennsylvania 19341-0636

as its agent in West Virginia to whom such process shall be forwarded by the Secretary of State.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms and conditions of this policy remain unchanged.

_____
(Authorized Representative)

XL-WVSOP 11 10

© 2010 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
|---|---|
| Colorado | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable for insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| District of Columbia | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Kansas | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Maine | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| Maryland | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| New Mexico | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **New York** | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.

**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| **Pennsylvania** | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |

PN CW 01 0915

Page 2 of 3

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | **All Commercial Insurance, Except As Provided for Workers' Compensation** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:** It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:** Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison. (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2015 X.L. America, Inc. All Rights Reserved.<br>May not be copied without permission.

NOTICE TO POLICYHOLDERS

**PRIVACY POLICY**

The XL Catlin insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality.  For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies.  For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way.  In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

**Our Privacy Promise**

Your privacy and the confidentiality of your business records are important to us.  Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products.  We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you.  Accordingly, we promise that:

1.  We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2.  We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3.  We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4.  We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5.  We will not disclose information about you or your business to any organization outside the XL Catlin insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6.  We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7.  We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8.  We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

**Collection and Sources of Information**

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services.  The information we collect generally comes from the following sources:

•  Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
•  Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you.  The information we collect will vary with the type of insurance you seek;

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;
- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies.  The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you.  We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so.  The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim.  In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit.  We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law.  If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law.  Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party.  Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment.  "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc.  We also do not disclose to any unaffiliated third party a policy or account number for use in marketing.  We may share with our affiliated companies information that relates to our experience and transactions with the customer.

Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed.  However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you.  We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

PN CW 02 1015

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC and possibly the U.S. Department of State.  **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as *Specially Designated Nationals and Blocked Persons.*  This list can be found on the U.S. Department of the Treasury's web site - http//www.treas.gov/ofac.

The Secretary of the Treasury also has identified a number of entities in the insurance, petroleum, and petrochemicals industries determined to be owned or controlled by the Iranian government. Business transactions with any of these entities are expressly prohibited.  These entities have been added to OFAC's list of *Financial Institutions Determined To Be Owned or Controlled by the Government of Iran.*  This list can be found on the U.S. Department of the Treasury's web site - http://www.treasury.gov/resource-center/sanctions/Programs/Pages/iran.aspx, see List of CISADA and NDAA Prohibitions or Conditions

In accordance with OFAC regulations, or any applicable regulation promulgated by the U.S. Department of State, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

PN CW 05 0914

©2014 X.L. America, Inc.  All rights reserved.  May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.