

TARGETED RESULTS.    EXPERTLY MANAGED.

## Runway 5 Ground Obstruction Removal – A 10-Year Journey

## Yeager Airport (CRW)

March 4, 2015





---

## Speakers



✈ Tim Murnahan
- ✈ Assistant Airport Director for 19 Years
- ✈ Military Service – US Army Helicopter Pilot / Retired

✈ Rick Holes, PE
- ✈ Aviation Services Operations Manager at L.R. Kimball
- ✈ BS in Civil Engineering from The Pennsylvania State University
- ✈ 26 Years with L.R. Kimball
- ✈ 20 Years in Aviation



1

## Yeager Airport (CRW)



→ Largest Airport in West Virginia

→ Named for Chuck Yeager from Myra, WV

→ 20 Daily Flights to 11 Destinations
- → American to Dallas, TX
- → Delta to Atlanta, GA and Detroit, MI
- → Spirit to Myrtle Beach, SC and Fort Lauderdale, FL
- → United to Chicago, IL; Houston, TX; and Washington, DC (Dulles)
- → US Airways to Charlotte, NC; Philadelphia, PA; and Washington, DC (Reagan)

→ 250,509 Enplanements in 2014

→ Home to the WV Air National Guard

→ Single Runway (5-23) 6,802' x 150'

→ ILS Approach to Runway 23 with CAT 1 Minimums



2

## Runway 5 Ground Obstruction Removal



→ Background and Timeline
- → A Preliminary Obstruction Study was completed by L.R. Kimball in 2005
- → Review of Runway End (Threshold) Siting Surfaces identified Obstructions to the 40:1 Departure Surface for R/W 23
- → Most of the southern half of the trapezoid was affected
- → Obstruction was located 4,100' from the R/W 5 Threshold
- → Average Ground Obstruction was 50'+
- → Max. Ground Obstruction was up to 120'
- → Additional Obstructions included trees and houses







3

2







## Runway 5 Ground Obstruction Removal

YEAGER AIRPORT
West Virginia's Gateway

- Runway 23 Departure Surface Information

CDI L.R. Kimball

## Runway 5 Ground Obstruction Removal

YEAGER AIRPORT
West Virginia's Gateway

- More Background Information
  - The obstruction affects departures from Runway 23
    - Limits aircraft takeoff weight during summer months
    - Primarily affects long routes such as Houston and Dallas
    - On some summer days, each flight may lose 3 to 4 seats due to weight restrictions as a result of the departure climb gradient
  - The obstruction also affects approaches to Runway 5
    - Current minimums for the R/W 5 ILS are 500' HAT and 1-1/2 Mile Visibility
    - As a result, during poor weather conditions, Runway is not available for landing
    - Removing the obstruction can potentially reduce the minimums to 200' HAT and 3/4-Mile Visibility

CDI L.R. Kimball

## Runway 5 Ground Obstruction Removal



→ Planning

- → Obstruction would have to be removed to improve both departures from Runway 23 and approaches to Runway 5
- → Affected area was a residential area known as the Coal Branch Neighborhood between the Airport and downtown Charleston






CDI L.R. Kimball

6

## Runway 5 Ground Obstruction Removal

→ Coal Branch Neighborhood Subdivision Plan

CDI L.R. Kimball

7

## Runway 5 Ground Obstruction Removal

YEAGER AIRPORT
*West Virginia's Gateway*

→Environmental
- → Completed a full Environmental Assessment in 2006/2007
- → Area of Impact was identified
  - →Graded area
  - →Buffer zone
- → Wetlands and streams were identified
- → Indiana Bat Habitat was identified





CDI L.R. Kimball

8

## Runway 5 Ground Obstruction Removal

YEAGER AIRPORT
*West Virginia's Gateway*

→Land Acquisition
- → Airport Authority started the Land Acquisition process in 2008
- → O.R. Colan was brought in to manage land acquisition
- → Total land acquired was nearly 39 acres
  - →Included 60 separate properties, 9 residences and 3.8 acres of City of Charleston Streets

   
   

 L.R. Kimball

9

5

# Runway 5 Ground Obstruction Removal

YEAGER AIRPORT
*West Virginia's Gateway*

⊹Land Acquisition

- ⊹ Vast majority of the land in Coal Branch was owned by Corotoman, Inc, a local developer
- ⊹ The Airport Authority negotiated a Land-Use Agreement with Corotoman
- ⊹ A total of 10 properties were acquired through eminent domain
- ⊹ Last property was acquired in early 2013
- ⊹ Total Value of Land Acquisition = $958,400
- ⊹ The Airport Authority demolished the homes after acquisition



CDI L.R. Kimball

10

# Runway 5 Ground Obstruction Removal

YEAGER AIRPORT
*West Virginia's Gateway*

⊹Property Acquisition Summary



CDI L.R. Kimball

11

6

## Runway 5 Ground Obstruction Removal 

→ Design
- → Site was primarily the top of a hill with a ridge running through the middle
- → Site was to be cut to 10' below the departure surface elevation
- → Depth of cut varied from 15' to 95'
- → Site was to be graded to drain away from residential area
- → Two sedimentation/detention basins were constructed
- → Rock was cut to 2' below finish grade
- → 18" of subsoil and 6" of topsoil was placed on finished rock
- → Total Earthwork = 1,350,000 CY



12

## Runway 5 Ground Obstruction Removal 

→ Design (Continued)
- → It was decided to allow the Contractor to identify a waste area
- → Several potential sites were located within a mile of the site
- → Access to the site was a major issue
    - → City streets are very narrow and steep
    - → Residences were located very close to streets
    - → An easement was negotiated with an adjacent landowner to provide access from Deitrick Boulevard (Private Street)
    - → $300,000 was set aside for Deitrick Boulevard maintenance
- → Former streets would be available for Contractor vehicle access
- → An allowance was included for hazardous material disposal



13





## Runway 5 Ground Obstruction Removal

YEAGER AIRPORT
West Virginia's Gateway

✈ Access Road Plan



 L.R. Kimball

16

## Runway 5 Ground Obstruction Removal

YEAGER AIRPORT
West Virginia's Gateway

✈ Public Involvement

- ✈ Significant blasting was required for project
- ✈ Airport had major blasting issues during previous projects
- ✈ Blasting would occur within 100' of residences
- ✈ Airport used local media to inform the public
    - ✈ TV and Radio interviews
    - ✈ Encouraged video of site
- ✈ A public meeting was held at St. Stephens Church in Coal Branch
    - ✈ City Councilman was invited to participate
    - ✈ Approximately 50 people attended
    - ✈ Most people were overwhelmingly supportive
    - ✈ Additional residences were added to Pre-Blast Survey
- ✈ A Local Liaison was established by the Airport
- ✈ Blasting complaint form was provided on Airport website

 L.R. Kimball

17

## Runway 5 Ground Obstruction Removal    YEAGER AIRPORT
*West Virginia's Gateway*

→ Phase 1 Construction – Tree Removal (March 2013)

    → Work included access road construction, clearing for 24 acres of trees and 6,500' of 36" super silt fence installation

    → Contractor was required to remove trees and chip all limbs

    → Contractor was S&E Clearing and Hydroseeding of Pineville, WV

    → Contract Value = $455,000



**CDI** L.R. Kimball

18

## Runway 5 Ground Obstruction Removal    YEAGER AIRPORT
*West Virginia's Gateway*

→ Tree Removal Plan

AP-05

**CDI** L.R. Kimball

19

## Runway 5 Ground Obstruction Removal



→ Phase 2 Construction – Earthwork (October 2013-Present)

  ✦ Work included permanent access road construction, all grading, stormwater management and erosion and sedimentation controls

  ✦ Contractor was responsible for identifying, negotiating, permitting and constructing a waste area

  ✦ Contractor is Central Contracting, Inc. from St. Albans, WV

  ✦ Contract Value = $13,245,310.88










20

## Runway 5 Ground Obstruction Removal



→ Pre-Blast Survey

  ✦ Contractor was required to hire a Blasting Subcontractor and a Seismic Subcontractor to oversee and monitor blasting

  ✦ Dyno Nobel from Charleston handled all blasting

  ✦ Sauls Seismic, Inc. from Logan, WV provided the Pre-Blast Surveys and Seismic Monitoring

  ✦ A Pre-Blast Survey Area was established within 1,000' of the site perimeter

  ✦ Additional structures were added in areas of prior concern from previous projects

  ✦ All structures within the area were given an ID number and were included in the Survey



21





# Runway 5 Ground Obstruction Removal    YEAGER AIRPORT

→ Construction Information

    → Contract time is 600 continuous calendar days

      →No stop of contract time for weather

    → Construction started on September 23, 2013

    → Contractor was required to construct an access road from Deitrick Boulevard to Twilight Drive

    → Blasting was initially scheduled to start January 6, 2014, but was delayed due to weather.

    → On January 9, 2014, the Freedom Industries chemical spill occurred immediately downstream of the Airport and the Site

    → First blast occurred the week of February 17, 2014



23

## Runway 5 Ground Obstruction Removal



→ Waste Area

- → An adjacent valley was identified by the Contractor as the preferred waste area.
- → Property was primarily owned by Corotoman, Inc. with an additional 13+ acres owned by the Nutter Family
- → The Contractor negotiated a fee with Corotoman, Inc. for the placement of fill on that property
- → The Kanawha County Economic Development Authority purchased the Nutter Farm for use as a Waste Area
- → Approximately 125' of fill will be placed in the valley
- → Waste area will result in a 12-acre graded area for future development
- → The access road for the project will be developed as a permanent access to both the cut and fill sites



24

## Runway 5 Ground Obstruction Removal



→ Earthwork Project Construction Photos
(Sept. 2013 to Feb. 2014)








25

13









## Runway 5 Ground Obstruction Removal  YEAGER AIRPORT
*West Virginia's Gateway*

�’Earthwork Project Construction Photos (Nov./Dec. 2014)



CDI L.R. Kimball

30

## Runway 5 Ground Obstruction Removal  YEAGER AIRPORT
*West Virginia's Gateway*

�’Earthwork Project Summary Through December 2014
- �’ Total cost to date = $12,480,150
- �’ Total volume of material removed = 1,265,886 CY
- �’ All drainage installation has been completed
- �’ Approximately 75% of the final area has been covered with subsoil, and topsoiled and seeded
- �’ Approximately 180 trees have been cut around the site perimeter




CDI L.R. Kimball

31

## Runway 5 Ground Obstruction Removal

YEAGER AIRPORT
West Virginia's Gateway

- Remaining Work for Spring 2015
  - Approximately 50,000 CY of material remains to be removed
  - All blasting has been completed
  - Airport will repave Deitrick Boulevard
  - Stabilize new site access road
  - Maintain all E&S measures until NPDES Permit is satisfied
  - Complete final as-built survey of site
  - Submit as-built survey information to FAA to determine new Runway 23 departure requirements and new Runway 5 approach minimums
  - Projected final cost is approximately $250,000 below bid

CDI L.R. Kimball

32

## Runway 5 Ground Obstruction Removal

YEAGER AIRPORT
West Virginia's Gateway

- Project Summary
  - Total Project Duration = 10 years
  - Final Cost = $17,239,500 +/-
    - Preliminary Obstruction Study = $182,500
    - Environmental Assessment = $231,000
    - Land Acquisition Fees = $303,900
    - Land Acquisition Costs = $958,400
    - Design = $438,000
    - Tree Clearing Construction = $513,200
    - Earthwork Construction = $14,612,500

CDI L.R. Kimball

33



## Thank You

For Additional Information Contact:

**L.R. Kimball**
**Rick Holes, PE**
Operations Manager - Aviation Services
Office Phone: 814-472-7700, Ext. 601272
Cell Phone: 814-659-7565
Rick.Holes@LRKimball.com
www.lrkimball.com



34

# EXHIBIT S

# EXHIBIT B

# GENERAL WARRANTY DEED
# TO COROTOMAN

## GENERAL WARRANTY DEED

     This **DEED** is made this _____ day of _____, 201____, by and between the **Central West Virginia Regional Airport Authority**, a West Virginia public corporation ("Airport Authority"), and **Corotoman, Inc.**, a West Virginia corporation ("Corotoman").

### W I T N E S S E T H

     For and in consideration of the premises set forth in that certain Settlement Agreement dated _____, 201____, by and between the parties hereto, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Airport Authority does hereby **GRANT AND CONVEY** unto Corotoman all of its right, interest, and title, together with all appurtenances thereto, in and to those certain lots, tracts, or parcels of real estate, all situate in Kanawha County, West Virginia, and more particularly described in **Exhibit B-1**, attached hereto and incorporated herein by reference.

     This conveyance is made subject to (1) all those exceptions, reservations, and encumbrances expressly set forth in **Exhibit B-1**; (2) all encumbrances visible on the ground, (3) the lien of real estate taxes for the year 2012; and (4) all easements, rights of way, liens, mortgages, deeds of trust, encumbrances, leases, and other matters affecting title recorded with the Clerk of the Kanawha County Commission prior to the date of this Deed.

     Subject to the foregoing, the Airport Authority hereby covenants that it will **WARRANT GENERALLY** the real estate herein conveyed and that the same is clear and free of all liens and encumbrances.

     The Airport Authority hereby declares this conveyance is exempt from the tax imposed by W. Va. Code §§ 11-22-1, *et seq.* because it is a conveyance from an instrumentality of the State of West Virginia.

**IN WITNESS WHEREOF,** the Central West Virginia Regional Airport Authority has executed this Deed as of the date first written above.

<div align="center">

CENTRAL WEST VIRGINIA
REGIONAL AIRPORT AUTHORITY

By: _____

Its: _____

</div>

STATE OF WEST VIRGINIA;
COUNTY OF KANAWHA, to wit:

    This instrument was acknowledged before me this _____ day of _____, 201___, by _____,

as _____ of the Central West Virginia Regional Airport Authority.

<div align="center">

_____
NOTARY PUBLIC

</div>

This instrument was prepared by    Joseph K. Merical, Esq., ROBINSON & MCELWEE, PLLC,
P.O. Box 1791, Charleston, WV 25236

## EXHIBIT B-1

### PROPERTY CONVEYED TO COROTOMAN

[Full legal descriptions shall be provided by the Airport Authority prior to Closing.  The property conveyed shall consist of the following Parcels as shown on 2011 Tax Map 46, Charleston North District, Kanawha County, West Virginia: Parcels 54, 55, 58, 59, 60, 62, 63, 64, 65, 96, 101, 102, 119, 120, 121, 124, 127, 128, 131, 134, 137, 138, 139, 140, 145, 149, 150, 151, 152, 153, 154, 155, 192, 196, 197, 198, 199, 200, 204, 208, 209, 210, 214, and 215.]

# Corotoman, Inc.

200 Association Drive, Ste 140 • Charleston • WV 25311
Phone 304-346-2900 • Fax 304-346-3798

Central WV Regional Airport Authority
ATTN: Mr. Rick Atkinson, Airport Director
100 Airport Road, Suite 175
Charleston, WV 25311-1080

August 6, 2012

Dear Mr. Atkinson,

Please indicate by countersigning this letter, you agree that tract shown on attached Exhibit B-1 is suitable to meet the requirements of Section 3.02, "Conveyance to Airport Authority", of the Settlement Agreement Between The Central West Virginia Airport Autority and Corotoman, Inc.

Upon receipt of this countersigned letter, we will subdivide the parcel and prepare it for transfer of the deed under Exhibit B.

Sincerely,

John H. Wellford, III
President, Corotoman, Inc.

Date: _8/06/2012_

Signed in Agreement,

By:_____

Its:_____

Date:_____



Exhibit B-1

"PARCEL TO YEAGER AIRPORT OUT OF NORTHGATE"

Area  285563.4353 = 6.556 Acres
Perimeter  3821.5083

P.O.B.    X=1797328.8996  Y=496928.5818  Z=  0.0000
at point  X=1797299.0311  Y=496999.2705  Z=  0.0000
at point  X=1797135.5382  Y=497054.2513  Z=  0.0000
at point  X=1796969.8670  Y=496992.5994  Z=  0.0000
at point  X=1796932.8666  Y=497015.2494  Z=  0.0000
at point  X=1796764.7612  Y=497092.0612  Z=  0.0000
at point  X=1796681.6447  Y=497157.8658  Z=  0.0000
at point  X=1796597.1450  Y=497122.0370  Z=  0.0000
at point  X=1796370.9605  Y=497092.2200  Z=  0.0000
at point  X=1796356.4912  Y=497159.6491  Z=  0.0000
at point  X=1796334.8160  Y=497259.9528  Z=  0.0000
at point  X=1796340.0454  Y=497399.3200  Z=  0.0000
at point  X=1796195.0100  Y=497513.2000  Z=  0.0000
at point  X=1796058.2600  Y=497586.7100  Z=  0.0000
at point  X=1796022.3450  Y=497632.1200  Z=  0.0000
at point  X=1796168.1977  Y=497755.0449  Z=  0.0000
at point  X=1796235.9530  Y=497678.1540  Z=  0.0000
at point  X=1796330.9530  Y=497630.1540  Z=  0.0000
at point  X=1796348.6865  Y=497632.0032  Z=  0.0000
at point  X=1796381.0130  Y=497635.3740  Z=  0.0000
at point  X=1796827.0130  Y=497089.2140  Z=  0.0000
at point  X=1797136.4430  Y=497310.0940  Z=  0.0000
at point  X=1797326.5730  Y=497196.6740  Z=  0.0000
at point  X=1797336.6927  Y=496928.5871  Z=  0.0000
P.O.B.    X=1797328.8996  Y=496928.5818  Z=  0.0000

# EXHIBIT T

# EXHIBIT C

# GENERAL WARRANTY DEED
# TO THE AIRPORT AUTHORITY

## GENERAL WARRANTY DEED

This **DEED** is made this _____ day of _____, 201____, by and between **Corotoman, Inc.**, a West Virginia corporation ("Corotoman"), and **Central West Virginia Regional Airport Authority**, a West Virginia public corporation ("Airport Authority").

### W I T N E S S E T H

For and in consideration of the premises set forth in that certain Settlement Agreement dated _____, 201___, by and between the parties hereto, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Corotoman does hereby **GRANT AND CONVEY** unto the Airport Authority all of its right, interest, and title, together with all appurtenances thereto, in and to those certain lots, tracts, or parcels of real estate, all situate in Kanawha County, West Virginia, and more particularly described in **Exhibit C-1**, attached hereto and incorporated herein by reference.

Corotoman, for itself and its successors, assigns, designees, contractors, and lessees, hereby expressly **EXCEPTS** and **RESERVES** from the operation of this Deed all of its interest in the coal, oil, gas, stone, water, and other minerals of every kind and character in, on, and underlying the property conveyed herein, together with the right to mine, drill for, or otherwise remove the same therefrom and to engage in any and all undertakings in, upon, under, and across said property reasonably necessary or prudent for said mining, drilling, or removal, subject to any applicable state and federal laws, regulations, and permitting requirements.

This conveyance is made subject to (1) all those exceptions, reservations, and encumbrances expressly set forth in **Exhibit C-1**; (2) all encumbrances visible on the ground, (3) the lien of real estate taxes for the year 2012; and (4) all easements, rights of way, liens,

mortgages, deeds of trust, encumbrances, leases, and other matters affecting title recorded with the Clerk of the Kanawha County Commission prior to the date of this Deed.

Subject to the foregoing, Corotoman hereby covenants that it will **WARRANT GENERALLY** the real estate herein conveyed and that the same is clear and free of all liens and encumbrances.

Corotoman hereby declares this conveyance is exempt from the tax imposed by W. Va. Code §§ 11-22-1, *et seq.* because it is a conveyance to an instrumentality of the State of West Virginia.

**IN WITNESS WHEREOF,** Corotoman, Inc. has executed this Deed as of the date first written above.

**COROTOMAN, INC.**

By: _____

Its: _____

STATE OF WEST VIRGINIA;
COUNTY OF KANAWHA, to wit:

This    instrument    was    acknowledged    before    me    this    _____    day    of

_____, 201___, by _____,

as _____ of Corotoman, Inc.

_____
NOTARY PUBLIC

This instrument was prepared by    Joseph K. Merical, Esq., ROBINSON & MCELWEE, PLLC,
                                   P.O. Box 1791, Charleston, WV 25236

2

## EXHIBIT C-1

### PROPERTY CONVEYED TO THE AIRPORT AUTHORITY

[Full legal descriptions shall be provided by Corotoman prior to Closing.]

# EXHIBIT U

# EXHIBIT D

# AVIGATION EASEMENT

{R0694283.1}

000235
Response to Subpoena Duces Tecum
Confidential

## AVIGATION EASEMENT AGREEMENT

This Avigation Easement Agreement ("Easement Agreement") dated _____, 201___, is entered into between Corotoman, Inc., a West Virginia corporation ("Corotoman"), and the Central West Virginia Regional Airport Authority, a public corporation created pursuant to West Virginia Code §§ 8-29-1 *et seq.* ("Airport Authority").

## W I T N E S S E T H

**WHEREAS,** the Airport Authority is the owner and operator of Yeager Airport ("Airport") in Kanawha County, West Virginia;

**WHEREAS,** Corotoman is the owner of certain tracts of land, all located adjacent to or near the Airport in Kanawha County, West Virginia, collectively referred to herein as the Subject Property and more particularly described in **Exhibit D-1**, attached hereto and incorporated herein by reference;

**WHEREAS,** by agreement dated _____, 201__ ("Settlement Agreement"), Corotoman and the Airport Authority mutually agreed to resolve any and all claims regarding the threatened condemnation of certain real property owned by Corotoman, including parts of the Subject Property;

**WHEREAS,** pursuant to the Settlement Agreement, the Airport Authority desires to obtain, and Corotoman desires to grant, an avigation easement over the Subject Property through a particular portion of the airspace above the Subject Property, said airspace referred to herein as the Aircraft Approach Zone and more particularly described in **Exhibit D-2**, attached hereto and incorporated herein by reference; and

**WHEREAS,** the easement to be granted herein shall only be granted for the airspace that lies above an imaginary plane (the elevation of said imaginary plane referred to herein as the "Base Easement Elevation") beginning at an elevation of 936.4 feet above mean sea level along the imaginary line depicted as baseline station 0+00 on **Exhibit D-3** (attached hereto and incorporated herein by reference), then extending and rising in a generally southwesterly direction, conterminously with the Aircraft Approach Zone, at a rate of 0.025 feet vertically for each 1 foot horizontally, and being parallel to and approximately 10 feet below the Runway 5 Approach Elevation illustrated on **Exhibit D-3**.

**NOW, THEREFORE,** for and in consideration of the premises, and mutual covenants and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which the parties hereby acknowledge, the parties hereby covenant and agree as follows:

1.    **Incorporating Recitals.** The recitals above shall constitute part of this Easement Agreement and are incorporated herein by reference.

2.    **Grant of Avigation Easement.** Corotoman hereby grants and conveys to the Airport Authority, and its successors in ownership of the Airport, an exclusive easement ("Avigation Easement") for the free, unobstructed use and passage of all types of aircraft in and

{R0694283.1}

000236
Response to Subpoena Duces Tecum
Confidential

through those portions of the Aircraft Approach Zone exceeding the Base Easement Elevation and situated above the Subject Property.

3. **Reversion.** The Avigation Easement shall only last for so long as it is used for the purpose of an aircraft approach zone for Yeager Airport by the Airport Authority or its successors in ownership of Yeager Airport. Should the Avigation Easement cease to be used for this purpose, it shall be deemed abandoned and shall automatically revert to Corotoman, its successors, and/or assigns in ownership of the Subject Property underlying the Avigation Easement.

4. **Improvements.** Corotoman, for itself and its successors and assigns in ownership of the Subject Property, covenants that no improvement of any type shall be constructed or placed on the Subject Property in such as a way as to interfere with or obstruct the Avigation Easement. Notwithstanding this covenant, Corotoman, its successors, assigns, employees, agents, and contractors shall retain the absolute right to construct any and all improvements on the Subject Property, so long as said improvements do not exceed the Base Easement Elevation, and shall be entitled to make any and all reasonable uses of the Subject Property that do not interfere with the Airport Authority's rights hereunder. Furthermore, notwithstanding anything in this Easement Agreement or any other related agreement to the contrary, the Airport Authority agrees to reasonably accommodate, in good faith, Corotoman's construction efforts that may temporarily exceed the Base Easement Elevation or encroach into any area required to be free of permanent obstructions under applicable federal or state laws, rules, or regulations.

5. **Natural Obstructions.** The Airport Authority shall have the continuing right to keep the Avigation Easement clear and free from any and all crops, trees, and other natural growth of any kind which now extend, or which may, in the immediate future extend, into the Avigation Easement. Upon twenty (20) days' written notice to Corotoman, its successors, or assigns, or in cases of imminent danger to public health, safety, or welfare, the Airport Authority shall have the right to enter onto Corotoman's property for the sole and limited purpose of removing such obstructions. The removal of any obstruction or potential obstruction to the Avigation Easement shall be at the Airport Authority's sole expense. The parties agree that Corotoman, its successors, and assigns, shall be under no obligation to remove, trim, or pay for the removal or trimming of any tree or other natural obstruction.

6. **Airport Safety Devices.** The Airport Authority shall have the continuing right to construct and maintain any airport safety devices required by federal or state laws, rules, or regulations on, across, over, or above the Subject Property or any improvements thereon. Upon twenty (20) days' written notice to Corotoman, its successors, or assigns, or in cases of imminent danger to public health, safety, or welfare, the Airport Authority shall have the right to enter onto Corotoman's property for the sole and limited purpose of constructing, maintaining, repairing, replacing, and/or removing said safety devices, including the right to construct and install said safety devices on any structures owned by Corotoman and located on the Property now or in the future. The Airport Authority shall be solely responsible for the construction, maintenance, replacement, repair, removal, and costs of said safety devices. The parties agree that Corotoman, its successors, and assigns, shall be under no obligation to construct, maintain, repair, replace,

{R0694283.1}

2

000237
Response to Subpoena Duces Tecum
Confidential

remove, or pay for said safety devices, including any safety devices install or constructed on Corotoman's structures.

7. **Disclaimer.** Corotoman makes no representation, warranty, or promise regarding the Subject Property, including but not limited to, representation or warranty as to physical or environmental condition, zoning, presence of hazardous substances, or any other matter or thing affecting or related to the Subject Property.

8. **Indemnification.** The Airport Authority agrees to indemnify, defend, and hold Corotoman, its directors, officers, employees, agents, assigns, successors, contractors, and subcontractors, harmless from and against any and all liabilities, costs, demands, actions, judgments, expenses, losses or damages, including (but not limited to) attorneys' fees, which Corotoman may incur, or which may be asserted against Corotoman, arising or alleged to arise, from or in connection with the use of the Avigation Easement by the Airport Authority, its directors, officers, employees, agents, assigns, successors, contractors, and/or subcontractors. The Airport Authority's obligations under this Paragraph shall survive the later termination of this Easement Agreement.

9. **Successors.** This Easement Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors in ownership of their respective property.

10. **Recordation.** The Airport Authority shall cause this Easement Agreement to be recorded in the Office of the Clerk of Kanawha County, West Virginia, at its expense.

11. **Runs with the Land.** The Avigation Easement granted herein shall run with and burden the land upon which said easement is located.

*[Signatures on Next Page]*

{R0694283.1}                                        3

000238
Response to Subpoena Duces Tecum
Confidential

**IN WITNESS WHEREOF,** the parties have executed this Avigation Easement Agreement to be effective as of the date first written above.

**CENTRAL WEST VIRGINIA
REGIONAL AIRPORT AUTHORITY**

By: _____

Its: _____

STATE OF WEST VIRGINIA;
COUNTY OF KANAWHA, to wit:

This instrument was acknowledged before me this _____ day of _____, 201___, by _____, as _____ of the Central West Virginia Regional Airport Authority.

_____
NOTARY PUBLIC

**COROTOMAN, INC.**

By: _____

Its: _____

STATE OF WEST VIRGINIA;
COUNTY OF KANAWHA, to wit:

This instrument was acknowledged before me this _____ day of _____, 201___, by _____, as _____ of the Corotoman, Inc.

_____
NOTARY PUBLIC

000239
Response to Subpoena Duces Tecum
Confidential

This instrument was prepared by    Joseph K. Merical, Esq., ROBINSON & MCELWEE, PLLC,
P.O. Box 1791, Charleston, WV 25236

000240
Response to Subpoena Duces Tecum
Confidential

**Exhibit D-1**

The Subject Property shall consist of all of the following properties, all situate in Charleston North District, Kanawha County, West Virginia, and all as shown on Plat of _____, admitted to record in the Office of the Clerk of the Kanawha County Commission, on _____, 20___, at Map Book _____, Page _____:

| Tax Map | Parcel | Description | Deed Bk. | Page |
|---|---|---|---|---|
| | | **COROTOMAN TRACT ONE** | | |
| 46 | 69 | Lot 1 Block 4 Armor Plate Addition (Ballard Street) | 2315 | 819 |
| " | 70 | Lot 2 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 71 | Lot 3 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 72 | Lot 4 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 73 | Lot 5 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 74 | Lot 6 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 75 | Lot 7 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 76 | Lot 8 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 77 | Lot 9 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 78 | Lot 10 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 79 | Lot 11 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| | | | | |
| | | **COROTOMAN TRACT TWO** | | |
| 46 | 80 | Lot 12 Block 4 Armor Plate Addition (Ballard Street) | 2315 | 819 |
| " | 81 | Lot 13 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 82 | Lot 14 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 83 | Lot 15 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 84 | Lot 16 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 85 | Lot 17 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 86 | Lot 18 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 87 | Lot 19 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 88 | Lot 20 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 89 | Lot 21 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 90 | Lot 22 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 91 | Lot 23 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 92 | Lot 24 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 93 | Lot 25 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 94 | Lot 26 Block 4 Armor Plate Addition (Ballard Street) | " | " |
| " | 95 | Lot 27 Block 4 Armor Plate Addition (Ballard Street) | " | " |

000241
Response to Subpoena Duces Tecum
Confidential

| Tax Map | Parcel | Description | Deed Bk. | Page |
|---|---|---|---|---|
| | | **COROTOMAN TRACT THREE** | | |
| 46 | 103 | Lot 5 Block 5 Armor Plate Addition (Twilight Street) | 2315 | 819 |
| " | 104 | Lot 6 Block 5 Armor Plate Addition (Twilight Street) | " | " |
| | | **COROTOMAN TRACT FOUR** | | |
| 46 | 106 | Lot 8 Block 5 Armor Plate Addition (Twilight Street) | 2315 | 819 |
| " | 107 | Lot 9 Block 5 Armor Plate Addition (Twilight Street) | " | " |
| " | 108 | Lot 10 Block 5 Armor Plate Addition (Twilight Street) | " | " |
| " | 109 | Lot 11 Block 5 Armor Plate Addition (Twilight Street) | " | " |
| " | 110 | Lot 12 Block 5 Armor Plate Addition (Twilight Street) | " | " |
| " | 111 | Lot 13 Block 5 Armor Plate Addition (Twilight Street) | " | " |
| " | 112 | Lot 14 Block 5 Armor Plate Addition (Twilight Street) | " | " |
| " | 113 | Lot 15 Block 5 Armor Plate Addition (Twilight Street) | " | " |
| " | 114 | Lot 16 Block 5 Armor Plate Addition (Twilight Street) | " | " |
| " | 115 | Lot 17 Block 5 Armor Plate Addition (Twilight Street) | " | " |
| " | 116 | Lot 18 Block 5 Armor Plate Addition (Twilight Street) | " | " |
| " | 117 | Lot 19 Block 5 Armor Plate Addition (Twilight Street) | " | " |
| " | 118 | Lot 20 Block 5 Armor Plate Addition (Twilight Street) | " | " |
| | | **COROTOMAN TRACT FIVE** | | |
| 46 | 129 | Lot 33 Block 5 Armor Plate Addition (Denton Street) | 2376 | 89 |
| | | **COROTOMAN TRACT SIX** | | |
| 46 | 132 | Lot 38 Block 5 Armor Plate Addition (Denton Street) | 2376 | 80 |
| " | 133 | Lot 39 Block 5 Armor Plate Addition (Denton Street) | " | " |
| | | **COROTOMAN TRACT SEVEN** | | |
| 46 | 135 | Lot 41 Block 5 Armor Plate Addition (Denton Street) | 2315 | 819 |
| " | 136 | Lot 42 Block 5 Armor Plate Addition (Denton Street) | " | " |
| | | **COROTOMAN TRACT EIGHT** | | |
| 46 | 190 | Lot 42 Block 6 Armor Plate Addition (A Street) | 2315 | 819 |
| " | 191 | Lot 41 Block 6 Armor Plate Addition (A Street) | " | " |
| | | **COROTOMAN TRACT NINE** | | |
| 46 | 193 | Lot 38 Block 6 Armor Plate Addition (A Street) | 2315 | 819 |
| " | 194 | Lot 37 Block 6 Armor Plate Addition (A Street) | " | " |
| " | 195 | Corner Lot (109' x 80' x 34') Block 6 Armor Plate Addition (A & B Streets) | " | " |

{R0694283.1}

000242
Response to Subpoena Duces Tecum
Confidential

| Tax Map | Parcel | Description | Deed Bk. | Page |
|---|---|---|---|---|
| | | **COROTOMAN TRACT TEN** | | |
| | | **(EXCEPTING ANY UNDIVIDED INTEREST THAT MAY BE OWNED BY** | | |
| | | **WAYNE NELSON, HIS SUCCESSORS, HEIRS, AND/OR ASSIGNS)** | | |
| 46 | 201 | Lots 30–31 Block 6 Armor Plate Addition (Denton Street) | 2376 | 94 |
| | | **COROTOMAN TRACT ELEVEN** | | |
| 46 | 205 | Lot 26 Block 6 Armor Plate Addition (Denton Street) | 2315 | 819 |
| | | **COROTOMAN TRACT TWELVE** | | |
| | | **(EXCEPTING ANY UNDIVIDED INTEREST THAT MAY BE OWNED BY RICKY** | | |
| | | **DAVIS, HIS SUCCESSORS, HEIRS, AND/OR ASSIGNS)** | | |
| 46 | 216 | Lot 11 Block 6 Armor Plate Addition (B Street) | 2766 | 865 |
| " | 217 | Lot 12 Block 6 Armor Plate Addition (B Street) | " | 886 |
| " | 218 | Lot 13 Block 6 Armor Plate Addition (B Street) | " | 929 |
| " | 219 | Lot 14 Block 6 Armor Plate Addition (B Street) | " | 952 |
| " | 220 | Lot 15 Block 6 Armor Plate Addition (B Street) | " | 906 |
| | | **COROTOMAN TRACT THIRTEEN** | | |
| 46 | 221 | Lot 16 Block 6 Armor Plate Addition (B Street) | 2315 | 819 |
| " | 222 | Lot 17 Block 6 Armor Plate Addition (B Street) | " | " |
| " | 223 | Lot 18 Block 6 Armor Plate Addition (B Street) | " | " |
| " | 224 | Lot 19 Block 6 Armor Plate Addition (B Street) | " | " |
| " | 225 | Lot 20 Block 6 Armor Plate Addition (B Street) | " | " |
| " | 226 | Lot 21 Block 6 Armor Plate Addition (B Street) | " | " |
| " | 227 | Lot 22 Block 6 Armor Plate Addition (B Street) | " | " |
| " | 228 | Lot 23 Block 6 Armor Plate Addition (B Street) | " | " |
| " | 229 | Lot 24 Block 6 Armor Plate Addition (B Street) | " | " |
| " | 230 | Lot 25 Block 6 Armor Plate Addition (B Street) | " | " |
| | | **COROTOMAN TRACT FOURTEEN** | | |
| 46 | 56 | Lot 40 Block 2 Armor Plate Addition (Twilight Street) | 2315 | 819 |
| " | 57 | Lot 41 Block 2 Armor Plate Addition (Twilight Street) | 2376 | 114 |
| | | **COROTOMAN TRACT FIFTEEN** | | |
| 46 | 61 | Lot 33 Block 3 Armor Plate Addition (Twilight Street) | 2447 | 149 |
| | | **COROTOMAN TRACT SIXTEEN** | | |
| 46 | 144 | Lot 45 Block 7 Armor Plate Addition (Denton Street) | 2315 | 819 |

{R0694283.1}                               3

000243
Response to Subpoena Duces Tecum
Confidential

| Tax Map | Parcel | Description | Deed Bk. | Page |
|---|---|---|---|---|
| | | **COROTOMAN TRACT SEVENTEEN** | | |
| 46 | 66 | Lot 48 Block 3 Armor Plate Addition (Twilight Street) | 2315 | 819 |
| " | 67 | Lot 49 Block 3 Armor Plate Addition (Twilight Street) | " | " |
| " | 68 | Lot 50 Block 3 Armor Plate Addition (Twilight Street) | " | " |
| | | **COROTOMAN TRACT EIGHTEEN** | | |
| 46 | 141 | Lots 50–51–52 Block 7 Armor Plate Addition (Denton Street) | 2447 | 149 |
| " | 142 | Lots 47–48–49 Block 7 Armor Plate Addition (Denton Street) | 2394 | 101 |
| " | 143 | Lot 46 Block 7 Armor Plate Addition (Denton Street) | 2315 | 819 |
| | | **COROTOMAN TRACT NINETEEN** | | |
| 46 | 147 | Lot 1 Block 7 Armor Plate Addition (Denton Street) | 2431 | 318 |
| | | **CORTOMAN TRACT TWENTY** | | |
| 46 | 156 | Lots 14–15 Block 7 Armor Plate Addition (Denton Street) | 2447 | 149 |
| | | **COROTOMAN TRACT TWENTY-ONE** | | |
| 46 | 122 | Lot 25 Block 5 Armor Plate Addition (Denton Street) | 2376 | 91 |
| " | 123 | Lots 26 –27 Block 5 Armor Plate Addition (Denton Street) | " | 97 |
| | | **COROTOMAN TRACT TWENTY-TWO** | | |
| 46 | 202 | Lot 29 Block 6 Armor Plate Addition (Denton Street) | 2315 | 819 |
| " | 203 | Lot 28 Block 6 Armor Plate Addition (Denton Street) | " | " |
| | | **COROTOMAN TRACT TWENTY-THREE** | | |
| 46 | 130 | Lot 34 Block 5 Armor Plate Addition (Denton Street) | 2447 | 149 |
| | | **COROTOMAN TRACT TWENTY-FOUR** | | |
| 46 | 231 | 9.9 Acres Tanyard Brook | 2288 | 309 |
| " | 232 | 30.81 Acres Tanyard Brook (Tracts 10–12) | " | 268 |
| 49 | 140 | 19.81 Acres Coal Bridge Heights | " | " |
| | | **COROTOMAN TRACT TWENTY-FIVE** | | |
| 46 | 146 | Lots 41–42 Block 7 Armor Plate Addition (Denton Street) | 2690 | 342 |

000244
Response to Subpoena Duces Tecum
Confidential

| Tax Map | Parcel | Description | Deed Bk. | Page |
|---|---|---|---|---|
| | | **COROTOMAN TRACT TWENTY-SIX** | | |
| 46 | 184 | Lot 30 Block 7 Armor Plate Addition (Kent Street) | 2315 | 819 |
| " | 185 | Lots 31–32 Block 7 Armor Plate Addition (Kent Street) | 2376 | 106 |
| " | 186 | Lot 33 Block 7 Armor Plate Addition (Kent Street) | 2315 | 819 |
| " | 187 | Lot 34 Block 7 Armor Plate Addition (Kent Street) | " | " |
| " | 188 | Lot 35 Block 7 Armor Plate Addition (Kent Street) | " | " |
| " | 189 | Lot 36 Block 7 Armor Plate Addition (Kent Street) | " | " |

[The Subject Property shall also consist of the following Parcels as shown on 2011 Tax Map 46, Charleston North District, Kanawha County, West Virginia: Parcels 54, 55, 58, 59, 60, 62, 63, 64, 65, 96, 101, 102, 119, 120, 121, 124, 127, 128, 131, 134, 137, 138, 139, 140, 145, 149, 150, 151, 152, 153, 154, 155, 192, 196, 197, 198, 199, 200, 204, 208, 209, 210, 214, and 215.  Descriptions and deed book references shall be provided by the Airport Authority prior to Closing.]

{R0694283.1}

5

000245
Response to Subpoena Duces Tecum
Confidential

**Exhibit D-2**

[Metes and bounds description of the Aircraft Approach Zone to be provided later by the Airport Authority.]

{R0694283.1}

000246
Response to Subpoena Duces Tecum
Confidential

**Exhibit D-3**

**[Map similar to IDENTIFICATION OF RUNWAY 5 APPROACH ELEVATION AT ANY POINT WITHIN APPROACH showing calculation of approach zone elevations]**

{R0694283.1}

000247
Response to Subpoena Duces Tecum
Confidential

# EXHIBIT V

## AMENDMENT TO LICENSE AND WORK AGREEMENT

**THIS AMENDMENT TO LICENSE AND WORK AGREEMENT** ("Amendment to License and Work Agreement") is made this _____ day of March, 2015 by and between **CENTRAL WEST VIRGINIA REGIONAL AIRPORT AUTHORITY**, a public corporation created pursuant to West Virginia Code §§8-29-1 *et seq.* (the "Airport Authority") and **COROTOMAN, INC.,** a West Virginia Corporation ("Corotoman").

      **WHEREAS,** pursuant to W.Va. Code §8-29-12, the Airport Authority has the power to exercise eminent domain to acquire property rights from Corotoman;

      **WHEREAS,** the Airport Authority and Corotoman agreed upon the terms of a settlement, in lieu of condemnation;

      **WHEREAS,** on July 5, 2012, as part of that settlement, Corotoman and Airport Authority entered into that certain License and Work Agreement ("License and Work Agreement"), whereby, among other things, the Airport Authority agreed to perform certain work; and

      **WHEREAS,** the parties desire to amend the License and Work Agreement to permit the Airport Authority to borrow material from the Project Site, as defined in the License and Work Agreement, and such other areas as approved in writing by Corotoman (the "Borrow Area") in accordance with the agreements contained herein below.

### WITTNESSETH:

      That for and in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are by these presents acknowledged, the parties do hereby amend the License and Work Agreement in accordance with their following agreements:

      1.    **Borrow Material.** The Airport Authority shall have the right, within ~~two~~ three (~~2~~3) years of the date of this Amendment to License and Work Agreement, to go on property designated by Corotoman to remove, by excavation, drilling, and/or blasting, ~~1.5~~ 4.0 million cubic yards of rock and earth (the "Borrow Material") from the Borrow Area; provided, however, that the Airport Authority shall remove the Borrow Material in

accordance with plans and specification approved by Corotoman (the "Plans and Specifications"); and further provided that the Airport Authority shall complete all such work (the "Borrow Work") within ~~five~~ three (~~5~~3) years of the execution of this Amendment to License and Work Agreement. The Airport Authority's Plans and Specifications shall show the condition and grade of the land prior to the removal of earth and rock and the proposed condition and grade of the land upon completion of such removal of earth and rock. Corotoman shall have the right to inspect the conduct of the Airport Authority in removing the Borrow Material from the Borrow Area.

2.    **Use.** The Airport Authority shall use the Borrow Material to rebuild the fill, which recently failed, at Runway 5 at Yeager Airport to support the engineered materials arrestor system (the "Fill Work") and for no other purpose. Substantially   all  fill required for the rebuild the failed fill will come from this borrow. With the exception of the reused fill material from the failed fill, new channel excavation,  and incidental excavation as required to complete the new fill.

3.    **Transportation.**    As provided herein, Corotoman shall permit the transportation of the Borrow Material to the Fill Work site for the Fill Work over adjacent properties owned by Corotoman. Corotoman shall permit the Airport Authority to construct, on such property owned by Corotoman, roadways reasonably necessary for such transportation of the Borrow Material; provided however that the Airport Authority shall construct such roadways in accordance with plans approved by Corotoman. Corotoman and the Airport Authority agree that such transportation of Borrow Material to the Fill Work site shall be at no additional cost to any contractor hired by the parties responsible for the repair of the fill failure. The Airport Authority agrees that Corotoman has the right to charge a toll on all other materials transported to Corotoman,s property.

4.     **Avigation Easement.**  No modifications to the Borrow Area will result in an intrusion to the avigation easement that currently exists over the property.

5.     **Final Grade of the Borrow Area.**  After removing the Borrow Material from the Borrow Area, the Airport Authority shall ensure that the Borrow Area has a finished grade suitable for commercial development and is graded and rolled in a good and workmanlike manner in accordance with standards generally required of and applied by commercial grading contractors experienced with large scale cut and fill projects.  The Airport Authority shall establish the final grade of the Borrow Area in accordance with the Plans and Specifications and as otherwise approved by Corotoman.  When reviewing the Plans and Specifications, Corotoman shall consider drainage of the site into existing major erosion and sediment control structures.   The final grade of the Borrow Area shall be approximately 35 feet lower than the planned final grade set forth in the License and Work Agreement, and the Airport Authority agrees that the finished grade will be at least forty-five (45) feet below the elevation of the avigation easement.   The Airport Authority shall ensure that it complies with all applicable laws and regulations when preparing the final grade of the Borrow Area.

6.     **Disposition of Roadways.**  After the completion of the removal of the Borrow Material from the Borrow Area and the final grading of the Borrow Area, Corotoman shall have the right to determine the disposition of any roadways constructed pursuant to Paragraph 3 hereof.   If Corotoman determines that such roadways are to be reclaimed, the Airport Authority shall effect such reclamation promptly and in accordance with plans and specifications approved by Corotoman.

7.     **Construction Specifications.**  Construction specifications and standards for the work and hauling of the Borrow Material on Corotoman property will be the same in all material respects to the construction specifications

and standards set forth in the License and Work Agreement and shall be subject at all times to the approval of Corotoman.

8.   **Property Transfer.**  During the period allowed for the Borrow Work, ~~Corotoman agrees to transfer to the Airport Authority,~~ or grant an easement to the Airport Authority over, such property of Corotoman in close ( with in 200 feet) proximity to the toe area which is reasonably required to be encroached upon to establish the toe of the fill of the reconstructed slope; provided, however, that the Airport Authority, subject to the approval of Corotoman, shall contemporaneously transfer, or effect the transfer of, to Corotoman property owned by the Airport Authority or Kanawha County that is (a) contiguous with property owned by Corotoman, (b) acceptable to Corotoman, and (c) in an amount equal to the amount of property transferred (or the amount of property over which an easement is granted) to the Airport Authority.  The Airport Authority shall bear any costs associated with any such transfer of property or a property rights.

9.   **Permits.**  The Airport Authority shall be responsible for obtaining all permits, modifications of permits, temporary easements, permanent easements, and other rights respecting the site (the "Permits") from others as may be required to complete all work required to be completed by the Airport Authority under this Amendment to License and Work Agreement and shall maintain such Permits in its name.  The Permits include existing permits from the West Virginia Department of Environmental Protection and the U.S. Army Corps of Engineers.

10.   **Payments.**  The Airport Authority shall pay Corotoman Three Million Five Hundred Thousand Dollars ($3,500,000.00), of which sum, the Airport Authority shall pay to Corotoman ~~Five Hundred Thousand Dollars~~ sixty thousand dollars($~~500,000.00~~$60,000.00) by 3:30 p.m. EDT on ~~March 31,~~ June 24th 2015, Three hundred and ninty thousand  Dollars 0, ($390,000.00) by 3:30 p.m. EDT on june 27th, 2015 one million sand and Dollars $1,000,000.00

11.    ) by 3:30 p.m. EDT on july ~~2~~56, 2015and the remaining ~~Three Million Dollars~~ two million dollars (~~$3,000,000~~ $2,000,000.00

~~10.~~12.  ) within thirty (30) days after the execution of this Amendment to License and Work Agreement.

~~11.~~13.  **Settlement**.   The Airport Authority and Corotoman acknowledge and agree that the License and Work Agreement was part of a comprehensive settlement of a prospective eminent domain action by the Airport Authority and was concluded under threat of eminent domain.   The modifications to the License and Work Agreement set forth herein represent consideration in settlement of these prospective eminent domain claims, including any and all severance damage arising as a result of work by the Airport Authority on Corotoman's property.

~~12.~~14.  **Approvals.**   Any consents or approvals to be given pursuant to this Amendment to License and Work Agreement shall not be unreasonably withheld.

~~13.~~15.  **Captions and Definitions.**   The captions and headings of this Amendment to License and Work Agreement are for the convenience of the parties and for context and reference only and in no way define, limit, or describe the scope or intent of this Amendment to License and Work Agreement. Terms not otherwise defined herein have the definitions set forth in the License and Work Agreement.

~~14.~~16.  **Agreements to Remain in Effect.**   Except as expressly set forth herein, no other changes or amendments are made or intended to be made to the License and Work Agreement.

**[*Signatures on Next Page*]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Amendment to License and Work Agreement as of the date first above written.

**COROTOMAN, INC.**


By:_____


Its:_____


**CENTRAL WEST VIRGINIA REGIONAL
AIRPORT AUTHORITY:**


By:_____


Its:_____

STATE OF _____,
COUNTY OF _____, To-Wit:

The foregoing Amendment to License and Work Agreement was acknowledged before me this ____ day of _____, 2015, by _____ the _____ of **Central West Virginia Regional Airport Authority**.
My commission expires:_____.


_____
Notary Public

(SEAL)


STATE OF _____,
COUNTY OF _____, To-Wit:

The foregoing Amendment to License and Work Agreement was acknowledged before me this ____ day of _____, 2015, by _____ the _____ of **Corotoman, Inc.**
My commission expires:_____.

_____
Notary Public

(SEAL)


This Instrument Prepared by: Kent J. George, Robinson & McElwee PLLC P.O. Box 1791 Charleston WV 25326

Filename:            Amendment to License and Work Agreement (March 29)
   (R0997423x9E064).docx
Directory:
                     /Users/scottharris/Library/Containers/com.microsoft.Word/Data/D
   ocuments
Template:            /Users/scottharris/Library/Group
   Containers/UBF8T346G9.Office/User
   Content.localized/Templates.localized/Normal.dotm
Title:               .
Subject:             R0997423.1
Author:              Unknown
Keywords:
Comments:
Creation Date:       5/18/15 3:15:00 PM
Change Number:       8
Last Saved On:       6/27/15 4:13:00 PM
Last Saved By:       JHW
Total Editing Time:  79 Minutes
Last Printed On:     6/19/18 9:08:00 AM
As of Last Complete Printing
   Number of Pages: 7
   Number of Words:      1,591
   Number of Characters:    9,462 (approx.)

# EXHIBIT W

ENTRAL WEST VIRGINIA REGIONAL AIRPORT AUTHORITY

3402

| INVOICE NO. | | REFERENCE | AMOUNT | DISCOUNT | NET AMT. |
|---|---|---|---|---|---|
| COROTOMAN | 5/29/2015 | property | | | $60,000.00 |

DATE
05/29/2015

NUMBER
3402

AMOUNT
$60,000.00

Corotoman, Inc.

ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER WITH MICROPRINTED BORDER

**CENTRAL WEST VIRGINIA
REGIONAL AIRPORT AUTHORITY**
CONSTRUCTION FUND
100 AIRPORT ROAD, SUITE 175
YEAGER AIRPORT
CHARLESTON, WV 25311

CHASE
CHARLESTON, WV
89-36/519

3402

3402

**Sixty Thousand and 00/100 Dollars*

| | DATE | AMOUNT |
|---|---|---|
| Corotoman, Inc.
200 Association Drive
Suite 140
Charleston, WV 25311 | 05/29/2015 | $60,000.00 |

RDER
F

THIS DOCUMENT CONTAINS HEAT SENSITIVE INK. TOUCH OR PRESS HERE - RED IMAGE DISAPPEARS WITH HEAT.

⑈003402⑈ ⑆051900366⑆ 9900263744⑈

Yeager Airport Project

As Of:07/02/15 On:07/02/15  (AR.8)                                                    Time: 16:31  Page: 1

COROTOMAN INC

** Cash Receipts Journal **

Report: 754   Period: 05/2015

Period Ending: 05/31/2015

| Cu    ser Number   N a m e | Check Number/ Credit Memo#/ On Account | Invoice/ Number | Original Amount | Previous Transactions | Current Transaction | Discount | Other Allowance | New Balance |
|---|---|---|---|---|---|---|---|---|

A/R Cash Received:          .00   Non-A/R Cash Received:    60,000.00      Totals:        .00        .00

Month To Date A/R:         .00   Month To Date Non-A/R:    60,000.00   MTD Totals:      .00        .00

## CUSTOMER RECEIPT



```
                           5/29/2015    AM          17:14:39       ON
                           BR#   1    TLR#   109      TR#          92
                           ACCT#        ***********3868
                           DDA Deposit                        60,000.00

                        THANK YOU FOR BANKING WITH US
```

FDIC

# EXHIBIT X

CENTRAL WEST VIRGINIA REGIONAL AIRPORT AUTHORITY

3420

| INVOICE NO. | REFERENCE | AMOUNT | DISCOUNT | NET AMT. |
|---|---|---|---|---|
| DownPmt1c | 6/22/2015 | down payment for agreement to purchase borrow ma... | | $50,000.00 |

DATE
06/22/2015

NUMBER
3420

AMOUNT
$50,000.00

Corotoman, Inc.

---

**CENTRAL WEST VIRGINIA
REGIONAL AIRPORT AUTHORITY**
CONSTRUCTION FUND
100 AIRPORT ROAD, SUITE 175
YEAGER AIRPORT
CHARLESTON, WV 25311

**Yeager Airport**

3420

CHASE
CHARLESTON, WV
69-36/519

*****Fifty Thousand and 00/100 Dollars**

PAY
TO THE
ORDER
OF
Corotoman, Inc.
200 Association Drive
Suite 140
Charleston, WV 25311

DATE
06/22/2015

AMOUNT
$50,000.00

⑈003420⑈ ⑆051900366⑆ 9900263174⑈

Pay to the order of
Wellford Management Services
inc
acct  0100334554
Consignor / exc.

# EXHIBIT Y

CENTRAL WEST VIRGINIA REGIONAL AIRPORT AUTHORITY
CHECKING ACCOUNT

33317

| | INVOICE NO. | REFERENCE | AMOUNT | DISCOUNT | NET AMT. |
|---|---|---|---|---|---|
| SLOPE_material | | 6/26/2015 remainder of down payment for material to repair the ... | | | $390,000.00 |

DATE
06/26/2015

NUMBER
33317

AMOUNT
$390,000.00

orotoman, Inc.

---

ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER WITH MICROPRINTED BORDER

**CENTRAL WEST VIRGINIA**
**REGIONAL AIRPORT AUTHORITY**
CHECKING ACCOUNT
100 AIRPORT ROAD, SUITE 175
YEAGER AIRPORT
CHARLESTON, WV 25311

Yeager Airport

CHASE  CHARLESTON, WV

33317

33317

69-36/519

*Three Hundred Ninety Thousand and 00/100 Dollars*

| | DATE | AMOUNT |
|---|---|---|
| | 06/26/2015 | $390,000.00 |

Corotoman, Inc.
200 Association Drive
Suite 140
Charleston, WV 25311

THE
ER

*Terry D. Sayll*

AUTHORIZED SIGNATURE

THIS DOCUMENT CONTAINS HEAT SENSITIVE INK. TOUCH OR PRESS HERE • RED IMAGE DISAPPEARS WITH HEAT.

⑈033317⑈ ⑆051900366⑆ 9900 26331⑈

---

AL WEST VIRGINIA REGIONAL AIRPORT AUTHORITY
NG ACCOUNT

33317

| | INVOICE NO. | REFERENCE | AMOUNT | DISCOUNT | NET AMT. |
|---|---|---|---|---|---|
| | | | | | |

DATE

NUMBER

Yeager Airport Project

AMOUNT

PAYEE

SFM800006-1CA
3RD.   LITHO USA   SZSL7GS   CK730H112B

TO REORDER, CALL YOUR LOCAL SAFEGUARD DISTRIBUTOR AT 304-346-0485

J0PSV18010000   L00SF023063

As Of:07/02/15 On:07/02/15  (AR.8)                                                   Time: 16:47  Page: 1

COROTOMAN INC
** Cash Receipts Journal **
Report: 755   Period: 06/2015
Period Ending: 06/30/2015

| Cu      er<br>Number    N a m e | Check Number/<br>Credit Memo#/ Invoice/<br>On Account    Number | Original<br>Amount | Previous<br>Transactions | Current<br>Transaction | Discount | Other<br>Allowance | New<br>Balance |
|---|---|---|---|---|---|---|---|
| A/R Cash Received:   .00  | Non-A/R Cash Received: | | 390,000.00 | Totals:  .00 | | .00 | |
| Month To Date A/R:   107,983.19 | Month To Date Non-A/R: | | 390,000.00 | MTD Totals:  .00 | | .00 | |




1-800-BANK BBT
1-800-226-5228

BBT.com

Learn more about Online Statements and
Mobile Banking at BBT.com

## TRANSACTION RECEIPT

All items are credited subject to payment.



### Location/Date/Transaction #                 Amount

2722101 C75833 017  00086  9:45 06/29/15
#XXXXXXXXXXXX8381  DUPLICATE  DEPOSIT

390,000.00

CX028400186
Rev. 04/01/13

Member FDIC

DEPOSITS SUBJECT TO VERIFICATION AND MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL.

# EXHIBIT Z



**ROBINSON**
**&McELWEE**
PLLC
attorneys at law

KENT J. GEORGE
MANAGING MEMBER

P.O. BOX 1791
CHARLESTON, WV  25326

DIRECT DIAL:  (304) 347-8322
E-MAIL:  kjg@ramlaw.com

September 4, 2015

**BY HAND DELIVERY AND ELECTRONIC MAIL**

Charles R. Bailey, Esq.
Baily & Wyant PLLC
500 Virginia Street East, Suite 600
Charleston, WV  25301

Dear Chuck:

I am following up regarding our discussions of the License and Work Agreement between the Central West Virginia Regional Airport Authority (the "Airport Authority") and Corotoman, Inc. ("Corotoman").  As you are aware, the License and Work Agreement is a component of the Settlement Agreement Between the Central West Virginia Regional Airport Authority and Corotoman, Inc.  The License and Work Agreement contains a requirement for the Airport Authority to perform certain work (the "Project") at on real property identified in the License and Work Agreement (referred to as the "Project Site").  Among other work, the Project includes certain overblast work, which is described in Paragraph 5 of the License and Work Agreement (the "Overblast Work").  The License and Work Agreement and contains provisions respecting the completion of the Project, the standard of work required for the Project, and the effect of breach of the License and Work Agreement.

Corotoman has advised me that it understands that the Airport Authority and its engineers may be contemplating declaring that the Project has been completed.  However, Corotoman has further advised me that (i) the required Overblast Work has not been completed or even undertaken; (ii) certain slopes at the Project Site are currently unstable; and (iii) the Project has already taken more time than the twenty-four months allotted for its completion.  Completing the Overblast Work and ensuring the stability of slopes at the Project Site are important aspects of the Project, and Corotoman will not agree that the Project has been completed if this work has not been performed.  If the Airport Authority declares the Project to have been completed and if the Overblast Work has not been completed or any slopes remain unstable, the Airport Authority will be in breach of the License and Work Agreement.  The consequential damages for breaching the License and Work Agreement in this way are significant.  Corotoman requests that the Airport Authority make note of Corotoman's position in any representation to any entity or governmental authority that the Airport Authority may make respecting the completion of the Project.

Charleston, WV  |  Clarksburg, WV  |  Wheeling, WV  |  Alliance, OH
ALFA International Member
www.ramlaw.com

Corotoman understands that the Airport Authority has been dealing with a number of other issues and wishes to work cooperatively with the Airport Authority. Corotoman would prefer to reach a mutually agreeable resolution of the above-referenced issues respecting the completion of the Project (the "Project Completion Issues") rather than to declare the Airport Authority in breach of the License and Work Agreement and to exercise Corotoman's rights under Paragraph 15 of the License and Work Agreement. That said, the unresolved nature of the Project Completion Issues creates significant difficulties for Corotoman and interferes with Corotoman's business operations. In order to move forward expeditiously, Corotoman requests that the Airport Authority work with Corotoman to develop, by September 18, 2015, a schedule for resolving the Project Completion Issues.

Additionally, I am in receipt of your letters regarding the airport hangar Lease Agreement between the Airport Authority and Trafalgor, Ltd. ("Trafalgor"). I have forwarded those letters to Trafalgor; however, please be aware that Trafalgor is a separate entity from Corotoman. Robinson & McElwee PLLC does not represent Trafalgor.

Corotoman is hopeful that it and the Airport Authority can resolve expeditiously the Project Completion Issues related to the License and Work Agreement. I would be pleased to meet with you at your convenience to discuss how we can make progress toward resolving these issues.

Please let me know if you have any questions.

Very truly yours,

Kent J. George

KJG:sr

cc:    Corotoman, Inc.

# EXHIBIT AA

**Terry Sayre**

| | |
|---|---|
| **From:** | Holes, Rick [RICK.HOLES@lrkimball.com] |
| **Sent:** | Tuesday, August 25, 2015 3:56 PM |
| **To:** | 'matthew.digiulian@faa.gov'; Kurt.Blankenship@faa.gov |
| **Cc:** | t_sayre@yeagerairport.com; 'Nick Keller (nick@yeagerairport.com)' |
| **Subject:** | Land Acquired or Leased for RW 5 Obstruction Removal Project |

Matt and Kurt,

I am meeting with Terry and Nick at Yeager and we are discussing what the final outcome of the property acquisition or lease area must be for the RW 5 Ground Obstruction Removal.  Based on the work I did in the fall of 2013, it appears that the Airport Authority acquired in Fee Simple 9.94 acres of land associated with that project.  In addition, it's my understanding that there was some sort of a Right to Work Agreement with Corotoman for an additional 26.20 acres of land.  The 9.94 acres was in a patchwork fashion over the top of the hill, as was the land owned by Corotoman.  During discussions with Mr. Welford, he has alleged that he was to retain ownership of the Corotoman land, and was to take ownership of the land acquired in fee simple by the Airport Authority, which we know isn't allowed.  It is the Authority's desire to own, at a minimum, the flat surface created by the project, which is approximately 19.7 acres.  The 2:1 Slope created by the project could also be included in that area that the Authority owns.  It may take a letter from the FAA putting in writing that the Authority must own that property in order for the Authority to take Mr. Wellford to court to gain that ownership.

So, to make a long e-mail short, we would like to discuss with you what the FAA could provide that the Airport Authority could use to its advantage to gain ownership over the rest of the cut area, at a minimum, from Corotoman.  Or, it could be that the Airport Authority only needs to own the land it acquired, but must have the capability to maintain the remainder of the land.  Could we have a discussion at some point to talk about the Right to Work Agreement and what the FAA's expectation would be associated with the land included in the Right to Work Agreement?

We would like to come to Beckley on either September 22 or 24 to meet with you to discuss this issue, along with numerous other issues.  Please let us know when you would be available for that discussion.  Thank you.

Rick

**Richard L. Holes, PE**
Director of Aviation Services

**L.R. Kimball** - a CDI Company
615 West Highland Avenue | PO Box 1000 | Ebensburg, PA 15931
Ph: 814.472.7700 ext 601272 | Fax: 814.472.7712 | www.lrkimball.com

NON-DISCLOSURE NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain information belonging to CDI Corporation or its affiliated companies (CDI) or CDI's customers which is non-public, proprietary and/or privileged in favor of one or more such parties. The intended recipient(s) may only use such information consistent with the purpose for which it was sent to the recipient(s) and may only reproduce, disclose or distribute such information to others who have a proper involvement with that purpose. This notice must appear in any such reproduction, disclosure or distribution. Any review, use, reproduction, disclosure or distribution by other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and any attachments. Thank you.

CWVRAA_000187

# EXHIBIT BB

# BAILEY & WYANT, P.L.L.C.

500 Virginia Street, East
Suite 600 United Center (25301)
P.O. Box 3710
Charleston, WV 25337-3710
(304) 345-4222
FEIN 55-0771652

January 29, 2016

|  |  |
|---|---|
| Central WV Regional Airport | Invoice# 51220    CRB |
| Terry Sayre | Our file#  5900   00088 |
| Suite 175-100 Airport Road | Billing through 12/31/2015 |
| Charleston, WV 25311-1080 | |

*Amt Due 24,774.89*

*less 30%*

Yeager Grant Closeout 52

## FOR PROFESSIONAL SERVICES RENDERED

| 08/02/2015 | JMP | Analyzing synopsis, received via two correspondences from Chuck Bailey, of 7-30 meeting, re issues regarding close out. | | | |
|---|---|---|---|---|---|
| | | | 0.30 hrs. | 145.00 /hr | 43.50 |
| 08/03/2015 | CRB | Preparing an email to Terry Sayre re-recollection of events leading up to June 30th meeting | | | |
| | | | 0.40 hrs. | 145.00 /hr | 58.00 |
| 08/03/2015 | KCM | Various correspondences with Terry Sayre and Rick Holes regarding FOIA requests regarding grant. | | | |
| | | | 0.40 hrs. | 145.00 /hr | 58.00 |
| 08/04/2015 | KCM | Review and analyze all documents by Terry Sayre in response to FOIA requests from Gazette and WSAZ. | | | |
| | | | 0.30 hrs. | 145.00 /hr | 43.50 |
| 08/04/2015 | KCM | Correspondences regarding meeting to discuss status and history of contracts, agreements with Rick Atkinson and complete copies of documents. | | | |
| | | | 0.20 hrs. | 145.00 /hr | 29.00 |
| 08/06/2015 | KCM | Meeting with Terry Sayre prior to meeting with Kent George and Brian Calabrese. | | | |
| | | | 3.00 hrs. | 145.00 /hr | 435.00 |
| 08/06/2015 | JMP | In preparation for 8-6 meeting, analyzing various documents (primarily contained in Authority's response to FOIA request from WSAZ) re contracts by the Authority potentially related to obstruction removal. | | | |
| | | | 2.20 hrs. | 145.00 /hr | 319.00 |

5900      Central WV Regional Airport          Invoice# 51220      Page 2

| Date | Init | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 08/07/2015 | KCM | Meeting with Rick Atkinson regarding history of dealings and contracts. | 3.60 hrs. | 145.00 /hr | 522.00 |
| 08/07/2015 | KCM | Prepare for meeting with Rick Atkinson by reviewing in detail all contracts, amendments, maps, etc. | 3.20 hrs. | 145.00 /hr | 464.00 |
| 08/09/2015 | KCM | Prepare summary of meeting with Rick Atkinson as to all contracts, addendums, maps, and agreements with Wellford. | 1.50 hrs. | 145.00 /hr | 217.50 |
| 08/10/2015 | JMP | Correspondence from Kelly Morgan, received via correspondence from Chuck Bailey, re her interview with Rick Atkinson re various issues re obstruction removal. | 0.20 hrs. | 145.00 /hr | 29.00 |
| 08/12/2015 | CRB | Meeting with Kent George regarding avigation easement and related matters | 2.00 hrs. | 145.00 /hr | 290.00 |
| 08/20/2015 | CRB | Attending Finance Committee meeting, discussion of FOIA issues, discussion of closeout issues and other related matters | 3.20 hrs. | 145.00 /hr | 464.00 |
| 09/09/2015 | CRB | Read letter from Kent George re-Corotoman | 0.60 hrs. | 145.00 /hr | 87.00 |
| 09/09/2015 | JB | Reviewing and analyzing file materials for land description of Corotoman property bought by CWVRAA | 0.50 hrs. | 95.00 /hr | 47.50 |
| 09/09/2015 | HFS | Meeting with CRB re contracts and begin review to complete closeout. | 0.80 hrs. | 145.00 /hr | 116.00 |
| 09/13/2015 | HFS | Review settlement agreement to complete closeout. | 1.30 hrs. | 145.00 /hr | 188.50 |
| 09/15/2015 | HFS | Review license; prepare memo on closeout. | 2.20 hrs. | 145.00 /hr | 319.00 |
| 09/16/2015 | JB | Reviewing and analyzing e-mail communications for information regarding Corotoman and Wellford | 1.50 hrs. | 95.00 /hr | 142.50 |
| 09/16/2015 | JB | Reviewing and analyzing additional minutes from construction meetings for information regarding Corotoman and Wellford | 0.50 hrs. | 95.00 /hr | 47.50 |
| 09/17/2015 | CRB | Email regarding emails of April Payne, Rick Atkinson, John Wellford, Tim Murnahan and Kent George regarding contract issues | 0.30 hrs. | 145.00 /hr | 43.50 |
| 09/17/2015 | JB | Reviewing and analyzing e-mail communications for information regarding Corotoman and Wellford | 5.50 hrs. | 95.00 /hr | 522.50 |

5900       Central WV Regional Airport          Invoice# 51220      Page 3

| Date | Init | Description | | | |
|---|---|---|---|---|---|
| 09/18/2015 | JB | Reviewing and analyzing e-mail communications for information regarding Corotoman and Wellford | | | |
| | | | 0.70 hrs. | 95.00 /hr | 66.50 |
| 09/21/2015 | JB | Reviewing and analyzing e-mail communications for information regarding Corotoman and Wellford | | | |
| | | | 3.40 hrs. | 95.00 /hr | 323.00 |
| 09/21/2015 | JMP | Additional meeting with Trigg Salsbery - re plans to interview Rick Atkinson re his relationship with Corotoman following analysis of available related documents. Also two correspondences to, and one from, Trigg re Kelly Morgan's 8-9 report of her interview with Rick. | | | |
| | | | 0.70 hrs. | 145.00 /hr | 101.50 |
| 09/21/2015 | JMP | Meetings with Chuck Bailey and Trigg Salsbery and then only with Trigg to discuss additional involvement with evaluation of the Authority re the obstruction removal project. | | | |
| | | | 1.20 hrs. | 145.00 /hr | 174.00 |
| 09/21/2015 | JMP | Analyzing various file documents relating to the obstruction removal project, provided by the Authority. | | | |
| | | | 4.60 hrs. | 145.00 /hr | 667.00 |
| 09/21/2015 | HFS | Meeting with C. Bailey and J. Potter regarding contracts, interviews and emails to try to complete closeout. | | | |
| | | | 0.90 hrs. | 145.00 /hr | 130.50 |
| 09/22/2015 | CRB | Reviewing and analyzing email communications regarding avigation settlement | | | |
| | | | 3.30 hrs. | 145.00 /hr | 478.50 |
| 09/22/2015 | CRB | Meeting with Terry Sayre to go over options regarding the obstruction and removal project, closing of the project and finality issues. | | | |
| | | | 2.50 hrs. | 145.00 /hr | 362.50 |
| 09/22/2015 | CRB | Review of settlement agreement between Corotoman and KCAA, letter from Atkinson to Corotoman, license of work agreement between Yeager and Corotoman, settlement agreement, licence for work, letter from Wellford to Nutter, license to utilized work agreement, amendment to license agreement (unsigned), agreement to purchase 9.3 acres of land, outline of agreement with Corotoman to determine closeout issues | | | |
| | | | 0.90 hrs. | 145.00 /hr | 130.50 |
| 09/22/2015 | JMP | Analyzing correspondences, related primarily to obstruction removal project, obtained from Terry Sayre during 9-22 meeting. | | | |
| | | | 0.70 hrs. | 145.00 /hr | 101.50 |
| 09/22/2015 | JMP | In preparation for 9-22 meeting with Terry Sayre and Rick Holes, continue analyzing Authority file documents re obstruction removal project. | | | |
| | | | 2.30 hrs. | 145.00 /hr | 333.50 |

| 5900 | Central WV Regional Airport | | Invoice# 51220 | Page 4 | |
|------|------|------|------|------|------|

| 09/22/2015 | JMP | Meeting with Terry Sayre, Rick Holes, and Chuck Bailey to discuss closeout of grant. | | | |
| | | | 6.00 hrs. | 145.00 /hr | 870.00 |
| 09/23/2015 | CRB | Meeting with Rick Holes regarding obstruction project | | | |
| | | | 1.20 hrs. | 145.00 /hr | 174.00 |
| 09/23/2015 | CRB | Review of minutes of meetings from 8-2011 to 3-2015-obstruction project | | | |
| | | | 0.90 hrs. | 145.00 /hr | 130.50 |
| 09/23/2015 | CRB | Meeting with Central Contracting regarding the obstruction project | | | |
| | | | 1.00 hrs. | 145.00 /hr | 145.00 |
| 09/23/2015 | CRB | Read email from Holes to CRB re-site and access road specs provided to contractors, fill and site specs for obstruction project | | | |
| | | | 0.90 hrs. | 145.00 /hr | 130.50 |
| 09/23/2015 | CRB | Review of email from Holes to CRB re: prebid meeting minutes and minutes from prebid phase 1 development | | | |
| | | | 0.80 hrs. | 145.00 /hr | 116.00 |
| 09/23/2015 | JB | Reviewing and analyzing additional minutes from construction and finance meetings for information regarding obstruction project | | | |
| | | | 0.50 hrs. | 95.00 /hr | 47.50 |
| 09/23/2015 | JMP | Analyzing correspondences, primarily re Corotoman involvement in obstruction removal project, obtained from Terry Sayre on 9-22 and incorporating the Corotoman-related documents chronologically within the documents previously obtained from the Authority and from Kimball. General objective is to prepare to interview Rick Atkinson; and specific objective is to determine the extent of the information that the Authority board had re Rick's 7-3-12 agreement regarding overblast an additional 35 feet. | | | |
| | | | 1.20 hrs. | 145.00 /hr | 174.00 |
| 09/23/2015 | JMP | Analyzing, prior to having it reproduced, contents of notebook (obtained during 9-22 meeting at airport) containing Authority's records of FAA grants in general and, in particular, the two grants related to earth work on the obstruction removal project. | | | |
| | | | 0.70 hrs. | 145.00 /hr | 101.50 |
| 09/23/2015 | JMP | At airport attending final portion of board meeting and then meeting with Terry Sayre, Chuck Bailey, Rick Holes, and Steve Cvechko to discuss obstruction removal project in general and, in particular, interaction between Steve and Rick Atkinson re issue of overblasting property an additional 35 feet. | | | |
| | | | 3.80 hrs. | 145.00 /hr | 551.00 |

5900    Central WV Regional Airport          Invoice# 51220      Page  5

| 09/23/2015 | JMP | Meeting with Chuck Bailey to discuss 9-22 airport meeting with Rick Holes, 9-23 airport meeting with Rick and Steve Cvechko, and use of information obtained during those meetings to prepare for interview of Rick Atkinson. | | | |
|---|---|---|---|---|---|
| | | | 0.30 hrs. | 145.00 /hr | 43.50 |
| 09/24/2015 | JB | Reviewing and analyzing additional minutes from CWVRAA Board meetings for information regarding Corotoman and Wellford | | | |
| | | | 0.20 hrs. | 95.00 /hr | 19.00 |
| 09/24/2015 | JB | Reviewing and analyzing e-mail communications for information regarding Corotoman contracts, Wellford, fill sites, permanent storage area, and ground obstruction removal | | | |
| | | | 1.20 hrs. | 95.00 /hr | 114.00 |
| 09/24/2015 | JB | Reviewing and analyzing materials received from Rick Holes regarding Wellford, contractors, pre-bid meeting minutes, fill sites, permanent storage area, and ground obstruction removal | | | |
| | | | 0.70 hrs. | 95.00 /hr | 66.50 |
| 09/24/2015 | JMP | At airport attending construction meeting for .7 hours and then analyzing board meeting minutes for years from 2011 into 2015 and also analyzing contents of file drawer containing documents re obstruction removal project. For purpose of continued preparation for interview of Rick Atkinson, particularly re extent to which he informed the board of obstruction removal project. | | | |
| | | | 4.60 hrs. | 145.00 /hr | 667.00 |
| 09/24/2015 | JMP | Analyzing minutes of obstruction-removal pre-bid meeting, received via second correspondence from Rick Holes, and reply correspondence to him requesting attendance sheet. | | | |
| | | | 0.30 hrs. | 145.00 /hr | 43.50 |
| 09/24/2015 | JMP | Analyzing attendance sheet, received via third correspondence from Rick Holes, from obstruction removal pre-bid meeting. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 09/24/2015 | JMP | Correspondences from and to April Payne re location and availability of board minutes. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 09/24/2015 | JMP | Analyzing documents obtained 9-24 from airport files and comparing those documents against documents, re Corotoman in general and 35-foot overblast in particular, previously obtained from B&W and airport files regarding the Authority's authorized the execution of the 7-3-12 settlement and work agreements and the 9-12-13 work agreement. | | | |
| | | | 2.60 hrs. | 145.00 /hr | 377.00 |
| 09/25/2015 | JB | Reviewing and analyzing e-mail communications and file materials for information regarding obstruction removal contracts, fill sites, permanent storage area, and ground obstruction removal | | | |
| | | | 1.30 hrs. | 95.00 /hr | 123.50 |

| 5900 | Central WV Regional Airport | Invoice# 51220 | Page 6 |

| Date | Init | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 09/25/2015 | JMP | Correspondence to Chuck Bailey and Trigg Salsbery discussing various aspects of the work agreement, that Rick Atkinson signed, re the 35-foot overblast and other matters. | 0.80 hrs. | 145.00 /hr | 116.00 |
| 09/25/2015 | JMP | Additional correspondence to Terry Sayre (and Chuck Bailey and Trigg Salsbery) re Rick Atkinson's participation in Corotoman transactions. (no charge). | 0.80 hrs. | 145.00 /hr | N/C |
| 09/25/2015 | JMP | Researching W.Va. case law re the Open Governmental Proceedings Act in general and, in particular, its applicability to the transactions, including agreeing to perform the 35-foot overblast, in which Rick Atkinson was engaging with Corotoman. (no charge). | 4.30 hrs. | 145.00 /hr | N/C |
| 09/25/2015 | JMP | Correspondences from Chuck Bailey and to him and Trigg Salsbery further discussing the issue of whether or not Rick Atkinson was authorized to execute the work agreement re, among other things, the 35-foot overblast. | 0.50 hrs. | 145.00 /hr | 72.50 |
| 09/25/2015 | JMP | Correspondences from Chuck Bailey to Terry Sayre and from Terry to Chuck. Both re issue of Rick Atkinson's authority to execute the 7-3-12 work agreement. | 0.20 hrs. | 145.00 /hr | 29.00 |
| 09/25/2015 | JMP | In response to additional correspondence from Chuck Bailey, continuing analysis of Authority board minutes re dealings with Corotoman and send correspondence to Chuck and to Terry Sayre re those minutes. | 0.70 hrs. | 145.00 /hr | 101.50 |
| 09/25/2015 | JMP | Correspondence from Terry Sayre in response to correspondence re Authority board minutes re Corotoman transactions. | 0.10 hrs. | 145.00 /hr | 14.50 |
| 09/25/2015 | JMP | Continuing analysis of documents, obtained on 9-24 at airport and previously, in order to determine the extent of the knowledge that the Authority board had regarding the transactions -- particularly the 35-foot overblast. | 2.30 hrs. | 145.00 /hr | 333.50 |
| 09/26/2015 | JMP | Analyzing documents, received via 9-25 correspondence from Joan Barney, re various minutes of Authority board and various committees. | 0.30 hrs. | 145.00 /hr | 43.50 |
| 09/26/2015 | JMP | Three correspondences, re minutes of Authority construction committee, from Joan Barney, from Chuck Bailey, and to Joan and Chuck. | 0.10 hrs. | 145.00 /hr | 14.50 |
| 09/27/2015 | JMP | Correspondence, and attached 9-12-13 work agreement, from Kent George. Received via correspondence from Chuck Bailey. | 0.20 hrs. | 145.00 /hr | 29.00 |

5900    Central WV Regional Airport         Invoice#  51220      Page  7

| Date | By | Description | | | |
|---|---|---|---|---|---|
| 09/28/2015 | JB | Reviewing and analyzing e-mail communications re: permanent storage area, and ground obstruction removal | | | |
| | | | 1.30 hrs. | 95.00 /hr | 123.50 |
| 09/28/2015 | JMP | Analyzing research material re settlement agreement and exhibit work agreement, used by Harrison Cyrus in support of the closeout potential of grant. | | | |
| | | | 2.40 hrs. | 145.00 /hr | 348.00 |
| 09/28/2015 | JMP | Analyzing six additional documents received via correspondence from Chuck Bailey. | | | |
| | | | 0.70 hrs. | 145.00 /hr | 101.50 |
| 09/28/2015 | JMP | Correspondences from, to, and from Joan Barney re additional Corotoman documents received from her. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 09/28/2015 | JMP | Correspondences from Terry Sayre and from Chuck Bailey re Terry's intention to send additional Corotoman-related documents to Chuck. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 09/28/2015 | JMP | Correspondence from Chuck Bailey discussing his 9-27 analysis of events leading up to Rick Atkinson's execution of Corotoman agreements. | | | |
| | | | 0.20 hrs. | 145.00 /hr | 29.00 |
| 09/29/2015 | CRB | Conduct interview with April Payne on Grants | | | |
| | | | 0.50 hrs. | 145.00 /hr | 72.50 |
| 09/29/2015 | JB | Reviewing and analyzing e-mail communications and file materials for information regarding fill sites, permanent storage area, and ground obstruction removal to fulfill closeout requirements | | | |
| | | | 2.20 hrs. | 95.00 /hr | 209.00 |
| 09/29/2015 | JMP | Continuing research re applicability of doctrine of ultra vires to dealings between Rick Atkinson and John Wellford. | | | |
| | | | 2.60 hrs. | 145.00 /hr | 377.00 |
| 09/29/2015 | JMP | Multiple correspondences (three sent and 13 received) with Chuck Bailey and/or Joan Barney re Corotoman-related documents that they have obtained or intend to obtain. | | | |
| | | | 0.70 hrs. | 145.00 /hr | 101.50 |
| 09/29/2015 | JMP | Correspondence to Rick Holes asking him to arrange for a conference call with Joe Felix re Joe's knowledge of 35-foot overblast issue. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 09/29/2015 | JMP | Correspondences from Joe Felix and from Rick Holes re plans for conference call with Joe. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 09/29/2015 | JMP | Correspondence to Joe Felix requesting to know what information Rick Atkinson (or anyone else) provided to him re the 35-foot overblast issue. | | | |
| | | | 0.40 hrs. | 145.00 /hr | 58.00 |

| 5900 | | Central WV Regional Airport | Invoice# 51220 | Page 8 | |
|------|---|------|------|------|------|

| 09/29/2015 | JMP | L110- A108-Correspondences from and to Rick Holes re Joe Felix's knowledge of 35-foot overblast issue. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 09/30/2015 | CRB | Review of series of documents and drafts of documents in preparation of meeting with FAA to discuss closeout | | | |
| | | | 1.30 hrs. | 145.00 /hr | 188.50 |
| 09/30/2015 | JB | Reviewing and analyzing e-mail communications and file materials for information regarding, permanent storage area, and ground obstruction removal | | | |
| | | | 8.60 hrs. | 95.00 /hr | 817.00 |
| 09/30/2015 | JMP | In preparation for 10-1 meeting with FAA, further analyzing documents, related to two obstruction removal project grants, obtained from airport files on 9-24 and also analyzing contents of notebook, received 9-30 from Chuck Bailey, containing all documents (which have been located) that comprise the obstruction removal project settlement agreement (with exhibits). | | | |
| | | | 2.20 hrs. | 145.00 /hr | 319.00 |
| 09/30/2015 | JMP | Analyzing Corotoman-related documents received 9-29 from Chuck Bailey and from Joan Barney; continuing to analyze previously obtained documents from various sources; and combining all categories chronologically for use in preparing a timeline of events relating to obstruction removal project in general and, in particular, to interactions between Rick Atkinson and John Wellford re various issues. | | | |
| | | | 3.70 hrs. | 145.00 /hr | 536.50 |
| 09/30/2015 | JMP | Multiple correspondences between Terry Sayre and Chuck Bailey, received via correspondence from Chuck Bailey, in preparation for 10-1 meeting with FAA. | | | |
| | | | 0.30 hrs. | 145.00 /hr | 43.50 |
| 09/30/2015 | JMP | Meeting with Chuck Bailey to discuss various issues re obstruction removal project in preparation for 10-1 meeting with FAA. | | | |
| | | | 0.80 hrs. | 145.00 /hr | 116.00 |
| 10/01/2015 | CRB | Meeting with Terry Sayre and FAA officials in Beckley, WV | | | |
| | | | 6.00 hrs. | 145.00 /hr | 870.00 |
| 10/01/2015 | JB | Reviewing and analyzing e-mail communications and file materials for information regarding obstruction removal contracts, permanent storage area, and ground obstruction removal and organizing materials | | | |
| | | | 6.00 hrs. | 95.00 /hr | 570.00 |
| 10/01/2015 | JMP | At airport attending construction meeting, followed by meeting (with Terry Sayre, Nick Keller, Rick Holes, and Chuck Bailey) to prepare for 10-1 FAA meeting, followed by traveling to Beckley, followed by meeting with FAA, followed by return to airport. | | | |
| | | | 7.80 hrs. | 145.00 /hr | 1,131.00 |

| 5900 | Central WV Regional Airport | Invoice# 51220 | Page 9 |

| Date | Init. | Description | Hours/Rate | Amount |
|---|---|---|---|---|
| 10/02/2015 | CRB | Telephone conversation with Rick Atkinson regarding close out issues | | |
| | | | 0.40 hrs.   145.00 /hr | 58.00 |
| 10/02/2015 | JB | Reviewing and analyzing e-mail communications and file materials for information regarding Corotoman contracts, Wellford, fill sites, permanent storage area, and ground obstruction removal | | |
| | | | 4.60 hrs.   95.00 /hr | 437.00 |
| 10/02/2015 | JMP | Reorganizing various files particularly those related to correspondence re closeout. (no charge) | | |
| | | | 1.50 hrs.   145.00 /hr | N/C |
| 10/02/2015 | JMP | Meeting with Trigg Salsbery to discuss 10-1 FAA meeting, discussions with Terry Sayre and Chuck Bailey following that meeting, and issue of how best to complete closeout of obstruction removal. | | |
| | | | 0.40 hrs.   145.00 /hr | 58.00 |
| 10/02/2015 | JMP | Multiple correspondences (six from and two to) Joan Barney and one meeting with her re issue of additional correspondences located by Chuck Bailey re: obstruction removal. | | |
| | | | 0.30 hrs.   145.00 /hr | 43.50 |
| 10/02/2015 | JMP | Analyzing various file documents (primarily associated with packet of settlement documents) re plans for property exchange and paying particular attention to inconsistencies and ambiguities among those documents. | | |
| | | | 2.70 hrs.   145.00 /hr | 391.50 |
| 10/02/2015 | JMP | Analyzing for the purpose of determining strategy for dealing with overblast issue and other issues discussed during 10-1 FAA meeting. | | |
| | | | 1.30 hrs.   145.00 /hr | 188.50 |
| 10/02/2015 | JMP | Meeting with Chuck Bailey to discuss various issues that he considered following 10-1 FAA meeting for closeout. | | |
| | | | 0.40 hrs.   145.00 /hr | 58.00 |
| 10/02/2015 | JMP | Correspondence from Terry Sayre re Joe Felix's recollections re overblast issue. | | |
| | | | 0.10 hrs.   145.00 /hr | 14.50 |
| 10/02/2015 | JMP | Correspondences from and to Joe Felix re his recollection of discussion of 35-foot overblast with Rick Atkinson. | | |
| | | | 0.10 hrs.   145.00 /hr | 14.50 |
| 10/05/2015 | JMP | Continuing analysis of file documents re proposed exchange of real estate between Authority and Corotoman and beginning analysis of condemnation proceedings to acquire property necessary for obstruction removal project.  Then comparing list of 20 condemned parcels against map showing proposed property exchanges and against list of properties that were proposed to be exchanged. | | |
| | | | 4.10 hrs.   145.00 /hr | 594.50 |

| 5900 | Central WV Regional Airport | Invoice# 51220 | Page 10 |

| | | | | |
|---|---|---|---|---|
| 10/05/2015 | JMP | Correspondence to Rick Holes requesting minutes of Authority construction meetings (as opposed to construction committee meetings) during 2012 and 2013. For purpose of determining what, if any, discussion of blast and property exchange. | | |
| | | 0.20 hrs. | 145.00 /hr | 29.00 |
| 10/05/2015 | JMP | Correspondence from Rick Holes, dated 4-11-13 and obtained from Kelly Morgan, containing preliminary summary of properties acquired (some by purchase, others by condemnation) in conjunction with obstruction removal project. | | |
| | | 0.50 hrs. | 145.00 /hr | 72.50 |
| 10/05/2015 | JMP | Call from Rick Holes explaining that construction meetings during obstruction removal project were scheduled to coincide with board meetings to encourage participation, in construction meetings, by members of the Authority construction committee. | | |
| | | 0.30 hrs. | 145.00 /hr | 43.50 |
| 10/06/2015 | CRB | Review of multiple minutes of construction meetings run by RL Kimball and others to determine conversations or minutes, if any, regarding transfers of property | | |
| | | 1.10 hrs. | 145.00 /hr | 159.50 |
| 10/06/2015 | CRB | Review of construction minutes from August 15, 2008 through February 8, 205 together with notices of meetings for agreement in transfer | | |
| | | 1.00 hrs. | 145.00 /hr | 145.00 |
| 10/06/2015 | JMP | Meeting with Chuck Bailey, following his review of property report, to discuss strategy for avigation easement. | | |
| | | 0.80 hrs. | 145.00 /hr | 116.00 |
| 10/06/2015 | JMP | Continuing preparation of report, requested by Chuck Bailey after 10-1 FAA meeting, that (1) Lists all parcels of real estate acquired by Authority in conjunction with obstruction removal project, (2) differentiates between parcels purchased directly and parcels obtained via condemnation, and (3) identifies those 44 (or 45) parcels that, according to Exhibit B-1 to settlement agreement and land to be conveyed to Corotoman. | | |
| | | 5.80 hrs. | 145.00 /hr | 841.00 |
| 10/06/2015 | JMP | Four correspondences from Chuck Bailey re comments on construction progress meeting minutes for 2013 | | |
| | | 0.20 hrs. | 145.00 /hr | 29.00 |
| 10/06/2015 | JMP | Correspondence from Rick Holes providing construction progress meeting minutes for first half of 2014. | | |
| | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 10/06/2015 | JMP | Correspondence from Rick Holes providing construction progress meeting minutes for second half of 2014. Also correspondences forwarding both sets of 2014 minutes to Joan Barney and Chuck Bailey. | | |
| | | 0.10 hrs. | 145.00 /hr | 14.50 |

| 5900 | Central WV Regional Airport | Invoice# 51220 | Page 11 |

| 10/06/2015 | JMP | Correspondence to Rick Holes providing his 11-4-13 correspondence and attachments and inquiring if the real estate acquisition summary was the final version. | | |
| | | 0.30 hrs. | 145.00 /hr | 43.50 |
| 10/06/2015 | JMP | Correspondence from Rick Holes providing final (i.e. submitted to FAA) version of real estate acquisition summary. Also response correspondence to Rick. | | |
| | | 0.20 hrs. | 145.00 /hr | 29.00 |
| 10/06/2015 | JMP | Researching W.Va. case law re doctrines of ultra vires and impracticality for purpose of identifying legal theories that could be used in settlement negotiations or litigation in overblast claim and easement. | | |
| | | 2.30 hrs. | 145.00 /hr | 333.50 |
| 10/07/2015 | JMP | Researching W.Va. case law to identify legal theories that would support the argument (in settlement negotiations or litigation) that the settlement and first work agreement between Corotoman and the Authority should be reformed to eliminate the 35-foot overblast requirement. Theories include mistake of fact, mistake of law, inadequate consideration, ambiguousness, and unconscionability. Also additional research re ultra vires and impracticality. | | |
| | | 6.70 hrs. | 145.00 /hr | 971.50 |
| 10/09/2015 | JMP | Analyzing construction progress meeting minutes, re obstruction removal project, for 2013, first half of 2014, and second half of 2014. All received from Rick Holes via 10-5 and 10-6 correspondences. | | |
| | | 4.20 hrs. | 145.00 /hr | 609.00 |
| 10/12/2015 | JMP | Meeting with Chuck Bailey and Joan Barney to discuss various issues, particularly the need to determine value of properties acquired via purchase or condemnation. | | |
| | | 0.40 hrs. | 145.00 /hr | 58.00 |
| 10/13/2015 | CRB | Review of email regarding the amount the authority paid for the 27 of the 43 parcels of condemned and purchased real estate | | |
| | | 0.20 hrs. | 145.00 /hr | 29.00 |
| 10/13/2015 | JMP | Correspondence to Chuck Bailey (and Joan Barney) providing information on cost of properties acquired during the obstruction-removal project. | | |
| | | 0.20 hrs. | 145.00 /hr | 29.00 |
| 10/13/2015 | JMP | Continuing to analyze file documents (paper and electronic) re interactions between Rick Atkinson and Authority board, Authority staff, FAA, for purpose of formulating legal theory to, among other things, completion of avigation easement. | | |
| | | 3.60 hrs. | 145.00 /hr | 522.00 |
| 10/13/2015 | JMP | Analyzing obstruction removal file documents to extract information re funds expended to acquire real estate during the course of the project. | | |
| | | 1.30 hrs. | 145.00 /hr | 188.50 |

| 5900 | Central WV Regional Airport | | Invoice#  51220 | Page  12 | |
|---|---|---|---|---|---|

| 10/14/2015 | JMP | Analysis of W.Va. case law re contract reformation in general and unconscionability of contracts in particular to complete avigation easement. | | | |
| | | | 4.40 hrs. | 145.00 /hr | 638.00 |
| 10/15/2015 | CRB | Review of Memorandum of Law on contract reformation | | | |
| | | | 0.50 hrs. | 145.00 /hr | 72.50 |
| 10/15/2015 | JMP | Additional analysis of W.Va. case law re doctrine of ultra vires, particularly as applied to public officials. (no charge) | | | |
| | | | 0.00 hrs. | 145.00 /hr | N/C |
| 10/15/2015 | JMP | Additional analysis of Authority board minutes, previously obtained from airport files, various correspondences from and to Rick Atkinson, and other documents re obstruction removal project. | | | |
| | | | 2.60 hrs. | 145.00 /hr | 377.00 |
| 10/15/2015 | JMP | Writing summary of nine points of W.Va. case law re general issue of reformation of contracts based on the doctrine of unconscionability. | | | |
| | | | 3.40 hrs. | 145.00 /hr | 493.00 |
| 10/16/2015 | JMP | Finalizing summary of W.Va. case law re reformation of contract based on the doctrine of unconscionability. | | | |
| | | | 1.40 hrs. | 145.00 /hr | 203.00 |
| 10/19/2015 | CRB | Meeting with Rick Atkinson regarding close out issues. | | | |
| | | | 1.40 hrs. | 145.00 /hr | 203.00 |
| 10/19/2015 | JB | Reviewing file gathering documents in preparation of meeting with Rick Atkinson | | | |
| | | | 1.50 hrs. | 95.00 /hr | 142.50 |
| 10/19/2015 | JMP | Correspondences from, to, and from Chuck Bailey re 10-19 meeting with Rick Atkinson. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 10/19/2015 | JMP | Lunch meeting with Chuck Bailey. Primarily to discuss 10-19 meeting with Rick Atkinson (no charge). | | | |
| | | | 1.20 hrs. | 145.00 /hr | N/C |
| 10/19/2015 | JMP | Preparing for 10-19 meeting with Rick Atkinson by analyzing some of the contents of the chronological file, extracting some documents to take to meeting, and determining what issues should be discussed with Rick Atkinson. | | | |
| | | | 2.30 hrs. | 145.00 /hr | 333.50 |
| 10/19/2015 | JMP | Meeting with Rick Atkinson. | | | |
| | | | 1.40 hrs. | 145.00 /hr | 203.00 |
| 10/19/2015 | JMP | Meeting with Trigg Salsbery to discuss 10-19 meeting with Rick Atkinson and to confirm that Trigg did not approve or even consider concept that pavement work agreement superseded overblast work agreement. | | | |
| | | | 0.20 hrs. | 145.00 /hr | 29.00 |
| 10/20/2015 | CRB | Email to Terry Sayre regarding meeting with Rick Atkinson | | | |
| | | | 0.30 hrs. | 145.00 /hr | 43.50 |

| | | | | | |
|---|---|---|---|---|---|
| 5900 | Central WV Regional Airport | | Invoice# 51220 | Page | 13 |

| Date | Init | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 10/20/2015 | CRB | Review of email from Kim Lewis re $70,000 issue with WV Paving | 0.40 hrs. | 145.00 /hr | 58.00 |
| 10/20/2015 | CRB | Preparing for meeting with Rick Atkinson. | 0.50 hrs. | 145.00 /hr | 72.50 |
| 10/20/2015 | CRB | Meeting with Rick Atkinson. | 1.00 hrs. | 145.00 /hr | 145.00 |
| 10/20/2015 | JMP | Following up 10-19 meeting with Rick Atkinson by analyzing various file documents (including Kimball obstruction removal project manual) to confirm, or disprove, statements made by Rick during the meeting. | 2.70 hrs. | 145.00 /hr | 391.50 |
| 10/20/2015 | JMP | Call to Rick Holes to discuss, and obtain his recollections re, three statements made by Rick Atkinson during 10-19 meeting. | 0.40 hrs. | 145.00 /hr | 58.00 |
| 10/20/2015 | JMP | Writing, as requested by Chuck Bailey, summary of 10-19 meeting with Rick Atkinson and adding information obtained during 10-19 meeting with Trigg Salsbery and 10-20 call to Rick Holes. | 1.80 hrs. | 145.00 /hr | 261.00 |
| 10/22/2015 | JMP | Continuing analysis of file documents re Corotoman issues in preparation for the 10-22 combined meeting of construction and finance committees and making extracts of some of those documents for possible use during the meeting. | 0.80 hrs. | 145.00 /hr | 116.00 |
| 10/23/2015 | CRB | Review of the summary of the meeting with Rick Atkinson | 0.40 hrs. | 145.00 /hr | 58.00 |
| 10/23/2015 | JMP | Following up 10-22 construction and finance committee meeting discussion of need to resolve Corotoman overblasting and avigation easement issues by continuing analysis of file documents re obstruction removal project. | 3.30 hrs. | 145.00 /hr | 478.50 |
| 10/23/2015 | JMP | Correspondence to Rick Holes requesting seven obstruction removal project drawings and any additional drawings that he considers relevant to the 35-foot overblast issue. | 0.60 hrs. | 145.00 /hr | 87.00 |
| 10/26/2015 | CRB | Telephone conference with Rick Atkinson regarding grant agreement | 0.50 hrs. | 145.00 /hr | 72.50 |
| 10/26/2015 | JMP | Conducting on-line search of reference material re limitations on an airport's use of AIP grant funds and re limitations on use, by an airport that has received grant funds, of non-grant funds. Then analyzing various parts of the FAA Airport Compliance Manual (Order 5190.6B) and other documents re FAA grant sponsor responsibilities in general and those associated with unauthorized land use in particular. | 5.30 hrs. | 145.00 /hr | 768.50 |

5900     Central WV Regional Airport          Invoice# 51220      Page   14

| Date | | Description | | | |
|---|---|---|---|---|---|
| 10/26/2015 | JMP | Meeting with Trigg Salsbery re Corotoman situation in general and concept of "white paper" analysis of it in particular. (no charge). | | | |
| | | | 0.40 hrs. | 145.00 /hr | N/C |
| 10/26/2015 | JMP | Analyzing, for purposes of preparing AIP grant-related chronology, file documents that had probably been analyzed multiple times before. (no charge). | | | |
| | | | 3.00 hrs. | 145.00 /hr | N/C |
| 10/26/2015 | JMP | Continuing analysis of various documents re obstruction removal project in general, and AIP grants and preparing, during the course of the analysis, a chronology of events relating both to obstruction removal and to the grants. | | | |
| | | | 1.40 hrs. | 145.00 /hr | 203.00 |
| 10/27/2015 | CRB | Review of email from Terry Sayre, Nick Keller and others regarding meeting with FAA regarding grant properties | | | |
| | | | 0.20 hrs. | 145.00 /hr | 29.00 |
| 10/27/2015 | CRB | Meeting with FAA regarding closeout | | | |
| | | | 3.00 hrs. | 145.00 /hr | 435.00 |
| 10/27/2015 | CRB | Telephone conference regarding avigation easement with Kent George | | | |
| | | | 0.30 hrs. | 145.00 /hr | 43.50 |
| 10/27/2015 | JMP | In preparation for 10-27 meeting with FAA, continue analysis of various FAA publications re limitations on use of airport funds in general and, in particular, AIP grant funds.  For purpose of determining extent to which FAA will support, or become actively involved in, efforts to acquire avigation easement without any further expenditure of funds. | | | |
| | | | 3.10 hrs. | 145.00 /hr | 449.50 |
| 10/28/2015 | JMP | Correspondence to Chuck Bailey (and Terry Sayre, Nick Keller, Kurt Blankenship, and Rick Holes) summarizing discussion, with Kurt re FAA's positions at end of 10-27 airport grant meetings. | | | |
| | | | 0.70 hrs. | 145.00 /hr | 101.50 |
| 10/28/2015 | JMP | Correspondence to Chuck Bailey (and Terry Sayre and Nick Keller) re Kurt Blankenship's mention, following 10-27 airport grant meeting. | | | |
| | | | 0.30 hrs. | 145.00 /hr | 43.50 |
| 10/28/2015 | JMP | Following up 10-27 discussion, re FAA's position on Corotoman issues, with Kurt Blankenship and preparing for pending meetings  by continuing analysis of FAA Airport Compliance Manual.  For purpose of determining the extent to which the Authority's obligations to the FAA based on Grants 050, 051, and 052 regarding Authority's negotiating position re avigation easement. | | | |
| | | | 3.40 hrs. | 145.00 /hr | 493.00 |

| 5900 | Central WV Regional Airport | Invoice# 51220 | Page 15 |

| Date | Init. | Description | | | |
|------|-------|-------------|---|---|---|
| 10/29/2015 | CRB | Telephone conference with Kim Lewis regarding any information she has with regard to Rick's discussion with FAA over the air aviation lease and other related issues | | | |
| | | | 0.40 hrs. | 145.00 /hr | 58.00 |
| 10/30/2015 | CRB | Exchange of emails with Kent George regarding meeting | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 10/30/2015 | JMP | In preparation for pending meeting with Kent George re Corotoman issues, continue analyzing file documents and writing chronology of obstruction project. | | | |
| | | | 2.20 hrs. | 145.00 /hr | 319.00 |
| 11/02/2015 | JMP | In preparation for 11-6 meeting with counsel, compiling various related documents (i.e. correspondences, construction progress meeting minutes, construction committee meeting minutes, board meeting minutes, grant documents, and publicity) within notebooks for use before and after the meeting. | | | |
| | | | 3.40 hrs. | 145.00 /hr | 493.00 |
| 11/02/2015 | JMP | Correspondence from Chuck Bailey to Rick Holes re 11-6 meeting with Corotoman counsel. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 11/02/2015 | JMP | Correspondence from Rick Holes re his inability to attend 11-6 meeting with Corotoman counsel. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 11/02/2015 | JMP | Additional correspondence from Chuck Bailey to Rick Holes requesting property-division map for 11-6 meeting with Corotoman counsel. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 11/02/2015 | JMP | Correspondence to Rick Holes following up 9-24 correspondence re John Wellford attendance at 7-3-13 pre-bid meeting and requesting information re 6-26-12 pre-bid meeting. | | | |
| | | | 0.30 hrs. | 145.00 /hr | 43.50 |
| 11/02/2015 | JMP | Correspondence from Rick Holes re John Wellford's attendance at 7-3-13 pre-bid meeting. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 11/03/2015 | JMP | Correspondence from Rick Holes re preparation of property-division map for 11-6 meeting with counsel. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 11/03/2015 | JMP | Continuing preparation of obstruction removal related document notebooks for use in conjunction with 11-6 meeting with Corotoman counsel. | | | |
| | | | 0.80 hrs. | 145.00 /hr | 116.00 |
| 11/03/2015 | JMP | Additional correspondence from Rick Holes re property-division map. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |
| 11/04/2015 | JMP | Correspondences from Terry Sayre and from Chuck Bailey re property-exchange map being prepared by Kimball. | | | |
| | | | 0.10 hrs. | 145.00 /hr | 14.50 |

5900        Central WV Regional Airport              Invoice#  51220        Page   16

11/04/2015   JMP    Analyzing property-exchange map received via 11-4
                    correspondences from Ron King and from Chuck Bailey and
                    comparing map to previously compiled information re property
                    purchases and condemnations.

                                               0.50 hrs.      145.00 /hr              72.50

11/04/2015   JMP    Continuing compilation of Corotoman document notebooks in
                    preparation for 11-6 meeting with its counsel.

                                               1.80 hrs.      145.00 /hr             261.00

11/05/2015   JB     Reviewing and analyzing e-mail Mr. Atkinson's e-mail
                    communications for information regarding obstruction removal,
                    grants and correspondence.

                                               7.80 hrs.       95.00 /hr             741.00

11/05/2015   JMP    In preparation for 11-6 meeting with Kent George, re Corotoman
                    issue, continuing analysis of Kimball
                    proposed-property-allocation maps contained in Chuck Bailey's
                    11-5 correspondence to Kent George and comparison of those
                    maps with records of property purchases and condemnations and
                    records of board discussions of proposed property exchange.
                    Also additional analysis of previously performed legal research
                    re theories supportive of reformation of avigation and property
                    agreements.

                                               2.40 hrs.      145.00 /hr             348.00

11/06/2015   JMP    In preparation for 11-6 meeting with Kent George and Chuck
                    Bailey, locating various Corotoman-related documents for
                    possible use during the meeting.

                                               0.40 hrs.      145.00 /hr              58.00

11/06/2015   JMP    Meeting with Kent George and Chuck Bailey re Corotoman
                    situation (i.e. property exchange and overblast issues).

                                               2.20 hrs.      145.00 /hr             319.00

11/06/2015   JMP    Following up 11-6 meeting with Kent George and Chuck Bailey
                    by meeting with Chuck to discuss approaches to take to
                    Corotoman situation and by locating, and providing to Chuck,
                    documents from Corotoman notebooks re positions that Rick
                    Atkinson took re nature of planned property exchange.

                                               0.70 hrs.      145.00 /hr             101.50

11/09/2015   CRB    Following up 11-6 meeting with counsel by additional analysis
                    of FAA manual re airport sponsor and user rights and
                    responsibility and portions of Airport Compliance Manual.

                                               2.30 hrs.      145.00 /hr             333.50

11/13/2015   JMP    Correspondence from Terry Sayre re issue of date of Corotoman
                    $3.5 million contract.

                                               0.10 hrs.      145.00 /hr              14.50

11/13/2015   JMP    Correspondence from Chuck Bailey re preliminary versions of
                    Corotoman $3.5 million contract.

                                               0.10 hrs.      145.00 /hr              14.50

| 5900 | Central WV Regional Airport | | Invoice# 51220 | Page 17 |
|---|---|---|---|---|

| Date | Init | Description | | Amount |
|---|---|---|---|---|
| 11/15/2015 | JMP | Correspondence from Terry Sayre re Corotoman $3.5 million contract and fact that contract was proposed prior to slope failure. | | |
| | | 0.10 hrs.    145.00 /hr | | 14.50 |
| 11/15/2015 | JMP | Correspondence from Chuck Bailey re issue of timing of Corotoman $3.5 million contract. | | |
| | | 0.10 hrs.    145.00 /hr | | 14.50 |
| 11/19/2015 | CRB | Telephone conversation with Rick Atkinson regarding map and property exchange | | |
| | | 0.20 hrs.    145.00 /hr | | 29.00 |
| 11/19/2015 | CRB | Attending construction committee meeting | | |
| | | 1.00 hrs.    145.00 /hr | | 145.00 |
| 11/19/2015 | JMP | Correspondences from Chuck Bailey and to him and Jenny Sizemore re Corotoman-related property-division map prepared for Chuck by Rick Holes. | | |
| | | 0.10 hrs.    145.00 /hr | | 14.50 |
| 11/22/2015 | JMP | Correspondence from Chuck Bailey re location of notebooks containing documents re Grants 50-52 in general and re Corotoman issues in particular.  Also reply correspondence. | | |
| | | 0.10 hrs.    145.00 /hr | | 14.50 |
| 12/22/2015 | JMP | Meeting with Chuck Bailey to discuss expectations for 12-22 meeting with Rick Atkinson re Corotoman. | | |
| | | 0.30 hrs.    145.00 /hr | | 43.50 |

Total fees for this matter     $35,053.50

## DISBURSEMENTS

| Date | Description | Amount |
|---|---|---|
| 09/24/2015 | Photocopies - $.20 per copy = 359 | 71.80 |
| 09/25/2015 | Photocopies - $.20 per copy = 10 | 2.00 |
| 09/28/2015 | Photocopies - $.20 per copy = 9 | 1.80 |
| 09/29/2015 | Photocopies - $.20 per copy = 32 | 6.40 |
| 09/30/2015 | Photocopies - $.20 per copy = 357 | 71.40 |
| 10/02/2015 | Photocopies - $.20 per copy = 119 | 23.80 |
| 10/05/2015 | Photocopies - $.20 per copy = 69 | 13.80 |
| 10/06/2015 | Photocopies - $.20 per copy = 63 | 12.60 |
| 10/07/2015 | Photocopies - $.20 per copy = 74 | 14.80 |
| 10/08/2015 | Photocopies - $.20 per copy = 19 | 3.80 |
| 10/09/2015 | Photocopies - $.20 per copy = 33 | 6.60 |
| 10/13/2015 | Photocopies - $.20 per copy = 20 | 4.00 |
| 10/14/2015 | Photocopies - $.20 per copy = 80 | 16.00 |
| 10/19/2015 | Photocopies - $.20 per copy = 7 | 1.40 |
| 10/20/2015 | Photocopies - $.20 per copy = 10 | 2.00 |
| 10/23/2015 | Photocopies - $.20 per copy = 1 | 0.20 |

| 5900 | Central WV Regional Airport | Invoice# | 51220 | Page | 18 |

| 10/26/2015 | Photocopies - $.20 per copy = 130 | 26.00 |
| 10/27/2015 | Photocopies - $.20 per copy = 169 | 33.80 |
| 10/28/2015 | Photocopies - $.20 per copy = 53 | 10.60 |
| 10/29/2015 | Photocopies - $.20 per copy = 4 | 0.80 |
| 10/30/2015 | Photocopies - $.20 per copy = 5 | 1.00 |
| 11/04/2015 | Photocopies - $.20 per copy = 4 | 0.80 |
| 11/05/2015 | Photocopies - $.20 per copy = 1 | 0.20 |
| 12/03/2015 | Photocopies - $.20 per copy = 68 | 13.60 |
| | Total disbursements for this matter | $339.20 |

BILLING SUMMARY

| Joan Barney | 48.00 hrs | 95.00 /hr | $4,560.00 |
| Charles R. Bailey | 41.00 hrs | 145.00 /hr | $5,945.00 |
| Kelly C. Morgan | 12.20 hrs | 145.00 /hr | $1,769.00 |
| Jay M. Potter | 163.10 hrs | 145.00 /hr | $22,025.50 |
| Harold F. Salsbery | 5.20 hrs | 145.00 /hr | $754.00 |
| TOTAL FEES | 269.50 hrs | | $35,053.50 |

| TOTAL DISBURSEMENTS | $339.20 |
| TOTAL CHARGES FOR THIS BILL | $35,392.70 |
| LESS PREPAID AMOUNT APPLIED TO THIS INVOICE | $0.00 |
| **TOTAL BALANCE NOW DUE** | **$35,392.70** |

CHARLES R. BAILEY

# EXHIBIT CC

**DRAFT**
**June 18, 2016**

## AMENDMENT TO LICENSE AND WORK AGREEMENT

**THIS AMENDMENT TO LICENSE AND WORK AGREEMENT** ("Amendment to License and Work Agreement") is made this _____ day of _____, 2016 by and between **CENTRAL WEST VIRGINIA REGIONAL AIRPORT AUTHORITY**, a public corporation created pursuant to West Virginia Code §§8-29-1 *et seq.* ("Airport Authority") and **COROTOMAN, INC.,** a West Virginia Corporation ("Corotoman").

**WHEREAS**, on July 5, 2012, Corotoman and Airport Authority agreed to a certain settlement, and, as part of that settlement, Corotoman and Airport Authority entered into that certain License and Work Agreement ("License and Work Agreement"), whereby, among other things, Airport Authority agreed to perform certain work (including overblast work) on real property owned by Corotoman; and

**WHEREAS**, the parties desire to amend the License and Work Agreement to permit Airport Authority to borrow material from such real property of Corotoman as approved in writing by Corotoman (the "Borrow Area") in accordance with the agreements contained in this Amendment to License and Work Agreement,

## WITNESSETH:

That for and in consideration of the mutual covenants contained in this Amendment to License and Work Agreement and other good and valuable consideration, the receipt and sufficiency of which are by these presents acknowledged, the parties do hereby amend the License and Work Agreement in accordance with their following agreements:

1.    **Overblast Work.**  Airport Authority shall have no further obligation to perform the overblast required under Paragraph 5 of the License and Work Agreement, except as otherwise provided in this Amendment to License and Work Agreement.

2.    **Borrow Material.**  Airport Authority, within three (3) years of the date of this Amendment to License and Work Agreement, shall have the right to retain a contractor ("Contractor") to go on real property of Corotoman that is designated in writing by Corotoman to remove, by engineered excavation, drilling, and/or blasting, up to 1.7 million cubic yards of rock and earth (the "Borrow Material") from the Borrow Area in accordance with plans and specification approved by Corotoman (the "Plans and Specifications"); provided that Corotoman, Airport Authority, and Contractor have entered to the Borrow Material Agreement whose form is provided as **Exhibit A** to this Amendment to License and Work Agreement (such Borrow Material Agreement being referred to as the "Borrow Agreement").

{R1137259.3}                                              1

DRAFT
June 18, 2016

3. **Stabilization.** Airport Authority shall stabilize any areas within the Project Site and the Borrow Area that are discovered or determined to be unstable. Airport Authority agrees to indemnify, defend, and hold harmless Corotoman, Corotoman's directors, officers, employees, agents, assigns, successors, contractors, and/or subcontractors, against and from all expenses, liabilities, obligations, damages, penalties, claims, actions, and costs (including reasonable attorneys' fees) paid in connection with loss of life, bodily injury, or damage to property caused by any such unstable areas.

4. **Payments.** Airport Authority shall pay Corotoman Three Million Five Hundred Thousand Dollars ($3,500,000.00), of which sum, Airport Authority has already paid to Corotoman Five Hundred Thousand Dollars ($500,000.00). Airport Authority shall pay the remaining Three Million Dollars ($3,000,000.00) in accordance with the subparagraphs of this Paragraph 4:

   a. Any payment by Contractor to Corotoman pursuant to the Borrow Agreement shall be applied to the amount owed to Corotoman by Airport Authority;

   b. Airport Authority, on the first day of each month after the Execution Date, shall make to Corotoman a payment equal to the greater of Thirty Thousand Dollars ($30,000.00) or the product of $1.18 and the number of cubic yards of Borrow Material that Airport Authority or its contractor removed from the Borrow Area during the immediately preceding month, until the aggregate amount of all such payments and any payment by Contractor to Corotoman pursuant to the Borrow Agreement equals Three Million Dollars ($3,000,000.00);

   c. In the event that Airport Authority adopts Plans and Specifications for the repair of the slope supporting the engineered materials arrestor system at Runway 5 at Yeager Airport that do not include (i) a 2:1 slope and (ii) the use of 1.7 million cubic yards of Borrow Material, any unpaid balance of the total sum to be paid by Airport Authority to Corotoman pursuant to Paragraph 4 of this Amendment to License and Work Agreement shall become due immediately.

5. **Settlement**. Airport Authority and Corotoman acknowledge and agree that the License and Work Agreement was part of a comprehensive settlement of a prospective eminent domain action by Airport Authority and was concluded under threat of eminent domain. The modifications to the License and Work Agreement set forth in this Amendment to License and Work Agreement represent consideration in settlement of these prospective eminent domain claims, including any and all severance damage arising as a result of work by Airport Authority on Corotoman's property.

6. **Approvals.** Any consents or approvals to be given pursuant to this Amendment to License and Work Agreement shall not be unreasonably withheld.

DRAFT
June 18, 2016

7.   **Captions and Definitions.**  The captions and headings of this Amendment to License and Work Agreement are for the convenience of the parties and for context and reference only and in no way define, limit, or describe the scope or intent of this Amendment to License and Work Agreement.  Terms not otherwise defined in this Amendment to License and Work Agreement have the definitions set forth in the License and Work Agreement.

8.   **Agreements to Remain in Effect.**  Except as expressly set forth in this Amendment to License and Work Agreement, no other changes or amendments are made or intended to be made to the License and Work Agreement.

*[**Signatures on Next Page**]*

**DRAFT**
**June 18, 2016**

**IN WITNESS WHEREOF,** the parties hereto have executed this Amendment to License and Work Agreement as of the date first above written.

## COROTOMAN, INC.

By:_____
Its:_____

## CENTRAL WEST VIRGINIA REGIONAL AIRPORT AUTHORITY:

By:_____
Its:_____

**DRAFT**
**June 18, 2016**

STATE OF _____,
COUNTY OF _____, To-Wit:
    The foregoing Amendment to License and Work Agreement was acknowledged before me this ____ day of _____, 2016,
by _____ the _____ of **Central West Virginia Regional Airport Authority**.
    My commission expires:_____.


_____
                          Notary Public

(SEAL)


STATE OF _____,
COUNTY OF _____, To-Wit:

    The foregoing Amendment to License and Work Agreement was acknowledged before me this ____ day of _____, 2016,
by _____ the _____ of **Corotoman, Inc.**
    My commission expires:_____.


_____
                          Notary Public

(SEAL)


This Instrument Prepared mutually by: Kent J. George, Robinson & McElwee PLLC
P.O. Box 1791 Charleston WV 25326
and
Charles R. Bailey, Bailey & Wyant PLLC
500 Virginia Street East Suite 600 Charleston WV 25301

# EXHIBIT DD

DRAFT
June 18, 2016

## 2016 AMENDMENT TO SETTLEMENT AGREEMENT

**THIS 2016 AMENDMENT TO SETTLEMENT AGREEMENT** ("Amendment to Settlement Agreement") is made this _____ day of _____, 2016 ("Execution Date") by and between **CENTRAL WEST VIRGINIA REGIONAL AIRPORT AUTHORITY**, a public corporation created pursuant to West Virginia Code §§8-29-1 *et seq.* ("Airport Authority") and **COROTOMAN, INC.,** a West Virginia Corporation ("Corotoman").

**WHEREAS,** on July 5, 2012, Corotoman and Airport Authority entered into that certain Settlement Agreement ("Settlement Agreement"), whereby, among other things, in lieu of condemnation, Corotoman agreed to grant a license for certain work to be performed on certain real property currently owned by Corotoman and to grant an avigation easement over certain real property (the "Avigation Easement"). As fair and just compensation for said rights, including severance damages to Corotoman's remaining property rights, Airport Authority agreed to perform certain work on certain real property owned by Corotoman, exchange certain other real property with Corotoman, and reimburse Corotoman for the severance damages caused by Airport Authority's acquisition of property rights under the Settlement Agreement;

**WHEREAS,** as of the Execution Date, Corotoman has not conveyed certain real property to Airport Authority, Airport Authority has not conveyed certain other real property to Corotoman, and Corotoman has not granted to Airport Authority the Avigation Easement;

**WHEREAS,** also on July 5, 2012, Corotoman and Airport Authority entered into that certain License and Work Agreement ("License and Work Agreement"), whereby, among other things, Airport Authority agreed to perform certain work, including certain overblast work;

**WHEREAS,** the parties desire the effect the real property conveyances set forth in Section Three of the Settlement Agreement; and

**WHEREAS,** the parties desire to amend the License and Work Agreement in accordance with the agreements contained in the Amendment to License and Work Agreement,

**WITNESSETH:**

That for and in consideration of the mutual covenants contained in this Amendment to Settlement Agreement, the payment of the sum of Ten Dollars ($10.00) to Corotoman by Airport Authority, and other good and valuable consideration, the receipt and sufficiency of which are by these presents acknowledged, the parties do hereby amend the Settlement Agreement in accordance with their following agreements:

      1.    **Closing Date.** Paragraph 4.01 of the Settlement Agreement is hereby deleted and replaced with the following:

**DRAFT**
**June 18, 2016**

All interests in real property to be conveyed under Section Three of this Settlement Agreement shall be conveyed at a Closing to be held within sixty (60) days of the execution of the 2016 Amendment to Settlement Agreement, at a time and place to be agreed upon by the parties.

2. **Conveyance of Title.** In addition to all of the interests in real property conveyed as part of the Settlement Agreement, Airport Authority shall also convey to Corotoman by quitclaim deed, within sixty (60) days from the Execution Date, Airport Authority's interest, if any, in the following additional parcels, which are abandoned portions of Twilight Drive:

   a. _____
   b. _____
   c. _____
   d. _____
   e. _____

3. **Agreements to Remain in Effect.** Except as expressly set forth in this Amendment to Settlement Agreement, no other changes or amendments are made or intended to be made to the Settlement Agreement or to the License and Work Agreement or to any other agreement between the parties by this Amendment to Settlement Agreement.

   **IN WITNESS WHEREOF**, the parties hereto have executed this Amendment to Settlement Agreement as of the date first above written.

   **COROTOMAN, INC.**

                    By:_____
                    Its:_____

   **CENTRAL WEST VIRGINIA REGIONAL AIRPORT AUTHORITY:**

                    By:_____
                    Its:_____

**DRAFT**
**June 18, 2016**

**STATE OF** _____,
**COUNTY OF** _____, **To-Wit:**

    The foregoing 2016 Amendment to Settlement Agreement was acknowledged before me this ____ day of _____, 2016,
by _____ the _____ of **Central West Virginia Regional Airport Authority**.

    My commission expires:_____.


                                                    _____
                                                    Notary Public

(SEAL)


**STATE OF** _____,
**COUNTY OF** _____, **To-Wit:**

    The foregoing 2016 Amendment to Settlement Agreement was acknowledged before me this ____ day of _____, 2016,
by _____ the _____ of **Corotoman, Inc.**
    My commission expires:_____.


                                                      _____
                                                  Notary Public

(SEAL)


This Instrument Prepared mutually by: Kent J. George, Robinson & McElwee PLLC
P.O. Box 1791 Charleston WV 25326
and
Charles R. Bailey, Bailey & Wyant PLLC
500 Virginia Street East Suite 600 Charleston WV 25301.

# EXHIBIT EE

| From: | Holes, Rick |
|---|---|
| To: | DiGiulian, Matthew (FAA); Blankenship, Kurt (FAA) |
| Cc: | "Terry Sayre"; "Nick Keller (nick@yeagerairport.com) |
| Subject: | Coal Branch Property Ownership |
| Date: | Wednesday, July 20, 2016 4:18:45 PM |

Matt,

I would like to talk with you at some point over the next few days about possible solutions to this Coal Branch Property Ownership issue at Yeager.  I think we would all agree that the best case scenario would be that the Authority gets Corotoman/John Wellford to agree that he received fair market value for that land and, as a result, it rightly belongs to the Airport Authority.  However, I also think we all would also agree that this may be a rather unlikely scenario.  So, I am trying to come up with other possible options that we can pursue that, while not necessarily achieving the same end product, would protect the interests of the Airport.

The one option that I thought about was that Corotoman/John Wellford would agree, at a minimum to grant an aerial easement over those properties for all current and future approaches to Runway 5 and, along with that easement, he would also grant permanent access to the properties for the purposes of maintenance.  This would allow the Airport to achieve the same end result, while Corotoman would still maintain ownership of the properties.  The Authority would also maintain ownership of those other parcels that were purchased in fee simple.  I know that this doesn't address the issue of the FAA paying $250,000 for what you thought was fee simple ownership of the Corotoman/John Wellford properties, but it does protect the interest of the Airport.

An additional option could be some sort of an agreeable "land swap" where the Airport Authority would maintain ownership of the highest portions of the properties and the remaining properties would revert to Corotoman/John Wellford.  I understand that this would require the Airport Authority to follow the Federal Land Release criteria and that the properties would have to be appraised and it may even be necessary that some money changes hands.

I hope I haven't said anything that I shouldn't have.  I think, in retrospect, we would all agree that the way this turned out is not the way it should have.  My goal is to try to get something accomplished that protects the Airport, while I know for certain that you have additional concerns and requirements to protect the FAA's interests.  If we can work out some acceptable scenarios, I know that Terry, Nick and I will do our damnedest to make something happen.  Thanks.

Rick

Richard L. Holes, PE
Director of Aviation Services

L.R. Kimball – a CDI Company
615 West Highland Avenue | PO Box 1000 | Ebensburg, PA 15931
Ph: 814.472.7700 ext 601272 | Fax: 814.472.7712 | www.lrkimball.com

CORO_FAA003880

NON-DISCLOSURE NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain information belonging to CDI Corporation or its affiliated companies (CDI) or CDI's customers which is non-public, proprietary and/or privileged in favor of one or more such parties. The intended recipient(s) may only use such information consistent with the purpose for which it was sent to the recipient(s) and may only reproduce, disclose or distribute such information to others who have a proper involvement with that purpose. This notice must appear in any such reproduction, disclosure or distribution. Any review, use, reproduction, disclosure or distribution by other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and any attachments. Thank you.

CORO_FAA003881

# EXHIBIT FF

## Bailey, Chuck

| | |
|---|---|
| **From:** | Terry Sayre <t_sayre@yeagerairport.com> |
| **Sent:** | Thursday, July 21, 2016 2:27 PM |
| **To:** | Holes, Rick; Bailey, Chuck; Potter, Jay |
| **Cc:** | Sizemore, Jenny |
| **Subject:** | FW: Coal Branch Property Ownership |

Here is the latest from the FAA. See the second paragraph that has been bolded. We just need to get the easement done. Period.

**From:** Matthew.DiGiulian@faa.gov [mailto:Matthew.DiGiulian@faa.gov]
**Sent:** Thursday, July 21, 2016 8:38 AM
**To:** RICK.Holes@cdicorp.com; Kurt.Blankenship@faa.gov
**Cc:** Terry Sayre <t_sayre@yeagerairport.com>; Nick Keller <Nick@yeagerairport.com>
**Subject:** RE: Coal Branch Property Ownership

Rick,

I believe I have clearly addressed each of these scenarios in the past, and there really is nothing new suggested here.

- **We have already agreed to accept an avigation easement on the Corotoman properties as adequate control.** You prepared a "property index" that indicated that the airport had an easement on those parcels, and we used that to close-out the land acquisition grant. $250,000 was too much for an easement, but it is what it is. Who knows how much it would have cost to go to condemnation, so I can get past the fact that we paid that much for an easement. I can't get past paying $250,000 for nothing.

- I have said previously and it still stands: **I will not approve a land swap. Until the airport owns adequate property interest to control that land and protect the approach/departure surfaces, I won't approve any land releases either.**

**From:** Holes, Rick [mailto:RICK.Holes@cdicorp.com]
**Sent:** Wednesday, July 20, 2016 4:19 PM
**To:** DiGiulian, Matthew (FAA); Blankenship, Kurt (FAA)
**Cc:** 'Terry Sayre'; 'Nick Keller' (nick@yeagerairport.com)
**Subject:** Coal Branch Property Ownership

Matt,

I would like to talk with you at some point over the next few days about possible solutions to this Coal Branch Property Ownership issue at Yeager. I think we would all agree that the best case scenario would be that the Authority gets Corotoman/John Wellford to agree that he received fair market value for that land and, as a result, it rightly belongs to the Airport Authority. However, I also think we will would also agree that this may be a rather unlikely scenario. So, I am trying to come up with other possible options that we can pursue that, while not necessarily achieving the same end product, would protect the interests of the Airport.

The one option that I thought about was that Corotoman/John Wellford would agree, at a minimum to grant an aerial easement over those properties for all current and future approaches to Runway 5 and, along with that easement, he would also grant permanent access to the properties for the purposes of maintenance. This would allow the Airport to achieve the same end result, while Corotoman would still maintain ownership of the properties. The Authority would

1

CWVRAA_000329

# EXHIBIT GG



500 Virginia Street East, Suite 600 • P.O. Box 3710
Charleston, West Virginia 25337-3710
T: (304) 345-4222 • F: (304) 343-3133
www.baileywyant.com

Charles R. Bailey, Esq.
Email: cbailey@baileywyant.com
Direct Dial: (304) 720-0703

August 01, 2016

*Via Electronic Mail/Hard Copy to Follow*
Kent J. George, Esq.
Robinson & McElwee PLLC
PO Box 1791
Charleston, WV 25326-1791

Re:    **CWVRAA Project Number AIP # 3-54-0003-050-2011**

Dear Kent:

During our July 20, 2016 meeting, I indicated that the Authority would continue its discussions with the Federal Aviation Administration regarding the concept of acquiring the avigation easement in conjunction with either (1) agreeing to a land exchange or (2) consummating such an exchange.

The FAA is adamant that it cannot approve either iteration of that concept and that it is regulatorily prohibited from even considering a land exchange until such time as an avigation easement has been granted to the Authority and recorded.

The FAA's rationales for its position are as follows: First, the express objective of the Grant is "to acquire 63 parcels" of land. Second, after the Authority decided to acquire only an easement in lieu of the land, the FAA retroactively approved that decision and authorized the expenditure of $250,000 in federal funds and an additional $100,000 in Authority funds for the acquisition of that easement. Third, notwithstanding the disbursement of those funds, the easement has not been acquired. Fourth, regardless of what, if any, commitments the Authority might have made to exchange land, such an exchange cannot take place in the absence of the approval that the FAA will not even consider giving until after the easement has been acquired.

In view of the situation outlined above, the Authority will have to take whatever action is necessary in order to acquire, without any consideration beyond the previously disbursed $350,000, the easement. However the Authority will, as we discussed on July 20, continue to work with you in an effort to formulate a property exchange that we hope – but cannot guarantee – will merit the FAA's consideration after the easement has been granted.

If you have any questions about the Authority's position regarding the easement issue, please contact me. Otherwise, please communicate your client's position to me by close of business on Monday, August 8, 2016.

Kent George
Monday, August 01, 2016
Page 2



Very truly yours,

Charles R. Bailey

cc:     R. Edison Hill, Esquire and Chairperson
        Terry Sayre, Director
        Nick Keller, Assistant Airport Director

# EXHIBIT HH

| | |
|---|---|
| From: | Bailey, Chuck <cbailey@baileywyant.com> |
| Sent: | Thursday, April 06, 2017 9:21 AM |
| To: | John H Wellford |
| Cc: | Terry Sayre; R. Edison Hill |
| Subject: | Re: Deed and easement |

John disregard for now. I did not receive your voice mail until this morning . I will call you later today. You can call me now if you are available.

Sent from my iPhone

This electronic message transmission contains information from the law firm of Bailey & Wyant, P.L.L.C. which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this electronic transmission in error, please notify us by telephone at (304) 345-4222immediately.

On Apr 6, 2017, at 7:25 AM, Bailey, Chuck <cbailey@baileywyant.com> wrote:

> John last request for deed and easement otherwise suit will be filed next week. You cashed the check for the purchase of property and easement . If the airport is compelled to court it will seek attorneys fees and costs in addition to compelling  you execute the deeds.
>
> Sent from my iPhone
>
> This electronic message transmission contains information from the law firm of Bailey & Wyant, P.L.L.C. which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this electronic transmission in error, please notify us by telephone at (304) 345-4222immediately.

Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in: Security, archiving and compliance. To find out more Click Here.

CORO 000727

# EXHIBIT II

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

IN RE:

COROTOMAN, INC.,

   Debtor

COROTOMAN, INC.,

   Plaintiff,

v.

CENTRAL WEST VIRGINIA
REGIONAL AIRPORT AUTHORITY
CORPORATION,

   Defendant.

Chapter 11
Case No. 2:19-BK-20134

Case No. 2:19-ap-02013

### AFFIDAVIT OF JOSEF A. HORTER

NOW COMES the affiant, and after being duly sworn states as follows:

1.   That the undersigned was previously counsel of record for the Central West Virginia Regional Airport Authority in the bankruptcy case of *Corotoman, Inc.*, Bankruptcy Case No. 2:19-BK-20134 which is currently pending in the United States Bankruptcy Court for the Southern District of West Virginia.

2.   During the course of representation of the Central West Virginia Regional Airport Authority, I drafted and caused to be filed "Central West Virginia Regional Airport Authority's Memorandum of Law in Support of its Motion to Sell Real Property Free and Clear of all Liens," Doc. No. 59.

3.   In the body of said Memorandum of Law, I inserted, in part, the following paragraph:

""Finally, the parties contemplated that the deed for the sale of

EXHIBIT
**A**

property and easements would be free and clear of liens. It is a part of their contract and should be enforced. This is evidenced by the deed prepared and forwarded to Corotoman, Inc. for execution. This arrangement is not unusual and has been agreed to by the parties in at least one previous transaction. For instance, the parties entered into a Settlement Agreement on July 5, 2012 for a land and airspace avigation. In that agreement, the parties agreed that the land to deeded by Corotoman, Inc., would be free and clear of liens and encumbrances. See Exhibit A to the memorandum. The instant agreement entered into in April 2015 is consistent with the parties' prior transactions."

See, Central West Virginia Regional Airport Authority's Memorandum of Law in Support of its Motion to Sell Real Property Free and Clear of all Liens, at pp. 2-3."

4.      By this paragraph, it was not my intent to validate the referred to Settlement Agreement of July 5, 2012 or to concede or contend that Rick Atkinson had authority to execute it.

5.      The intent was to show that John Wellford, as President of Corotoman, Inc., was willing to sell property free and clear of the liens of his wife, Katherine F. Wellford, who held a Deed of Trust on the property since November 5, 2007.

6.      As this paragraph is in error from the facts of the July 5, 2012 transaction, it is hereby my wish and desire that the same be retracted and stricken from "Central West Virginia Regional Airport Authority's Memorandum of Law in Support of its Motion to Sell Real Property Free and Clear of all Liens," Doc. No. 59.

And further affiant sayeth naught.

_____

**JOSEF A. HORTER**


**STATE OF WEST VIRGINIA**
**COUNTY OF KANAWHA, to-wit:**

Taken, subscribed, and sworn to before me, the undersigned Notary Public, this
___10___ day of ___December_____, 20_19_.

My commission expires _____2/13/22_____.

[SEAL]

NOTARY PUBLIC

OFFICIAL SEAL
Notary Public, State of West Virginia
JENNIFER N SIZEMORE
Bailey & Wyant PLLC
PO Box 3710
Charleston, WV  25337
My commission expires February 13, 2022