IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

| | | |
|---|---|---|
| CENTRAL WEST VIRGINIA AIRPORT AUTHORITY, | * | |
| Plaintiff, | * | Case No. 2:21-cv-00431 |
| v. | * | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**INDIAN HARBOR INSURANCE COMPANY'S ANSWER
TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM**

Defendant Indian Harbor Insurance Company ("Indian Harbor") answers the complaint filed by Central West Virginia Regional Airport Authority ("the Airport Authority") as follows:

**Preliminary Statement**

1. The allegations of Paragraph 1 of the Complaint consist of a characterization of the Airport Authority's claims, and no response is required. To the extent a response is required, Indian Harbor lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding entities other than Indian Harbor, and therefore denies the same. To the extent a response is required as to the allegations regarding Indian Harbor, Indian Harbor denies the allegations, including that the Airport Authority is entitled to relief against Indian Harbor.

**The Parties**

2. Indian Harbor admits the allegations in Paragraph 2 of the Complaint on information and belief.

3-4. Indian Harbor lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 3-4 of the Complaint.

5. In response to the allegations of Paragraph 5 of the Complaint, Indiana Harbor states that it is a Delaware corporation with its principal place of business in Stamford, Connecticut, that it is authorized to do business as a surplus lines insurer in West Virginia, and that it issued to the Airport Authority a Public Officials Liability and Employment Practices Liability Insurance policy, numbered POL0951492-01, for the period of November 3, 2019 to November 2, 2020 ("Indian Harbor Policy").

## Jurisdiction

6. Indian Harbor admits the allegations of Paragraph 6 of the Complaint.

7-8. The allegations in Paragraphs 7 and 8 of the Complaint consist of conclusions of law, to which no response is required. To the extent a response is deemed required, Indian Harbor denies that the Airport Authority is entitled to relief against it, and Indian Harbor denies that the Complaint attaches the referenced exhibits.

9. The allegations of Paragraph 9 of the Complaint consist of conclusions of law, to which no response is required. To the extent a response is deemed required, Indian Harbor does not contest that the Court has personal jurisdiction over it with respect to the Indian Harbor Policy.

## Factual Background

### Allegations in the Corotoman Amended Complaint

10. The allegations of Paragraph 10 of the Complaint consist of a characterization of the Airport Authority's claims, and no response is required. To the extent a response is deemed required, Indian Harbor admits that the Airport Authority has requested that Indian Harbor provide indemnification and a defense for claims asserted by Corotomon Inc. ("Corotoman") in Civil Action No. 2:19-ap-02013 ("Underlying Action"), pending in the United States Bankruptcy Court for the Southern District of West Virginia."

11. Indian Harbor admits the allegations in Paragraph 11 of the Complaint.

2

12. In response to the allegations in Paragraph 12 of the Complaint, Indian Harbor states that Corotoman filed its first Amended Complaint ("Underlying Complaint") on September 23, 2020, after moving for leave to file that amended pleading on July 23, 2020. Indian Harbor states that the Underlying Complaint speaks for itself, and it denies the Airport Authority's allegations to the extent they are inconsistent with that pleading. Indian Harbor denies that the Airport Authority attached exhibits to its complaint.

13. In response to the allegations in Paragraph 13 of the Complaint, Indian Harbor states that the Underlying Complaint speaks for itself, and it denies the Airport Authority's allegations to the extent they are inconsistent with that pleading.

**Denial of Coverage under the AIG Policy by National Union and AIG**

14-17. Indian Harbor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 14-17 of the Complaint and demands strict proof thereof.

**Indian Harbor's Failure to Respond to Request for Coverage**

18. Answering Paragraph 18 of the Complaint, Indian Harbor admits that counsel for the Airport Authority sent a notice of claim under the Indian Harbor Policy; however, the notice was sent on February 26, 2021, not February 26, 2020.

19. Answering Paragraph 19 of the Complaint, the allegations consist of conclusions of law, to which no response is required. To the extent a response is deemed required, Indian Harbor denies that the Airport Authority is entitled to relief against it and demands strict proof thereof.

20. Answering Paragraph 20 of the Complaint, Indian Harbor states that, by letter dated August 30, 2021, it agreed, pursuant to a reservation of rights, to participate in the defense of the Underlying Action and to reimburse the Airport Authority for reasonable defense costs expended after February 26, 2021. Indian Harbor further states that this six-month interval was

shorter than the seven-month interval between July 23, 2020, when Corotoman sought leave to file the Underlying Complaint, and February 26, 2021, when the Airport Authority first reported it to Indian Harbor.

## COUNT I – Request for Declaratory Judgment

21.     Indian Harbor incorporates its responses to Paragraphs 1 through 20 of the Complaint as if fully set forth herein.

22-29. Paragraphs 22 to 29 of the Complaint consist of conclusions of law, to which no response is required. To the extent a response is deemed required, Indian Harbor denies breaching any obligation to the Airport Authority and denies that the Airport Authority is entitled to relief against it and demands strict proof thereof.

## COUNT II – Breach of Contract

30.     Indian Harbor incorporates its responses to Paragraphs 1 through 29 of the Complaint.

31-33.  Answering Paragraphs 31-33 of the Complaint, Indian Harbor lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore, denies the same and demands strict proof thereof

34.     Answering Paragraph 34 of the Complaint, the allegations consist of conclusions of law, to which no response is required. To the extent a response is deemed required, Indian Harbor denies breaching any obligation to the Airport Authority and denies that the Airport Authority is entitled to relief against it and demands strict proof thereof.

35-36. Answering Paragraphs 35-36 of the Complaint, Indian Harbor denies breaching any obligation to the Airport Authority and denies that the Airport Authority is entitled to relief against it and demands strict proof thereof.

## **COUNT III – Violations of Unfair Trade Practices Act**

37.     Indian Harbor incorporates its responses to paragraphs 1-36 of the Complaint in full as if restated herein.

38-45.  Answering the allegations in Paragraphs 38-45 of the Complaint, the allegations consist of conclusions of law, to which no response is required. To the extent a response is deemed required, Indian Harbor states that the referenced statutes speak for themselves, and it denies the allegations to the extent inconsistent therewith and demands strict proof thereof.

46-47.  Answering Paragraphs 46-47 of the Complaint, Indian Harbor denies allegations contained therein, including breaching any obligation to the Airport Authority and denies that the Airport Authority is entitled to relief against it and demands strict proof thereof.

## **COUNT VI –** *Hayseeds* **Claim (Common Law Bad Faith)**

48.     Indian Harbor incorporates its responses to Paragraphs 1-47 of the Complaint as if restated in full herein.

49-57.  Answering Paragraphs 49-57 of the Complaint, Indian Harbor denies the allegations contained therein including breaching any obligation to the Airport Authority and denies that the Airport Authority is entitled to relief against it and demands strict proof thereof.

58.     The language of the "WHEREFORE" section that follows paragraph 57 consists of a description of the relief sought by the Airport Authority, to which no response is required. To the extent a response is required, Indian Harbor denies breaching any obligation to the Airport Authority and denies that the Airport Authority is entitled to relief against it.

59.     Indian Harbor denies each allegation of the Airport Authority's complaint that it did not expressly admit above.

## AFFIRMATIVE DEFENSES

By listing the following matters under the heading "Affirmative Defenses," Indian Harbor does not assume or admit a burden of production or persuasion as to any matter.

### First Defense

The Complaint fails to state a claim upon which relief can be granted against Indian Harbor.

### Second Defense

Indian Harbor's obligations under the Indian Harbor Policy, if any, are defined by the terms, conditions, exclusions, limitations, declarations, and endorsements of the Indian Harbor Policy, including, without limitation, conditions precedent, limits of liability, per occurrence and aggregate limits, deductibles, self-insured retentions, policy periods, requirements of exhaustion of other insurance, and notice requirements. Indian Harbor expressly reserves, and does not waive, its rights under all of the terms, conditions, exclusions, limitations, declarations, and endorsements of the Indian Harbor Policy.

### Third Defense

The Airport Authority's claims are barred, in whole or in part, by the Indian Harbor Policy's exclusion for any "Claim" arising from or related to "[a]n Insured's liability under a contract or agreement, other than a manual of employment policies or procedures issued by You, unless such liability would have attached in the absence of such express contract or agreement."

### Fourth Defense

The Airport Authority cannot recover "Defense Expenses" incurred before February 26, 2021, because the provides that "Defense Expenses does not include any expenses incurred by You prior to the date a Claim is first reported to Us."

**Fifth Defense**

The Airport Authority's claim for "Defense Expenses" is subject to the Indian Harbor Policy's provision that Indian Harbor "shall reimburse for Defense Expenses in connection with an Insured's liability under a contract or agreement $25,000 in the aggregate."

**Sixth Defense**

There is no coverage under the Indian Harbor Policy for relief, including but not limited to attorneys' fees, treble damages, declaratory relief, and specific performance, that falls outside the definition of "Loss." "Loss" includes punitive damages only to the extent insurable under applicable law.

**Seventh Defense**

"Defense Expenses" recoverable under the Indian Harbor Policy do not include any sums incurred by the Airport Authority in pursuing counterclaims or cross-claims.

**Eighth Defense**

Coverage under the Indian Harbor Policy for the Underlying Action is barred, in whole or in part, by the exclusion for any "Claim" arising from or related to "[t]he performance of any willful misconduct or dishonest, fraudulent, criminal or malicious act, error or omission by an Insured; the willful violation by an Insured of any law, statute, ordinance, rule or regulation; or an Insured gaining any profit, renumeration or advantage to which such Insured is not legally entitled."

**Ninth Defense**

Coverage under the Indian Harbor Policy for the Underlying Action is barred, in whole or in part, by the exclusion for any "Claim" arising from or related to "[t]he operation of the laws and principles of eminent domain, condemnation, inverse condemnation, temporary or permanent taking, adverse possession or dedication by adverse use."

**Tenth Defense**

Coverage under the Indian Harbor Policy for the Underlying Action is barred, in whole or in part, by the exclusion for any "Claim" arising from or related to "[d]amages to, destruction of or loss of use of tangible property."

**Eleventh Defense**

Coverage under the Indian Harbor Policy for the Underlying Action is barred, in whole or in part, by the exclusion for any "Claim" arising from or related to "[c]onstruction, architectural, engineering, procurement, security or other professional services, including any contract or agreement pertaining to such services."

**Twelfth Defense**

To the extent that the Airport Authority failed to mitigate, minimize, or avoid any damages allegedly sustained, recovery against Indian Harbor must be reduced by the amount attributable to such failure.

**Thirteenth Defense**

Indian Harbor's obligations under the Indian Harbor Policy are limited to the extent that the amounts potentially recoverable must be reduced or offset by recoveries the Airport Authority has obtained from other sources, including, but not limited to, other insurers.

**Fourteenth Defense**

The Airport Authority's claim is barred by its failure to allege that it has complied with all conditions precedent. *See* Fed. R. Civ. P. 9(c). Indian Harbor reserves the right to assert defenses based on the Airport Authority's failure to comply with conditions precedent, including that as "a condition precedent to any right to payment under this Policy, the Insured must give Us written notice of such Claim, with full details, as soon as practicable after any of Your public officials or

administrators becomes aware of such Claim and in no event later than seventy-five (75) days after the expiration of the Policy Period."

### Fifteenth Defense

The Airport Authority's claims against Indian Harbor are or may be barred by the doctrines of estoppel, waiver, or laches.

### Sixteenth Defense

Indian Harbor reserves the right to amend or supplement these defenses as appropriate.

### INDIAN HARBOR'S COUNTERCLAIM

1. Indian Harbor incorporates by reference its foregoing answer and affirmative defenses (including all defined terms) and brings this counterclaim against the Airport Authority:

2. Corotoman's original complaint, filed September 24, 2019, in the Underlying Action alleged four causes of action:

    (i)     "Breach of Contract – Settlement Agreement and License and Work Agreement";

    (ii)    "Breach of Contract – Breach of Good Faith and Fair Dealing";

    (iii)   "Breach of Quasi-Contract," predicated on "the Airport Authority's representations that it would perform the work on Corotoman's property in conformance with the License and Work Agreement"; and

    (iv)   "Declaratory Judgment," seeking a judicial determination of Corotoman's "rights and duties as well as the Airport Authorities rights and duties with respect to the Settlement Agreement and the License and Work Agreement."

3. All of these claims fell within the Indian Harbor Policy's Exclusion D.10, which bars coverage for any "Claim" arising from or related to "[a]n Insured's liability under a contract or agreement, other than a manual of employment policies or procedures issued by You, unless such liability would have attached in the absence of such express contract or agreement."

4. The Airport Authority did not tender Corotoman's original complaint to Indian Harbor.

5. On October 28, 2019, the Airport Authority answered Corotoman's original complaint and included the following affirmative defenses:

> Plaintiff is barred from recovery because any alleged contracts or agreements upon which it is based must be rescinded based on the parties' mutual mistake regarding the feasibility of overblasting the subject property.
>
> Plaintiff is barred from recovery because any alleged contracts or agreements upon which it is based must be rescinded based on, among other things, impossibility of performance because the Federal Aviation Administration refused to approve any agreement between Plaintiff and Airport Authority.
>
> Plaintiff is barred from recovery because any alleged contracts or agreements upon which it is based must be rescinded because at the time said alleged agreements were entered into to, then-Director Rick Atkinson was acting *ultra vires* or otherwise acting in excess of his lawful authority, and therefore the alleged agreements are invalid.

6. On December 10, 2019, the Airport Authority filed its initial disclosures in the Underlying Action, stating, in compliance with its obligation to disclose "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment," that the "Airport Authority has an insurance policy through AIG; however, it is unclear at this time whether said policy will cover this litigation." The Airport Authority did not mention the Indian Harbor Policy in this disclosure, or in any supplement thereto.

7. The Underlying Complaint, which Corotoman filed on September 23, 2020, after seeking leave to file it on July 23, 2020, alleged that the Airport Authority negotiated the Settlement Agreement and the License and Work Agreement through Yeager Airport's acting director Richard A. Atkinson, III and the Airport Authority's counsel, Charles R. Bailey of Bailey & Wyant, P.L.L.C. The Underlying Complaint added six more causes of action:

> (v) "Negligence," alleging that, if "the Settlement Agreement and its exhibits were invalid," the Airport Authority remained "liable for the cost to correctly overblast

the knoll and property at issue so that it can be used by Corotoman as contemplated in the Settlement Agreement";

(vi) "Negligent Misrepresentation," alleging that if the Settlement Agreement is invalid, the "lack of overblasting to the contractually agreed depth amounts to a full taking of Corotoman's property without just compensation," and "the Airport Authority must return Corotoman's property to the manner in which it was prior to entering into the Settlement Agreement or comply with the Settlement Agreement";

(vii) "Fraud," alleging that the "Airport Authority through Atkinson, Bailey, or Bailey & Wyant, made numerous material representations and statements that the Settlement Agreement and the License and Work Agreements are valid contracts," and that as "a result of the intentional misrepresentations and omissions and inducement to enter into the Settlement Agreement, Corotoman has sustained damages";

(viii) "Civil Conspiracy," alleging that "Bailey & Wyant and the Airport Authority have engaged in actions to assert that Atkinson did not have authority to enter into the Settlement Agreement and License and Work Agreement when he had full authority to do so," and that "all Defendants have engaged in actions to the injury of Corotoman including actively conspiring to acquire Corotoman's land without overblasting the property to the contractually agreed depth and requirements";

(ix) "Tortious Interference," a cause of action that is not against the Airport Authority; and

(x) "Tre[s]pass," alleging that the "only lawful authority that permitted the Airport Authority … to enter onto Corotoman's ground or property was the Settlement Agreement and License and Work Agreement," that if "Atkinson was acting *ultra vires* or otherwise acting in excess of his lawful Authority when he signed the Settlement Agreement and License and Work Agreement, then the Airport Authority never had the authorization or invitation to enter upon Corotoman's land and property," and that "[a]ccordingly, the Airport Authority must return Corotoman's property to the manner in which it was prior to entering into the Settlement Agreement."

8. Exclusion D.10 applies to all of the causes of action in the Underlying Complaint. All causes of action either seek to impose liability under a contract or agreement, or arise from or relate to liability under a contract or agreement. The Underlying Complaint's additional causes of action against the Airport Authority arise from or relate to the defenses that the Airport Authority has raised to avoid liability under the Settlement Agreement and License and Work

Agreement. The alleged liability would have not attached in the absence of such express contract or agreement.

9. Additionally, the policy provisions identified in Indian Harbor's affirmative defenses, incorporated into this counterclaim by reference, limit or bar coverage for the Underlying Action.

## Count I – Declaratory Relief as to Defense

10. Indian Harbor incorporates all foregoing allegations of this pleading.

11. Indian Harbor has no duty to defend the Airport Authority in the Underlying Action.

12. In the alternative, Indian Harbor's defense obligation is limited to $25,000.

13. The Airport Authority contends that Indian Harbor has a duty to defend it in the Underlying Action.

14. An actual and justiciable controversy exists regarding the existence and scope of a defense obligation under the Indian Harbor Policy with respect to the Underlying Action.

WHEREFORE, Indian Harbor respectfully requests that this Court enter a declaratory judgment resolving the controversy as to the Airport Authority's request for a defense under the Indian Harbor Policy.

## Count II – Declaratory Relief as to Indemnity

15. Indian Harbor incorporates all foregoing allegations of this pleading.

16. Indian Harbor has no duty to indemnify the Airport Authority with respect to any settlement or judgment in the Underlying Lawsuit.

17. In the alternative, the aforementioned policy provisions limit or bar coverage for certain causes of actions and categories of relief sought by Corotoman.

18. The Airport Authority contends that Indian Harbor has a duty to indemnify it as to the Underlying Action.

19.     An actual and justiciable controversy exists regarding the existence and scope of any indemnity obligation under the Indian Harbor Policy with respect to the Underlying Action.

WHEREFORE, Indian Harbor respectfully requests that this Court enter a declaratory judgment resolving the controversy as to the Airport Authority's request for indemnity under the Indian Harbor Policy.

Dated: September 17, 2021
/s/ Lee Murray Hall
Lee Murray Hall (WV Bar No. 6447)
**JENKINS FENSTERMAKER, PLLC**
325 Eighth Street
Huntington, West Virginia 25701-2225
(304) 523-2100
LMH@JenkinsFenstermaker.com
*Counsel for Defendant*
*Indian Harbor Insurance Company*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

| | | |
|---|---|---|
| CENTRAL WEST VIRGINIA AIRPORT AUTHORITY, | * | |
| Plaintiff, | * | Case No. 2:21-cv-00431 |
| v. | * | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## CERTIFICATE OF SERVICE

I, Lee Murray Hall, hereby certify that on the 17th of September, 2021, I electronically filed the foregoing ***Answer to Plaintiff's Complaint and Counterclaim*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Mychal S. Schulz
Katrina N. Bowers
Babst, Calland, Clements & Zomnir, P.C.
300 Summers Street, Suite 1000
Charlestown, WV 25301

Don C.A. Parker
Spillman, Thomas & Battle, PLLC
300 Kanawha Boulevard, E
Charleston, WV 25301

/s/ Lee Murray Hall
Lee Murray Hall (WV Bar No. 6447)